IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SUNIL BHATIA, individually, and derivatively, on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) ) | Case No. 18-cv-02387 |
| Plaintiffs, | ) ) ) | Honorable Judge Robert M. Dow Jr. |
| v. | ) ) | |
| RAJU VASWANI, and individual, KARAN VASWANI, an individual, and MV OUTSOURCING INC., an Illinois Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S *COMBINED* RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Sunil Bhatia ("Mr. Bhatia"), individually, and on behalf of MedValue Offshore Solutions, Inc. ("MedValue"), by and through his undersigned counsel, states as follows as his Combined Response to Defendants' Motions to Dismiss Mr. Bhatia's Second Amended Complaint.[1]

## INTRODUCTION

MedValue, an Illinois corporation, is a leading U.S. based data entry services company. Sunil Bhatia and Raju Vaswani are the owners of MedValue and are, and have been, the

---

[1] Plaintiff's Response in Opposition to Defendant Raju Vaswani's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 51) has been consolidated with Plaintiff's Response to Defendant Karan Vaswani and Assivo's (f/k/a MV Outsourcing, Inc.'s) Motion to Dismiss the Second Amended Complaint (Dkt. 52) because Karan Vaswani and Assivo's Motion to Dismiss (Dkt. 52) simply incorporates by reference each and every argument made in Raju Vaswani's Motion to Dismiss (Dkt. 51) with regard to Counts I-IV of the Second Amended Complaint. Plaintiff assumes that he has a combined 30 pages to respond to these two Motions, in light of the 15-page limit applicable to each. However, this Response is far shorter than that 30-page limit.

company's only employees since MedValue was started about 14 years ago. (*See* Dkt. 44, ¶¶ 1-3).

MedValue owns, and has been using since 2006, the trademarks "MV Outsourcing" and "MV Outsourcing Solutions" ("MV Marks"). (Dkt. 44, ¶ 37). Indeed, many of MedValue's customers recognize "MV Outsourcing" as synonymous with MedValue. (Dkt. 44, ¶ 38).

In or about 2017, Raju Vaswani and his son, Karan Vaswani, started a company called MV Outsourcing, Inc., and created a website on the domain name mvoutsourcing.com, for the express purpose of drawing business away from MedValue.[2] (Dkt. 44, ¶¶ 49-52). The home page of the mvoutsourcing.com website displayed the name "MV Outsourcing" in connection with the promotion, marketing and sale of services that directly compete with MedValue's services. (Dkt. 44, ¶ 56). The appearance and overall impression of the "MV Outsourcing" mark used by Defendants is identical to the MedValue's "MV Marks." (Dkt. 44, ¶ 60). Defendants' wrongful use of the "MV Outsourcing" mark constitutes a willful violation of MedValue's trademark rights in the MV Marks. (Dkt. 44, ¶ 63).

MedValue also owns trade secrets relating to its search engine marketing campaigns and has spent large amounts of time, effort, and money developing, testing and deploying various advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and Google bid amounts, as part of various advertising and marketing strategies to attract business to MedValue and its service, MV Outsourcing - including extensive use of search engine optimization ("SEO") techniques (collectively, "MedValue's Advertising and Marketing Trade Secrets") for its services. (Dkt. 44, ¶ 68). MedValue uses its Advertising and Marketing Trade Secrets to develop SEO techniques and Google campaigns that

---

[2] MV Outsourcing, Inc. has since changed its name to Assivo, Inc. and does business as Task Genie.

allow MedValue to appear at the top of search engine Google Adwords results when potential customers search for services using certain keywords and to direct potential customers to relevant landing pages on MedValue's website. (Dkt. 44, ¶ 69). MedValue's Advertising and Marketing Trade Secrets are confidential and proprietary information of MedValue. (Dkt. 44, ¶ 68).

As alleged in the Second Amended Complaint, Raju Vaswani removed access for the MedValue AdWords account for Mr. Bhatia, assigned those rights to an email address at Assivo, and improperly provided Karan Vaswani and Assivo with access to MedValue's proprietary and confidential Advertising and Marketing Trade Secrets. (Dkt. 44, ¶¶ 71-72). Assivo has used, and is using, MedValue's Advertising and Marketing Trade Secrets to run Google campaigns to direct potential customers to another website owned by Assivo, task-genie.com. (Dkt. 44, ¶ 74). These actions, and others pled in the Second Amended Complaint, constitute misappropriation and improper use of MedValue's Advertising and Marketing Trade Secrets. (Dkt. 44, ¶ 75).

