IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUNIL BHATIA, individually, and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC.,

Plaintiffs,

v.

RAJU VASWANI, an individual, KARAN VASWANI, an individual, ASSIVO, INC. (f/k/a MV OUTSOURCING, INC.), an Illinois Corporation,

Defendants.

Case No. 1:18-cv-02387

Hon. Robert M. Dow

**KARAN VASWANI AND ASSIVO, INC.'S MOTION TO MODIFY THE CURRENT DISCOVERY SCHEDULE AND TO REQUIRE PLAINTIFF TO IDENTIFY MEDVALUE OFFSHORE SOLUTIONS, INC.'S ALLEGED TRADE SECRETS**

Defendants Karan Vaswani and Assivo, Inc. (collectively, "Defendants") respectfully move this Court, pursuant to Federal Rule of Civil Procedure 26(d) to enter an order that: (1) strikes the current March 1, 2019 fact discovery cutoff date; (2) stays discovery in this matter pending resolution of Defendants' and defendant Raju Vaswani's motions to dismiss the Second Amended Complaint; and (3) directs plaintiff Sunil Bhatia to identify, with specificity, the trade secrets alleged in the Second Amended Complaint, and precludes Bhatia from adding, expanding, or amending the list of alleged trade secrets throughout the remaining lifespan of this matter. In support hereof, Defendants state as follows:

## FACTUAL BACKGROUND

1. On April 3, 2018, Bhatia initiated this action by filing a complaint that alleged claims for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), breach of duty and conversion. (Dkt. 1) On June 11, 2018, the Court entered a scheduling order that

called for fact discovery to be complete by March 1, 2019. (Dkt. 24)

2. Since that time, much has happened in this case.

3. ***First***, on June 28, 2018, Bhatia sought leave to file a First Amended Complaint. (Dkt. 26) Leave was granted and the First Amended Complaint (which included new claims, including trade secret claims) was filed on July 12, 2018. (Dkt. 35) Defendants moved to dismiss that First Amended Complaint. (Dkt. 38, 40)

4. ***Second***, on August 22, 2018, this Court stayed this action to permit the parties to participate in a settlement conference. (Dkt. 43) That conference occurred on October 16, 2018 (Dkt. 45) and the Court subsequently lifted the stay. (Dkt. 46)

5. ***Third***, on September 28 (*i.e.*, during the stay), Plaintiff filed a Second Amended Complaint. (Dkt. 44) Counts III and IV of the Second Amended Complaint allege trade secret misappropriation. Therein, Bhatia alleges that "MedValue has information that constitutes trade secrets relating to marketing and advertising of its services that are used in interstate commerce." (*See* Dkt. 44 ¶¶ 109, 118) Bhatia alleges Medvalue's trade secrets include advertising keywords, search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, Google bid amounts, and certain search engine optimization ("SEO") techniques. (Dkt. ¶ 68) The Second Amended Complaint does not specifically identify any of the alleged trade secrets, but merely provides categorical descriptions.

6. ***Fourth***, on November 5, 2018, this Court set a briefing schedule on Defendants' motions to dismiss the Second Amended Complaint. (Dkt. 49) The parties are in the midst of that briefing schedule and Defendants' reply is due on February 1, 2019. (Dkt. 49)

7. Thus, at present, the parties are still in the pleading stage of this case and it is not clear which of Plaintiff's counts (if any) may survive the pending motions to dismiss. Similarly,


the Court has not yet ruled on third-party defendant Varsha Bhatia's motion to dismiss the counterclaims asserted by Raju Vaswani. (*See* Dkt. 30) At this time, the parties have not exchanged Rule 26 initial disclosures.

8. Despite all of those events, the Court has never re-set the March 1, 2019 fact discovery cutoff.

9. On January 24, 2019, Bhatia issued far-reaching discovery requests to Defendants, including deposition notices, interrogatories, and requests for production. (*See* Exs. A-C hereto) Amongst other things, the document requests seek documents pertaining to Assivo, Inc.'s advertising information – the same broad category of information that Bhatia claims is Medvalue's trade secret. (Ex. C ¶ 18) Presumably, Bhatia issued that discovery because of the looming March 1, 2019 fact discovery cutoff.

## ARGUMENT

### I. The Court Should Strike The March 1, 2019 Fact Discovery Cutoff Date, And Stay Discovery Pending Ruling On The Motions to Dismiss the Second Amended Complaint

10. The current March 1, 2019 fact discovery cutoff was both reasonable and realistic when it was entered in June 2018. However, given the numerous amendments to the pleadings since that time (and the numerous pending dispositive motions), it is no longer reasonable or realistic. To date, none of the parties have served initial disclosures, and the Mandatory Initial Discovery Pilot program has not yet begun because the final answer(s) have not yet been filed. No depositions have been taken, and no discovery responses have been served. Thus, the parties are not in a good position to complete any discovery, much less all discovery, by March 1, 2019. Accordingly, Defendants seek to strike the March 1, 2019 cutoff and to establish a new discovery schedule when the Court rules on the various pending dispositive motions.