On September 28, 2018, Plaintiff filed its Second Amended Complaint, alleging, derivatively on behalf of MedValue, *inter alia*, that all Defendants have infringed MedValue's MV Marks in violation of federal and Illinois law (Counts I and II, respectively) and misappropriated MedValue's trade secrets in violation of federal and Illinois law (Counts III and IV, respectively). Mr. Bhatia also alleges, individually and derivatively on behalf of MedValue, *inter alia*, that Raju Vaswani breached his duties of loyalty and fiduciary duty to both Mr. Bhatia (Counts V and VII) and to MedValue (Counts VI and VIII). Mr. Bhatia also filed claims for a conversion against Mr. Raju Vaswani (Count IX) and for a declaratory judgment that Mr. Bhatia and Raju Vaswani are 50/50 owners in MedValue (Count X).

Defendants have moved to dismiss all of the claims against them for various reasons. For the reasons discussed below, Defendants' motions should be denied.

## ARGUMENT

**A. This Court has Proper Subject Matter Jurisdiction Over Counts V through X of the Second Amended Complaint.**

Supplemental jurisdiction is proper over state law claims in the appropriate situations. *See* 28 U.S.C. § 1367(a), (c). In order for a district court to have supplemental jurisdiction over a state law claim, "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative facts. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). In addition, "supplemental jurisdiction is not limited to restatements of the same basic ground for recovery … [T]he claims need only revolve around a central fact pattern." *Euromarket Designs, Inc. v. Crate & barrel Ltd.*, 96 F.Supp.2d 824 (N.D. Ill. 2000).

In this case, supplemental jurisdiction over the Illinois State law claims is appropriate. Both the federal claims, for violations of the Lanham Act (15 U.S.C. § 1125) and Defend Trade Secrets Act (18 U.S.C. §§ 1831-39), and the state claims embodied in Counts V through X arise from the same nucleus of operative facts. Furthermore, there are no factors under 28 U.S.C. § 1367(c) that would warrant this Court to decline jurisdiction over the state claims and allowing the claims at issue to proceed in federal court would service judicial economy. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) ("The rationale of the supplemental jurisdiction is economy in litigation, and so a relinquishment of it that clearly

4

disserved economy would be a candidate for reversal."). Thus, this Court may properly exercise supplemental jurisdiction over the Illinois state law claims. Exercising jurisdiction over these claims will support judicial efficiency and economy by not requiring Plaintiff to burden the state court system with parallel litigation over overlapping issues.

> **i. This Court has Supplemental Jurisdiction over Plaintiff's Breach of Fiduciary Duty and Breach of Duty of Loyalty Claims (Counts V through VIII)**

Counts V through VIII relate to: Raju Vaswani's breach of fiduciary duty to Sunil Bhatia (Count V); Raju Vaswani's breach of fiduciary duty to MedValue (Count VI); Raju Vaswani's breach of duty of loyalty to Sunil Bhatia (Count VII), and Raju Vaswani's breach of duty of loyalty to MedValue (Count VIII). These state claims and the federal Lanham Act (15 U.S.C. § 1125) and Defend Trade Secrets Act (18 U.S.C. §§ 1831-39) claims arise from the same nucleus of operative facts and would ordinarily be expected to be tried together in one judicial proceeding.

The state law claims in Counts V-VIII each allege that the duties were breached by, among other things:

> a. Creating Assivo, Inc. (f/k/a/ MV Outsourcing, Inc.) for the express purposes of creating customer confusion and to draw business away from MedValue and its MV Outsourcing service;

> b. Disclosing and misusing MedValue's Advertising and Marketing Trade Secrets for the benefit of Assivo, Inc. and not MedValue;

> c. Misusing his corporate credit card for expenses unrelated to the business of MedValue and for the benefit of a competing entity or entities;

> d. Redirecting customer and potential customer inquiries intended for Plaintiff to instead go to himself or his son, Karan Vaswani, or Assivo, for the benefit of a competing business.

(Dkt. 44, ¶¶ 126, 133, 138 and 145).