11. In addition, Defendant seek to stay discovery until such time as the Court rules on the various dispositive motions and sets a discovery schedule. This is necessary because, in late January (no doubt motivated by the looming March 1 deadline) Plaintiff propounded discovery on Defendants. Defendants respectfully submit they should not be required to respond to that discovery at this time.

12. ***First***, the Court may fully or partially grant Defendants' and Raju Vaswani's motions to dismiss the Second Amended Complaint, obviating (or, at a minimum, narrowing) the need for any discovery in this case. Until the dispositive motions are decided, it is impossible to determine the proper scope of discovery.

13. ***Second***, because of the developments in this case after entry of the June 11, 2018 minute order setting the fact discovery cutoff date (Dkt. 23), it is impracticable or impossible for Defendants (and, presumably, the remaining parties) to complete all fact discovery on or before March 1, 2019.

14. ***Third***, for the reasons set forth below, Defendants should not be required to respond to Bhatia's discovery requests before Bhatia identifies his trade secrets with specificity. Allowing Bhatia's discovery to proceed will force Defendants to disclose confidential business information before Bhatia has made known, with specificity, the trade secrets alleged in the Second Amended Complaint (thus allowing him to tailor the trade secret claims based on what he discovers in discovery).

15. The Court has the power to enter such orders. "District judges enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery in a given case." *Thermal Design, Inc. v. Amer. Soc'y of Heating, Refrigerating and Air-Conditioning Engrs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014); *see also GCIU–Employer Retirement Fund v.*

*Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009) (decisions on discovery matters are within the district court's discretion); *Brown–Bey v. United States*, 720 F.2d 467, 470–71 (7th Cir. 1983).

## II. Before Taking Any Discovery, Bhatia Should Be Ordered To Provide A Specific List Of The Alleged Trade Secrets

16. Bhatia has filed a complaint that does not identify his (or, more accurately, Medvalue's) trade secrets with any specificity. At this juncture, neither the Court nor Defendants understand specifically what specific "trade secrets" Bhatia is alleging were misappropriated. Indeed, one of the bases for Defendants' motion to dismiss is the fact that Bhatia's complaint fails to identify the trade secrets with sufficient particularity. Such lack of specificity is troubling, particularly now that Bhatia is seeking to take discovery from Defendants.

17. To be sure, a trade secret plaintiff ***may*** be entitled to such discovery. (After all, without such discovery, no plaintiff could determine if its trade secrets were being used or misappropriated.) However, before he obtains such discovery, Bhatia should be required to identify the specific trade secrets that he contends are at issue. If he is not required to do so, the possibility of discovery abuse looms very large. Requiring Bhatia to identify his trade secrets at the outset of the case will promote efficiency and prevent discovery abuse.

18. ***First***, requiring Bhatia to identify his specific trade secrets will narrow the scope of discovery. In the absence of such specification, the parties will presumably have to propound and respond to discovery regarding ***every*** aspect of their SEO, internet strategies, advertising, marketing plans, etc. That will require considerable time and money – and will be unnecessary if it turns out that Bhatia's trade secret claim relates only to some small aspect of any of the foregoing.

19. ***Second***, requiring Bhatia to identify his specific trade secrets will potentially permit the resolution of this case through a dispositive motion. If Bhatia is unable to articulate a specific

trade secret that merits legal protection (*e.g.*, if he attempts to claim that his use of certain ad words is enough to bar all of his competitors from using any similar terms) then Defendants may file a motion to dismiss or motion for summary judgment that can be resolved without any expensive discovery.

20. ***Third***, requiring Bhatia to identify his trade secrets at the outset will prevent him from conducting a fishing expedition into his competitor's technology and marketing methods, designs, and process capabilities. Even in the presence of a protective order, such discovery poses the risk that a party's confidential information will enter the competitive marketplace. That risk can be mitigated by narrowly defining the scope of discovery at the outset.

21. ***Fourth***, requiring Bhatia to identify his trade secrets will prevent him from obtaining discovery from Defendants and then crafting a list of "trade secrets" that is tailored to fit what he finds in discovery.