The actions described in subparagraph (a) arise from the same set of facts that are involved in the federal trademark infringement claims, *inter alia* that: (1) defendant Karan Vaswani prepared proposed "improved" marketing materials with a "newly created logo" for MedValue; (2) later, the home page of the mvoutsourcing website displayed the name "MV Outsourcing" in connection with the promotion, marketing and sale of services that directly competes with MedValue's services; (3) the website also displayed a logo that is identical to the one Karan Vaswani used in the marketing materials that Raju Vaswani proposed for MedValue to use; and (4) MedValue did not give permission to Assivo, Inc., Raju Vaswani, or Karan Vaswani to use the "MV Outsourcing" mark in connection with the marketing or sale of MV Outsourcing, Inc.'s directly competing services. (Dkt. 44, ¶¶ 53, 56, 59).

Defendants argue that the remaining subparagraphs have "nothing whatsoever to do with alleged Lanham Act or trade secrets claim." (Dkt. 51, p. 5). Defendant are incorrect as the actions described in (b), (c) and (d) arise from the same set of facts that are involved in the federal trade secret misappropriation claims, which generally allege that defendant Raju Vaswani improperly provided Karan Vaswani and Assivo with access to MedValue's proprietary and confidential Advertising and Marketing Trade Secrets (Dkt. 44, ¶ 73). For example, Plaintiff alleges that Assivo has used and is using MedValue's Advertising and Marketing Trade Secrets to run Google campaigns to direct potential customers to task-genie.com, and by using MedValue's trade secrets, Assivo has received an unfair advantage in competing and bringing its competing services to market because it has *not* had to expend significant time and resources to develop an online search engine optimization strategy. (Dkt. 44, ¶¶ 75-76).

Defendants also argue that these Counts should be dismissed because the federal claims (Counts I-IV) are "only an appendage" to the state law claims (Counts V- VII), and that Mr.

Bhatia did not allege any federal law claims in an earlier lawsuit between the parties. But that argument is superficial and misses the mark. Defendants' argument that Plaintiff filed, but dismissed, an early action in state court and re-filed this action in federal court demonstrates that this lacks merit and is not the proper inquiry. Defendants merely attempt to split the claims into different actions, which will *not* promote judicial efficiency and economy, and would simply increase the costs to the parties.

    ii. *This Court has Supplemental Jurisdiction over Plaintiff's Conversion and Declaratory Judgment Claims (Counts IX and X)*

Count IX of Mr. Bhatia's Second Amended Complaint alleges conversion based upon Raju Vaswani's conduct in knowingly and intentionally wrongfully converting for his own benefit, and to the detriment of Mr. Bhatia, monies and other assets belonging to MedValue (Dkt. 44, ¶ 149), and asserts that Mr. Bhatia has a right to those monies and assets by way of his ownership in MedValue (Dkt. 44, ¶ 149). Facts that relate to this claim include: (1) that both Mr. Bhatia and Raju Vaswani have credit cards that are ultimately paid by MedValue; (2) for many years and to-date, Raju Vaswani used one of this credit cards to pay the monthly marketing costs of MedValue which, in part, led directly to MedValue and its service appearing at the top of the search engine results; (3) in the past year, the marketing charges to Raju Vaswani's credit card have largely remained at a consistent (and high) level; (4) *however*, those funds are *not* being paid towards MedValue's marketing efforts; (5) but are instead being used to market businesses owned and operated by Raju Vaswani and Karan Vaswani, including Assivo d/b/a/ Task Genie – *i.e.,* the direct competitor of MedValue. (Dkt. 44, ¶¶ 77-80). In addition, Raju Vaswani has converted other assets by wrongly removing Mr. Bhatia's access to MedValue's AdWords account (Dkt. 44, ¶¶ 72), providing access to MedValue's trade secrets to Karan Vaswani and

7

Assivo (Dkt. 44, ¶¶ 73) and, among other things, using the MedValue AdWords account and trade secrets to run campaigns for Karan Vaswani and Assivo (Dkt. 44, ¶ 74).

Count X seeks a declaratory judgment that Mr. Bhatia is a fifty percent (50%) shareholder of MedValue, as opposed to Vaswani's contention that Mr. Bhatia is a 40% owner of MedValue. Count X alleges that, as of MedValue's formation, Mr. Bhatia and Raju Vaswani were 50/50 owners in MedValue. (Dkt. 44, ¶ 154). Later, although Mr. Bhatia initially agreed to a buy-out of 10% of Mr. Bhatia's ownership in MedValue, Raju Vaswani never paid any monies towards that buy-out or otherwise provided any other form of consideration for it. (Dkt. 44, ¶¶ 156, 158). Despite the fact that Mr. Bhatia and Raju Vaswani remain equal, 50/50 co-owners of MedValue, Raju Vaswani has improperly taken a 60% share of profits. (Dkt. 44, ¶ 161).