22. Considerations such as those have caused courts throughout Illinois and the United States to require trade secret plaintiffs to identify with specificity the alleged trade secrets at issue before they obtain discovery from the defendants. Indeed, courts considering trade secret claims routinely insist that plaintiffs identify their trade secrets with specificity before other discovery begins. *See MBL (USA) Corp. v. Diekman*, 112 Ill.App.3d 229, 240 (1st Dist. 1983) (explaining that a "plaintiff would be unjustly enriched and defendant irreparably harmed if plaintiff were allowed to examine defendant's methods, designs and processes" before establishing that it owned trade secrets); *AutoMed Tech., Inc. v. Eller*, 160 F.Supp.2d 915, 925-26 (N.D. Ill. 2001) (requiring plaintiff "to particularize which of its secrets were allegedly misappropriated" before compelling defendants to reveal their own through discovery and stating that "[w]e will not permit plaintiff to go on a fishing expedition through [defendant's] files"). "It is not enough to claim that defendants

will be able to learn of the details through discovery. Plaintiff must provide them now so [the court] can evaluate the relevance of plaintiff's discovery and address any objections." *AutoMed* at 925-26. As noted above, such a procedure protects defendants from fishing expeditions, helps courts determine the permissible outer bounds of discovery, enables defendants to prepare a meaningful defense, and prevents plaintiffs from drafting their trade secrets based on the defendants' confidential information. *See DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007).

23. This approach of requiring pre-discovery identification of a plaintiff's purported trade secrets has been followed by courts around the country:

<u>California</u>:

- Cal. Code Civ. Proc. § 2019(d) (West 2007);
- *Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) ("Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope of permissible discovery without an identification of plaintiff's alleged trade secrets.").

<u>Delaware:</u>

- *Data Gen. Corp. v. SCI Sys., Inc.*, Civ. A. No. 5662, 1978 WL 22033, at *1 (Del. Ch. Nov. 27, 1978) ("[A]n initial disclosure by the plaintiff of the trade secrets that it had provided the defendant was proper and ***required*** before the plaintiff could proceed with its discovery of the defendant.") (emphasis added);
- *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. Ct. Jan. 2, 1986) ("[T]he plaintiff will normally be ***required*** first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.") (emphasis added);
- *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) ("As both this Court and the Delaware Court of Chancery have recognized, disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery.").

<u>Florida</u>:

- *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1325 (S.D. Fla. 2001) ("Although Florida has not enacted a statute like California's that compels disclosure of trade secrets, the same result is achieved under Florida's case law.").

Massachusetts:

- *L-3 Comm. Corp. v. Reveal Imaging Techs., Inc.*, No. 035810BLS, 2004 WL 2915743, at *13 (Mass. Sup. Ct. Dec. 2, 2004) ("[T]he plaintiff will normally be ***required*** to first identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.") (emphasis added).

Michigan

- *Magna Donnelly Corp. v. Guardian Indus.*, Case No. 06-56037, at ¶ 3 (Ottawa County, Mich., Jan. 27, 2007) (entering protective order such that plaintiffs could not take further discovery of defendant until plaintiff identified its trade secrets);

- *Dura Global, Techs., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945-DT, 2008 WL 2064516, at *1 (E.D. Mich. May 14, 2008) (noting that court had previously stayed discovery of defendant pending identification of plaintiff's trade secrets).

Minnesota:

- *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Ordering the listing of trade secrets at the outset of the litigation is a common ***requirement***.") (emphasis added).

New York:

- *Ray v. Allied Chem. Corp.*, 34 F.R.D. 456, 457–58 (S.D.N.Y. 1964) ("[Filing a trade secret case] does not automatically entitle the plaintiff to obtain disclosure of the alleged offending processes in aid of plaintiff's pretrial discovery—otherwise it would be a simple matter to obtain one's trade secret by the mere assertion of a claim.").

- *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.").

Utah:

- *StorageCraft Tech. Corp. v. Symantec Corp.*, No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009) (stating that the "correct legal standard" is that the plaintiff "is ***required*** to identify its claimed trade secret with reasonable particularity before being allowed discovery on that claim") (emphasis added).

24. The animating principle in each of these cases is that until a plaintiff identifies its purported trade secrets, defendants cannot know where to draw the line with relevance objections and courts cannot know what discovery should be allowed.

25. In identifying the alleged trade secrets at issue in this case, Bhatia should provide Defendants with a numbered list of alleged trade secrets (with specificity for each enumerated item) of the alleged trade secrets, rather than make sweeping references to Medvalue's "advertising and SEO methods." As the Seventh Circuit has stated, it is not enough for a plaintiff to "direct the court to a broad area of technology and assert that something there must have been secret." *See, e.g., Minn. Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595 n.2 (7th Cir. 2001); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (rejecting as impermissible trade secret identification a 43-page document describing methods and processes underlying plaintiff's software package); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. 1993) (rejecting assertion that over 3000 pages of technical information constituted trade secrets and noting that plaintiffs "have failed to specify with any exactitude which pieces of information actually constitute trade secrets"); *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (superseded by statute) (chastising plaintiff for "consistently fail[ing] throughout this litigation to identify any particularized trade secrets actually at risk); *Composite Marine Propellers, Inc. v. Van der Woude*, 962 F.2d 1263, 1266–68 (7th Cir. 1992).