These claims also arise from the same nucleus of operative facts as the federal trade secret and trademark claims and would ordinarily be expected to be tried together in one judicial proceeding. *See Gibbs*, *supra*, 383 U.S. at 725 (a claim is so related when the federal and state claims "derive from a common nucleus of operative facts" and the claims are such that one would "ordinarily expect to try them all in one judicial proceeding."). "In order to satisfy the 'common nucleus of operative facts' standard, the facts involved in the state claim need only be loosely connected to the federal claim. *Ganan v. Martinez Mfg., Inc.*, No. 02 C 50412, 2003 WL 21000385, at *2 (N.D. Ill. May 2, 2003) (*citing Channell v. Citicorp*, 89 F.3d 379, 385 (7th Cir. 1996)). "Two factors courts generally look at to determine whether the state and federal claims are so related as to form part of the same case or controversy are: (1) whether the state claim realleges and incorporates allegations contained in the federal claim and (2) the temporal relationship between the two claims." *Id.* (citing *Murphy v. Village of Hoffman Estates*, 959 F.Supp. 901, 905 (N.D. Ill. 1997)).

Turning to the first factor, Counts IX and X allege by reference the identical factual situation alleged in Count I for Unfair Competition arising under the Lanham Act (*see* Dkt. 44, ¶ 88), and Count III for Misappropriation of Trade Secrets arising under the Defend Trade Secrets Act (*see* Dkt. 44, ¶ 106). *See Banks v. Chicago Board of Education*, 895 F.Supp. 206, 208 (N.D. Ill. 1995) ("the state law wrongful termination claim, incorporates all of the factual allegations made in Count I. … Because Count II alleges by reference the identical factual situation alleged in Count I, there is sufficient connection … for this Court to have subject matter jurisdiction. …").

Defendants cite to *Kupferberg, Goldberg & Niemark, L.L.C. v. Father & Son Pizza, Ltd.*, No. 95 C 3690, 1997 WL 158332, at *2 (N.D. Ill. Mar. 31, 1997) to support the position that no supplemental jurisdiction exists over Mr. Bhatia's conversion claim (Count IX). *Kupferberg*, however, is distinguishable because Mr. Bhatia's conversion claim is based on facts derived from the same nucleus of facts that support the trademark infringement and trade secrets claims. *Id.*

As to the second factor, Counts IX and X occurred contemporaneously with the federal claims and this Court should find that that there is a common nucleus of operative fact. *See Ganan*, 2013 WL 21000385, at *3 (finding a separation of three weeks between the events giving rise to the federal claim and state claim was a sufficient temporal relationship.)

**B.** ***Plaintiff's Declaratory Judgment Claim is Proper and is not Time Barred (Count X)***

In Count X, Plaintiff seeks a declaration that he remains a 50% owner in MedValue. As alleged, despite an initial agreement to a proposal for a buy-out of 10% of Mr. Bhatia's shares, no money or other consideration was ever provided by Raju Vaswani. Mr. Bhatia contends that they remain 50-50 owners. Raju Vaswani, on the other hand, has taken the position that his is a 60%

9

owner. Thus, Plaintiff has alleged material facts that give rise to the relief sought, *i.e.*, a declaration that he remains a 50% owner in MedValue and the Court should not decline to review the parties' dispute on this issue. This issue is also relevant to the parties' claims and defenses and is ripe for adjudication.

The issue of whether Mr. Bhatia and Raju Vaswani remain 50-50 owners in MedValue is relevant to Mr. Bhatia's claims and is ripe for adjudication. Raju Vaswani has taken the position that he is a 60% owner in the company, but never paid any consideration for the alleged 10% buy-out from Mr. Bhatia. (Dkt. 44, ¶¶ 158-61).

Defendants' argument that Plaintiff's claim is not a proper claim for declaratory relief is belied by the fact that Raju Vaswani filed his <u>own</u> counterclaim seeking declaratory judgment relief on this exact same issue earlier in this action. (Dkt. 20, p. 14, Count III, ¶¶ 24-27). In that counterclaim, Raju Vaswani specifically stated that "an actual, justiciable controversy exists between Vaswani and Bhatia regarding the division and allocations of shares in MedValue." (Dkt. 20, p. 14, Count III, ¶ 27).