26. Bhatia's pleading merely provides categorical descriptions of broad areas of technology such as marketing information and strategies related to SEO and Google Adwords campaigns. A plaintiff that does not identify its trade secrets with specificity risks dismissal of the claim. *See Nilssen v. Motorola, Inc.*, 963 F. Supp. 664, 672 (N.D. Ill. 1997).

27. Moreover, the Court cannot effectively resolve discovery disputes without a list of the specific and particular trade secrets alleged by Bhatia. Only if Bhatia has first specified the alleged trade secrets can the Court determine if discovery requests are overbroad or relevant. *See, e.g.*, *Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 989 (S.D. Cal. 1999) (summarizing cases holding that early identification of alleged trade secrets is necessary for courts to be able to determine the relevance of other discovery requests).

28. Bhatia's complaint does not identify (much less provide a list of) the specific trade secrets at issue. Such generality is insufficient for describing a trade secret in the context of requests for injunctive relief or summary judgment. *United States Gypsum Co. v. LaFarge North America, Inc.*, 508 F. Supp. 2d 601 at 636 (noting that reference to an 11,000 page operating manual would be insufficient for identification of trade secrets); *IDX Sys.*, 285 F.3d at 583 (noting that vague references to large areas of technology do not meet the definition of a trade secret); *Composite Marine*, 962 F.2d at 1267; *FMC Int'l A.G. v. ABB Lummus Global, Inc.*, No. Civ.A.H-04-3896, 2005 WL 1745465, at *3 (S.D. Tex. July 22, 2005); *Compuware Corp. v. Health Care Serv. Corp.*, No. 01 C 0873, 2002 WL 485710, at *7 (N.D. Ill. Apr. 1, 2002); *Motorola, Inc. v. DBTEL, Inc.*, No. 02 C 3336, 2002 WL 1610982, at *16 (N.D. Ill. July 22, 2002).

29. In *IDX*, the court stated: "unless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job." *IDX*, 285 F.3d at 583. The *IDX* court went on to explain that until a plaintiff identifies that information which it believes is at issue, the issues are not properly framed for discovery and decision. *Id.* at 584. ("[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition."). The law is clear: Bhatia must provide the details.

30. Bhatia should not be permitted to amend the trade secret list, or add specificity to it, once discovery begins. *See Thermodyne Food Service Products, Inc. v. McDonalds Corp.*, 940 F. Supp. 1300 at 1304 n.4 (refusing to permit plaintiff to amend its disclosure of asserted trade secrets that was attached to its amended complaint). This will protect Defendants, as otherwise Bhatia might seek to add purported "trade secrets" if Defendants were able to demonstrate that the listed items are in the public domain or do not otherwise constitute protectable trade secrets. *Lynchval Sys., Inc. v. Chi. Consulting Actuaries, Inc.*, No. 95 C 1490, 1998 WL 151814, at *6 (N.D. Ill. Mar. 27, 1998) ("The court cannot, as a matter of law and common sense, permit the plaintiffs to prove misappropriation by merely looking at a product allegedly created by an act of misappropriation without comparing it to the product from which the secrets were allegedly derived.").

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully move this Court for an order that: (1) strikes the March 1, 2019 fact discovery cutoff date; (2) stays discovery generally until the Court rules on Defendants' and Raju Vaswani's motions to dismiss the Second Amended Complaint; and (3) directs Bhatia to provide (before any discovery occurs) a list of the alleged trade secrets at issue in this case, in numbered paragraphs, with specificity, and precludes Bhatia from later adding to this list or adding specificity to the items listed thereon.

Dated: February 1, 2019      Respectfully submitted,

By: /s/ Timothy D. Elliott
Timothy D. Elliott
Christopher R. Claybough
Rathje Woodward LLC
300 E. Roosevelt Road, Ste. 300
Wheaton, Illinois 60187
(630) 668-8500
telliott@rathjewoodward.com

cclaybough@rathjewoodward.com
*Attorneys for Defendants*
*Karan Vaswani and Assivo, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2019, I electronically filed the foregoing document with the Clerk of the Court utilizing the Court's CM/ECF filing system, which will send notification of filing to the following counsel of record for the parties:

LeonardMeyer, LLP
Michael I. Leonard
120 N. LaSalle, Ste. 2000
Chicago, Illinois 60602
(312) 380-6559
mleonard@leonardmeyerllp.com
*Attorneys for Plaintiff Sunil Bhatia*

Huck Bouma, PC
Thomas Andrew Christensen
Jenna Nicol Wadulak
1755 South Naperville Road
Suite 200
Wheaton, Illinois
(630) 221-1755
tchristensen@huckbouma.com
jwadulak@huckbouma.com
*Attorneys for Defendant Raju Vaswani*

/s/ Timothy D. Elliott