Despite his earlier declaratory judgment counterclaim on this exact issue, Defendants now attempts to re-cast the claim as a breach of contract claim. But that is not what has been pled by Mr. Bhatia. Mr. Bhatia's claim is that he remains a 50% owner in the company because any agreement to sell 10% of his interest is void for lack of consideration. (Dkt. 44, ¶ 163).

The case cited by Defendants does not support their argument that the claim should be dismissed. In *Eyman*, the court found that Plaintiff had not properly pled a claim for declaratory relief when it sought a determination of liability for past actions, and noted that the defects in pleading such an action could not be cured by facts not in the record on appeal. The court also noted that the plaintiff's complaint was insufficient to state a cause of action for declaratory

judgment because it did not disclose an actual controversy between the parties. *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 397 (1993).

Here, unlike *Eyman*, there is an actual controversy between the parties concerning the ownership of 10% of MedValue. Mr. Bhatia claims 50-50 ownership with Raju Vaswani, while Raju Vaswani has taken the position that he is a 60% owner in MedValue. (Dkt. 44, ¶¶ 159-61).

Defendants also argue that, even if this Court determines that it has subject matter jurisdiction over Count X, this Court must nevertheless dismiss it as time-barred. (Dkt. 51, p.7). Defendants asserts two main arguments in support of their position: first, that Count X is barred by the five-year statute of limitations applicable to "civil actions not otherwise provided for" under § 13-205 of the Illinois Code of Civil Procedure; and second, that Count X is barred by the statute of limitations applicable to unwritten contracts. Both these arguments, however, are unpersuasive for a motion under FRCP 12(b)(6).

Again, despite filing its own counterclaim for declaratory relief on this issue, Defendants now attempt to re-cast the claim as a breach of contract claim, but that is not what has been pled by Mr. Bhatia. Even if it were, the time bar defense raises several factual issues which are not properly disposed of on a motion to dismiss.

Untimeliness is an affirmative defense that can be the basis for a Ru1e 12(b)(6) dismissal <u>only</u> if plaintiff alleges "all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Because Plaintiff has not done so, and factual issues need to be addressed in such an affirmative defense, untimeliness is not a basis for dismissal under FRCP 12(b)(6).

    **C.** ***The Second Amended Complaint is Properly Verified***

As required by FRCP 23.1, the Second Amended Complaint included a verification by Mr. Bhatia which stated that "I, Sunil Bhatia, hereby verify that I am familiar with the

11

allegations in the Second Amended Complaint, that I have authorized the filing of the Second Amended Complaint, and that the foregoing is true to the best of knowledge, information and belief." (Dkt. 44, p. 30). Defendants contend it does not meet the requirements of 28 USC §1746 because it does not include the specific language that verification was made "under penalty of perjury." Although Plaintiff believes Mr. Bhatia's verification was sufficient and meets the requirements of FRCP 23.1, an amended verification is attached hereto as Exhibit A. The amended verification makes the issue raised by Defendants moot.

### D. *Plaintiff's Derivative Claims Have Merit and Plaintiff Has Adequately Pled Why Demand on MedValue's Board Would be Futile (Counts I-IV, VI and VIII)*

Mr. Bhatia brings Counts I-IV, VI and VIII derivatively in the right and for the benefit of MedValue Offshore Solutions, Inc. to redress the unfair competition and trade secret misappropriation by all Defendants (Counts I-IV), and to redress Raju's Vaswani's breach of his fiduciary duty (Count VI) and breach of duty of loyalty to MedValue (Count VIII). Defendants argue that the derivative claims in Counts I-IV, VI and VIII do not comply with the requirements of Rule 23.1 because Plaintiff has failed to adequately plead and demonstrate that it would have been futile for him to make a demand on the MedValue board to properly respond to these claims. Defendants fail to address the test for such a determination and their arguments lack merit. Plaintiff has demonstrated why demand would be futile.

Because MedValue is incorporated under the laws of Illinois, Illinois law applies in determining whether a demand may be excused when shareholders file a derivative complaint on behalf of the company. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99 (1991). Illinois case law follows Delaware law in establishing demand futility requirements. *See In re Abbott Laboratories Deriv. Shareholders Litig.,* 325 F.3d 795, 803 (7th Cir.2003).

Delaware uses two tests for demand futility. The first test arises from *Aronson v. Lewis*,

473 A.2d 805, 811 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244, 253 (Del.2000), and "applies to claims involving a contested transaction, *i.e.*, where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). *Aronson* requires the plaintiff to "allege particularized facts creating a reason to doubt that (1) the directors are disinterested and independent or that (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* (internal quotation marks and brackets omitted) (citing *Aronson*, 473 A.2d at 814). "The test is in the disjunctive: if either prong is satisfied, demand is excused." *Westmoreland*, 727 F.3d at 725 (internal quotation marks and brackets omitted) (*quoting Brehm*, 746 A.2d at 256).

The second test is set forth in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), and "applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties." *Wood*, 953 A.2d at 140. Under the *Rales* test, a plaintiff must "allege particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* (internal quotation omitted) (*citing Rales*, 634 A.2d at 934).

Delaware's demand futility law does not require a plaintiff to "plead particularized facts sufficient to sustain 'a judicial finding' either of director interest or lack of director independence" or other disabling factor. *Grobow v. Perot*, 539 A.2d 180, 186 (Del.1988). Nor must it demonstrate a reasonable probability of success. *Rales,* 634 A.2d at 934-935. The proper inquiry under either test is whether plaintiffs have made a sufficient "threshold showing, through the allegation of particularized facts," that their claims have some merit. *See Westmoreland*, 727 F.3d at 729 (*citing Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

Here, Plaintiff has met that threshold under either test because it has alleged

particularized facts that show the derivative claims of trademark infringement (Counts I and II), trade secret misappropriation (Counts III and IV), breach of fiduciary duty to MedValue (Count VI), and breach of duty of loyalty to MedValue (Count VIII) claims have merit. There is <u>more</u> than a reason to doubt that Defendant Raju Vaswani, one of the only two board members of MedValue, is *not* disinterested and *cannot* be impartial or independent in pursuing claims against, himself, his son and Assivo.

As alleged, MedValue's Board consists only of Plaintiff, Mr. Bhatia, and Defendant Raju Vaswani. (Dkt. 44, ¶ 3). Specific reasons alleged by Mr. Bhatia for why demand on the MedValue board of directors to institute this action would be futile, wasteful and a useless act, include the following:

    a. Because Mr. Bhatia and Raju Vaswani are 50/50 owners in MedValue and the only two members of MedValue's board of directors, a majority of MedValue's directors, by definition, could not have exercised disinterested business judgment in responding to a demand to vigorously prosecute an action against Raju's Vaswani's son, Karan Vaswani and Karan Vaswani's company Assivo for unfair competition (Counts I and II) and trade secret misappropriation (Counts III and IV).

    b. Raju Vaswani, is the father of Karan Vaswani. Thus, Raju Vaswani is not capable of impartially considering a demand to commence and vigorously prosecute an action against Karan Vaswani and Karan's company, Assivo, Inc. for unfair competition (Counts I and II) and trade secret misappropriation (Counts III and IV).

    c. Further, Raju Vaswani faces substantial likelihood of liability for his breach of his fiduciary duties (Count VI) and breach of his duty of loyalty (Count VIII) to MedValue, as well as for his active participation in Assivo's unfair competition with MedValue (Counts I and II) and the misappropriation of MedValue's trade secrets (Counts III and IV) as described above, and any demand upon him would be futile.

(Dkt. 44, ¶¶ 86 and 87).

Defendant Raju Vaswani, the only other MedValue Board member, certainly is *not* "disinterested" with respect to the claims of trademark infringement, trade secret

14

misappropriation, breach of fiduciary duty and breach of duty of loyalty brought against him due to his substantial likelihood of liability. The allegations also create more than a "reasonable doubt" about whether a majority of the MedValue Board could make an impartial decision to bring and vigorously prosecute an action for trademark infringement and trade secret misappropriation claims against Karan Vaswani (Raju's son) and Assivo, which is a company that Raju and Karan Vaswani are alleged to be actively involved with, and actively involved with the acts that constitute trademark infringement and trade secret misappropriation. If Raju Vaswani is *not* impartial or a disinterested member of the Board, and based on the allegations he is not, then a majority of MedValue's Board is not disinterested.

Defendants argue that demand "unequivocally" would not have been futile because MV Outsourcing, Inc. changed its name to Assivo, Inc. after the lawsuit was filed. But Defendants focus on Assivo's actions is misplaced and not relevant to the demand issue. The fact that MV Outsourcing changed its name to Assivo does not mean that Raju Vaswani is not "disinterested" with respect to the claims against him and also does not mean he could be "impartial" with respect to pursuing claims against his son or Assivo (f/k/a MV Outsourcing).

E.  *Plaintiff has Sufficiently Identified its Trade Secrets (Counts III and IV)*

In Count III, Plaintiff accuses all Defendants of violating the federal Defend Trade Secrets Act of 2016. (Dkt. 44, ¶¶ 106-114). In Count IV, Plaintiff contends that all Defendants also violated the Illinois Trade Secrets Act. (Dkt. 44, ¶¶ 115-123).

Plaintiff specifically identified MedValue's trade secrets in Paragraph 68 of the Second Amended Complaint as:

> various advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and Google bid amounts, as part of various advertising and marketing strategies to attract business to MedValue and its service, MV Outsourcing, including extensive use of search

engine optimization ("SEO") techniques (collectively, "MedValue's Advertising and Marketing Trade Secrets").

(Dkt. 44, ¶ 68).

Defendants argue that Plaintiff failed to identify any trade secrets because Plaintiff did not identify "the SEO information, advertising keywords, search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, Google bid amounts and Google Adwords" protected as trade secrets.

While alleging what trade secrets were misappropriated does require some concreteness and specificity at this stage, the claims do not need to be as detailed as when the case is going to trial. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920-21 (N.D. Ill. 2001); *Mobile Mark, Inc. v. Pakosz*, 2011 WL 3898032, at *1 (N.D. Ill. Sept. 6, 2011).

At this dismissal-motion stage, based on the allegations, it is reasonable to infer (and MedValue gets the benefit of reasonable inferences right now) that the items identified by Plaintiff are MedValue trade secrets. Indeed, in the *Convenant* case cited by Defendants, the court found that plaintiff identified the trade secrets at issue with sufficient specificity by pointing to specific types of business information, *i.e.*, "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818–19 (N.D. Ill. 2014).

Defendants also argue that the trade secret claims should be dismissed because the "alleged trade secrets are publicly available or readily subject to disclosure through commercially available processes." First, this argument shows that Defendants' argument that the trade secrets were not adequately identified is without merit. Defendants cannot seriously argue on the one hand that they do not know what the trade secrets are, and on the other hand

16

argue that the alleged trade secrets are publicly available.  Second, whether the alleged trade secrets are not trade secrets is merely a defense that Defendants may raise and an issue to be determined at trial, but is not a ground for dismissal under FRCP 12(b)(6).

None of the cases cited by Defendants support their position that dismissal would be proper on those grounds at this stage.  The *Kewanee* case cited by Defendants was a Supreme Court case that addressed whether state trade secret protection is pre-empted by operation of the federal patent law.  *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 472 (1974).  In *Confold*, the 7th Circuit reviewed a district court's grant of summary judgment for the defendant with respect to breach of contract and unjust enrichment.  While the court generally discussed trade secrets and indicated that trade secrets could be properly reverse engineered, it did not state that such information is not a trade secret.

In *Abreu*, the court acknowledged that "all parties involved in this dispute recognize that the product formulas are trade secrets entitled to protection, we point out that trade secrets are not protected against discovery by fair and honest means, such as by independent invention, accidental disclosure, or reverse engineering."  The court also affirmed the trial court's finding that product formulas in products made available to the public are the property of the [owner]." *Abreu v. Unica Industrial Sales, Inc.*, 224 Ill.App.3d 439, 454, 166 Ill.Dec. 703, 586 N.E.2d 661 (1991).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motions to Dismiss (Dkt. Nos. 51 and 52).  In the event the Court dismisses any of Plaintiff's claims, the claims should be dismissed <u>without</u> prejudice.

Dated: January 11, 2019         RESPECTFULLY SUBMITTED,

By: /s/ *Michael I. Leonard*
    Michael I. Leonard
    John G. Bisbikis
    LEONARDMEYER LLP
    120 North LaSalle, Suite 2000
    Chicago, Illinois 60602
    (312) 380-6559
    mleonard@leonardmeyerllp.com
    jbisbikis@leonardmeyerllp.com
    Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 11, 2019, a copy of PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT was electronically filed with the Clerk of the Court and served on all registered individuals using the CM/ECF electronic notification system.

By: /s/ *Michael I. Leonard*