**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUNIL BHATIA, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) | |
| | ) | Case No. 18-cv-2387 |
| Plaintiff, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| RAJU VASWANI, an individual, KARAN VASWANI, an individual, MV OUTSOURCING INC., an Illinois Corporation | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| RAJU VASWANI, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., an Illinois Corporation, | ) ) ) ) ) | |
| Counter-plaintiff and Third-party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| SUNIL BHATIA, an individual, | ) ) | |
| Counter-defendant, | ) ) | |
| and | ) ) | |
| VARSHA BHATIA, an individual, | ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sunhil Bhatia and Raju Vaswani spent more than a decade operating a business together. Now they are suing each other over the breakdown of their business relationship. Sunil[1] accuses Raju of using funds and assets from their joint venture, MedValue Offshore Solutions, Inc., to starting a competing business with his son, and he asserts some claims on behalf MedValue. In counterclaims and a third-party complaint, Raju accuses Sunil and his wife of operating a side business with MedValue funds, and he also asserts some claims on behalf of MedValue.

Of the fifteen counts at issue, only two arise from federal statutes. Now before the Court are Defendant (and counter-plaintiff) Raju Vaswani's motion [51] to dismiss the second amended complaint [44], Defendant Karan Vaswani's motion [52] to dismiss second amended complaint, and Third-party Defendant Varsha Bhatia's motion [70] to dismiss the first amended counterclaims and third-party complaint [64]. Raju's and Karan's motions [51] and [52] are granted in part and denied in part. Specifically, the motions to dismiss are granted with respect to Counts V through X in the second amended complaint, which are dismissed for lack of subject matter jurisdiction. The motions are denied with respect to Counts I through IV in the second amended complaint. Plaintiff Sunil Bhatia is directed to refile his second amended complaint with only the remaining counts (I through IV) as well as a certification page that complies with 28 U.S.C. § 1746 by October 15, 2019. The Court also dismisses the first amended counterclaim and third-party complaint [64] for lack of subject matter jurisdiction. Varsha's motion [70] is stricken as moot. This case is set for further status hearing on October 23, 2019 at 9:00 a.m.

---

[1] Because so many of the relevant players in the dispute have the same last name, the Court uses first names where necessary to avoid confusion.

# I.    Background[2]

Plaintiff Sunil Bhatia is a citizen and resident of Illinois who resides in Will County, Illinois. Third-party Defendant Varsha Bhatia is Sunil's wife. MedValue Offshore Solutions, Inc. is a corporation organized and existing under Illinois law with its principal place of business located in Oak Brook, Illinois. Defendant Raju Vaswani is a citizen and resident of Illinois who resides in DuPage County, Illinois. Defendant Karan Vaswani, Raju's son, is a citizen and resident of Illinois who resides in Cook County, Illinois. Defendant Assivo, Inc. (formerly MV Outsourcing, Inc.) is a corporation organized and existing under Illinois law.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts described in the second amended complaint took place in this district, and at all relevant times Defendants regularly and continuously conducted business within this district. This Court has original jurisdiction over Counts I and III of the second amended complaint under 28 U.S.C. § 1331 because MedValue is asserting claims for unfair competition under the Lanham Act (15 U.S.C. § 1125(a)) (Count I), and trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1831) (Count III). Whether the Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(a) remains in dispute, as discussed below.

MedValue Offshore Solutions provides data entry, data capture, and data-processing services. Sunil and Raju started MedValue together in 2003. They began as equal co-owners, each holding 50% of the company's stock. Since the company's beginning, Sunil and Raju have been its only employees and the only members of its Board of Directors, with Raju serving as the

---

[2] The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Chairperson, President, and CEO, and Sunil serving as the Treasurer, Secretary, Vice President, Chief Operating Officer, and Chief Technology Officer.

Sunil alleges that, in 2006, Raju offered to buy 10% of MedValue's shares from him, but never paid. As a result, Sunil claims that they are still 50/50 owners of MedValue. The second amended complaint seeks, among other things, a declaratory judgment pursuant to 735 ILCS 5/2-701 that Sunil and Raju each owns 50% of MedValue. In contrast, Raju's first amended counterclaim and third-party complaint [64] alleges that, while they started as 50/50 co-owners, Sunil transferred to Raju 4% of the company's shares in exchange for $40 in cash on February 16, 2004. It further alleges that Sunil transferred to Raju another 6% of MedValue's shares in exchange for $60 in cash on January 1, 2006. Raju seeks a declaratory judgment stating that he owns 60% of MedValue, and Sunil owns 40%.

MedValue began by using India-based suppliers to provide data entry services to U.S. based healthcare providers. By 2006, it expanded beyond the healthcare market. Around that time and corresponding with the expansion of the business, MedValue registered its second domain name (data-entry-services.com) and began offering services under the mark "MV Outsourcing Solutions." Around that time, MedValue also began using the mark "MV Outsourcing" in connection with its services as a shortened version of the "MV Outsourcing Solutions" mark.

According to Sunil, in May 2017, Raju sought to have his son Karan made a partial owner or an employee of MedValue. Karan prepared proposed marketing materials and a new logo for MedValue. See [44-3]. The proposed marketing materials contained a copyright notice for MedValue Offshore Solutions, Inc. Sunil refused to bring Karan into the company. In June 2017, Raju repeated the request to make Karan an employee or partial owner of MedValue. Sunil again

refused, and Raju threatened that he and Karan would start a separate, competing business to draw customers away from MedValue.

The second amended complaint asserts that Raju and Karan made good on that threat by registering the corporate entity MV Outsourcing, Inc. with the Illinois Secretary of State, registering "TaskGenie" as an assumed name, and creating two domains for the new business, task-genie.com and mvoutsourcing.com. (MV Outsourcing's name was later changed to Assivo, Inc.) The home page of the mvoutsourcing.com website displayed the name "MV Outsourcing" in connection with the promotion, marketing and sale of services that compete with MedValue's services. See [44-4]. The website also displayed a logo that is identical to the one Karan used in the marketing materials that Raju proposed for MedValue. The copyright notice at the bottom of mvoutsourcing.com states that the webpages are copyrighted work of "MV Outsourcing," not MedValue. The second amended complaint asserts that mvoutsourcing.com is controlled by Assivo, Raju, and Karan.

The second amended complaint also describes certain alleged trade secrets owned by MedValue, including "advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and Google bid amounts, as part of various advertising and marketing strategies to attract business to MedValue and its service, MV Outsourcing, including extensive use of search engine optimization ('SEO') techniques." [44] at 10-11. Information relating to MedValue's alleged trade secrets is stored in a password protected MedValue AdWords account with Google. The second amended complaint alleges that Raju removed Sunil's access to the MedValue AdWords account, gave administrative access to an email address at Assivo, and gave Karan and Assivo access to MedValue's alleged trade secrets, allowing Assivo to divert customers away from MedValue.

The second amended complaint also alleges that Raju misused a MedValue credit card. According to Plaintiff, for years Raju has charged MedValue's monthly marketing expenses to a credit card that MedValue pays off. Over the past year or so, the monthly charges have remained consistent, but Sunil says the charges are for Assivo's marketing expenses, not MedValue's, even though MedValue continues to pay off the card.

On April 3, 2018, Sunil filed his first complaint [1] in the case before this Court. After various motions and filings not essential to resolving the motions now before the Court, Sunil filed his second amended complaint [44] on September 28, 2018, alleging eight state law claims and two federal claims:

- COUNT I: Unfair Competition Claim under 15 U.S.C. § 1125(a) as to all Defendants (brought derivatively on behalf of MedValue)
- COUNT II: Unfair Competition Claim under Common Law as to all Defendants (brought derivatively on behalf of MedValue)
- COUNT III: Misappropriation of Trade Secrets, Defend Trade Secrets Act (18 U.S.C. §§ 1831-1839) as to all Defendants (brought derivatively on behalf of MedValue)
- COUNT IV: Misappropriation of Trade Secrets, Illinois Trade Secrets Act (765 ILCS 1065, *et seq.*) as to all Defendants (brought derivatively on behalf of MedValue)
- COUNT V: Breach of Raju Vaswani's Fiduciary Duty to Sunil Bhatia
- COUNT VI: Breach of Raju Vaswani's Fiduciary Duty to MedValue (brought derivatively on behalf of MedValue)
- COUNT VII: Breach of Raju Vaswani's Duty of Loyalty to Bhatia
- COUNT VIII: Breach of Raju Vaswani's Duty of Loyalty to MedValue (brought derivatively on behalf of MedValue)
- COUNT IX: Conversion as to Raju Vaswani
- COUNT X: Declaratory Judgment, pursuant to 735 ILCS 5/2-701, as to Raju Vaswani

On December 7, 2018, Raju filed a motion to dismiss [51] the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(l), 12(b)(6) and 23.1, which Karan joined (see [52]). Raju's motion argues:

- Counts V through X should be dismissed, because those state law claims and the federal claims do not derive from a common nucleus of operative facts, so the Court lacks subject matter jurisdiction
- Counts V through VIII should be dismissed because the state law claims substantially predominate over the federal law claims

- Count X should be dismissed as time-barred, or because it does not present a proper claim for declaratory judgment
- Counts I, II, III, IV, VI and VIII should be dismissed because the second amended complaint does not include the verification required for derivative claims under 28 U.S.C. § 1746
- Counts I, II, III, IV, VI, and VIII should be dismissed for failure to adequately plead or demonstrate demand futility
- Counts III and IV should be dismissed for failure to state a claim because Sunil failed to identify MedValue's "trade secrets"

On February 5, 2019, Sunil filed an "Amended Verification regarding response to motion, 53," which appears to be a verification page intended to accompany his second amended complaint.

On February 8, 2019, Raju filed his first amended counterclaim and third-party complaint [64].[3] Raju alleges, in relevant part, that he paid Sunil $40 in cash for 4% of MedValue's shares on February 16, 2004, and $60 in cash for an additional 6% on January 1, 2006. He also claims that Sunil and his wife Varsha started a real estate business in 2011, even though Sunil was expected to devote substantially all of his professional time, efforts and attention exclusively to MedValue. Raju further claims that Sunil and Varsha used MedValue funds to purchase computers, telephones, data plans and internet account, which they used for their real estate business. Raju also says that Sunil changed the registration of data-entry-services.com from MedValue to Sunil personally in 2015, and more recently barred Raju from accessing MedValue's technology infrastructure, including email servers, web servers, and other key business information.

The first amended counterclaim and third-party complaint [64] sets forth five state law claims:

---

[3] On March 11, 2019, Raju filed a verification for the first amended counterclaim and third-party complaint. See [74]. The Court considers Raju's allegations in this filing as part of its inquiry into subject matter jurisdiction. See *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015) ("the district court also may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists.").

- Count I: Breach of Fiduciary Duty against Bhatia and V. Bhatia (brought derivatively on behalf of MedValue)
- Count II: Civil Conspiracy to Breach Fiduciary Duties against Bhatia and V. Bhatia (brought derivatively on behalf of MedValue)
- Count III: Aiding and Abetting Breach of Fiduciary Duty against. V. Bhatia (brought derivatively on behalf of MedValue)
- Count IV: Declaratory Judgment against Bhatia
- Count V: Breach of Fiduciary against Bhatia

Third Party Defendant Varsha moved [70] to dismiss Counts I and II of the second amended complaint against her, arguing that she owed no fiduciary to Raju or MedValue.[4]

## II. Legal Standard

The standard that the Court applies to a Federal Rule of Civil Procedure Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (known as a "facial attack"), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus*, 322 F.3d at 946. A motion to dismiss state law claims that do not share a common nucleus of operative fact with claims over which the court has original jurisdiction falls into this category. See *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1089 (N.D. Ill. 2005) ("Motions that dispute whether claims derive from a common nucleus of operative facts challenge the sufficiency of the jurisdictional allegations" and are governed by the facial attack standard*); Freiburger v.*

---

[4] The motion to dismiss seeks "an Order dismissing all Counts (I and II) of the First Amended Third-Party Complaint against [Varsha]," ([70] at 4) though Count III also seems to assert a claim against her. As explained below, the Court resolves the first amended counterclaim and third-party complaint on jurisdictional grounds and need not address this apparent discrepancy.

*Emery Air Charter, Inc.*, 795 F. Supp. 253, 256–57 (N.D. Ill. 1992). In ruling on the motion, the district court also may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden of proof is on the party asserting that jurisdiction exists—here, Plaintiff Sunil. *Id.*; see also *Gonzalez v. Bank of Am., N.A.*, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) ("the plaintiff bears the burden of establishing the basis for the court's jurisdiction").

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Similarly, in evaluating a motion to dismiss under Fed. R. Civ. P. 23.1, the court accepts as true all of Plaintiff's well-pleaded factual allegations. See *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003); *In re Discover Fin. Servs. Derivative Litig.*, 2015 WL 1399282, at *2 (N.D. Ill. 2015).

## III. Analysis

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction (FRCP 12(b)(1))

As an initial matter, the Court must raise and resolve two issues relating to its jurisdiction over certain counts of the second amended complaint. First, do Counts V through X arise from a common nucleus of operative facts, so the Court can exercise supplemental jurisdiction over them? Second, even if they do derive from a common nucleus of operative fact, should the Court, in the exercise of its discretion, dismiss Counts V through X because those state law claims would substantially predominate over the federal law claims? As explained below, because the Court answers the first question in the negative and the second in the affirmative, Counts V through X will be dismissed.

#### 1. Common Nucleus of Operative Fact

Where a district court has original jurisdiction over one claim, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right," (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)), but "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive

from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423 (7th Cir.1995) (citing *Gibbs*, 383 U.S. at 725). The phrase is somewhat amorphous,[5] but "[a] loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995), and *Sween*, 54 F.3d at 424). However, it is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009) (citing *Chaney v. City of Chicago*, 901 F. Supp. 266, 270 (N.D. Ill. 1995)). Furthermore, the "facts linking state to federal claims must be 'operative,' *i.e.*, they must be 'relevant to the resolution of' the federal claims." *U.S. v. Clark*, 2010 WL 476637, * 1 (N.D. Ill. 2010) (citing *Berg*, 372 F. Supp. 2d at 1093); see also *General Auto Serv. Station v. The City of Chicago*, 2004 WL 442636, at *12 (N.D. Ill. 2004) (state law claim that provided "factual background" for federal constitutional claim was not sufficiently related to give rise to supplemental jurisdiction).

Count I, for unfair competition under 15 U.S.C. § 1125(a), deals with Assivo's alleged use of MedValue's mark starting in mid-2017. The facts central to resolving Count I, as pled in the second amended complaint, likely relate to MedValue's alleged trademark, whether Assivo used it, customer confusion, and other similar topics. Count III, for misappropriation of trade secrets under 18 U.S.C. § 1836(b), addresses misappropriation of MedValue's alleged trade secrets, also in mid-2017. The facts central to resolving Count III are likely to relate to the information MedValue claims as trade secrets, whether MedValue took steps to protect the secrecy of the information, Raju and Assivo's access to the information, and other similar topics.

Counts II and IV, as state law analogs to Counts I and III respectively, share a common nucleus of operative facts; the elements of the federal and state claims are very similar, and to

---

[5] "No one has come up with a better phrase, despite a lot of trying, so we apply this one as best we can." *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018).

prevail on those state law claims, Sunil would have to present the same or almost the same evidence that he would need to submit to prevail on the analogous federal claims. See *Crystal Visions, Inc. v. EC Grow, Inc.*, 2019 WL 4166860, at *3 & n.3 (N.D. Ill. 2019) (analyzing unfair competition claims under Lanham Act and common law together); *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 759 (N.D. Ill. 2018) ("The Court applies the same analysis for the Lanham Act and common law claims."); see also *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at *2 (N.D. Ill. 2017) (analyzing federal Defend Trade Secrets Act claims and Illinois Trade Secrets Act claims together because the "pertinent definitions of the two acts overlap"); *Vendavo, Inc. v. Long*, 2019 WL 4139000, at *5 (N.D. Ill. 2019) (same). Thus, the Court has supplemental jurisdiction over Counts II and IV under 28 U.S.C. § 1367(a).

On the other hand, the facts necessary to resolve the state law claims in Counts V through X are separate and distinct from the facts necessary to resolve the federal trademark and trade secrets claims. See *White v. Addante*, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (federal and state claim do not share common nucleus of operative facts because they do not share common elements of proof); *Prudential–Bache Secs., Inc. v. Lisle Axis Assoc.*, 657 F. Supp. 190, 195 (N.D. Ill. 1987) ("'[o]perative fact,' as the term itself demonstrates, is a proof-oriented concept."); *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 998–99 (E.D. Mich. 1996) (noting that plaintiff's state and federal law claims all arose from defendant's efforts to collect a debt and that when "viewed from this broad perspective" the claims shared a common set of facts, but finding no supplemental jurisdiction because "upon closer inspection, it is apparent that [p]laintiff's state and federal claims do not share any of the same 'operative facts * * * the facts that are relevant to the resolution of [the federal claim] are completely separate and distinct from the facts that bear on

[p]laintiff's state claims"); see also *Sommese v. Am. Bank & Tr. Co.*, 2012 WL 3006824, at *8 (N.D. Ill. 2012).

Counts V through X address topics beyond or unrelated to trademarks or trade secrets, stretching back up to fifteen years. In order to provide the declaratory judgment Sunil seeks in Count X, the Court would have to look back to 2004 and 2006 to determine whether Sunil did in fact transfer any portion of his shares of MedValue to Raju. This has nothing to do with trademarks or trade secrets and requires evidence dating much farther back than the few years at issue in the trademark and trade secret claims.

Count IX alleges conversion of "monies and other assets belonging to Plaintiff." [44] at 26. Because Count IX is not pled derivatively, it apparently refers to money and assets of Sunil, not of MedValue. As best the Court can tell, this means a share of MedValue's profits from the last thirteen to fifteen years that Raju took, claiming to be a 60% owner, when (according to Sunil) Raju was only a 50% owner. If so, this Count also requires examination of evidence from more than a decade ago. Sunil's response brief argues that the property at issue is MedValue's Google AdWords account. [53] at 7. But that is not what the second amended complaint says, and "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). Count IX, as pled, does not require or even rely on proof of facts central to the trademark or trade secret claims.

Counts V through VIII allege violations of Raju's fiduciary duty to Sunil and to MedValue, as well as violations of Raju's duty of loyalty to Sunil and to MedValue. These claims do assert liability for "[d]isclosing and misusing MedValue's Advertising and Marketing Trade Secrets" (see, e.g., [44] at 21), but the scope of the claims is much broader, and will include evidence on

the creation of Assivo, redirecting customer and potential customer inquiries from MedValue to Assivo, and—wholly unrelated to trademarks or trade secrets—whether Raju used a MedValue credit card for costs related to running Assivo.

Except for the limited crossover in the fiduciary duty and duty of loyalty claims, none of the key facts for resolving Counts V through X are of importance to resolving the federal trademark and trade secret claims in Counts I and III. The grievances in the two sets of claims do not overlap (see *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018)), and the two sets of claims do not come from a "single course of action" such that the "factual and legal issues are identical." *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 932 (7th Cir. 1996). Therefore, they do not share a common nucleus of operative facts.

Raju's counterclaims and third-party claims are essentially responses to the state law claims in Counts V through X. Counterclaim Count IV seeks a declaratory judgment that Raju owns 60% of the company (as opposed to 50%, as Count X of the Complaint claims). Counterclaim Counts I, II, III, and V are for breaches of fiduciary duty by Sunil and Varsha, mirroring Counts V through VIII in the second amended complaint. For reasons parallel to those stated above, the state law counterclaims and third-party claims do not share a common nucleus of operative facts with the federal claims in the operative complaint.

Furthermore, the interests of "judicial economy, convenience and fairness to litigants" do not demand that both sets of claims be tried together in federal court. *Gibbs*, 383 U.S. at 726. As explained above, since the evidence required to prove the two sets of claims is materially distinct, neither Sunil nor Raju will suffer substantial inconvenience, prejudice, or even duplication of effort litigating the state claims in state court. As the lawsuit is still in its early stages, the Court has not committed "substantial judicial resources" to the state claims such that dismissal will cause a

substantial duplication of effort." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Furthermore, the "correct disposition" of the state law claims is not "so clear as a matter of state law that it could be determined without further trial proceedings and without entanglement with any difficult issues of state law" that considerations of judicial economy warrant retention and decision rather than relinquishment of the case to the state court. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).

For the foregoing reasons, the Court concludes that it lacks supplemental jurisdiction over Counts V through X in the second amended complaint, and over Counts I through V in the first amended counterclaim and third-party complaint. Counts V through X in the second amended complaint are dismissed without prejudice, and the entirety of the first amended counterclaim and third-party complaint is dismissed without prejudice.[6]

2.     *State Law Claims Substantially Predominate Over Federal Claims*

28 U.S.C. 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim if it substantially predominates over the original claim or in exceptional circumstances in which there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(2), (4); see also *Koresko*, 503 F.3d at 614–15. The "power [to adjudicate state law claims] need not be exercised in every case in which it is found to exist. [Rather] [i]t has consistently been recognized that pendent [now supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. The Seventh Circuit has "acknowledge[d] the broad discretion of district judges in making judgments concerning the retention of supplemental claims." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). "[I]f it appears that the state issues

---

[6] Because the Court disposes of Count X on jurisdictional grounds, it declines to address Defendants' arguments that Count X is time-barred or not the proper subject of a declaratory judgment under Illinois law.

15

substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–277; see also *Green Valley Investments v. Winnebago Cty., Wis.*, 794 F.3d 864, 869–70 (7th Cir. 2015).

Here, the state law claims in the second amended complaint would substantially predominate over the federal claims in terms of proof and scope, as would the counterclaims and third-party claims. As noted above, litigation of Count X and likely Count IX would require proof dating back to 2004 regarding whether Sunil effectuated two transfers of stock to Raju. Consideration of Counts V through VIII, and possibly IX, would require evidence on the creation of Assivo, redirecting customer and potential customer inquiries from MedValue to Assivo, and whether Raju used a MedValue credit card for costs related to running Assivo. If lumped together with the federal claims, the Court would spend a great deal of its time on proof relevant only to state law claims, much of it from a decade or more before the alleged violation of federal law took place. In the Court's judgment, "it appears that the that the state issues substantially predominate * * * in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought" and therefore should be "dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27.

The same analysis applies to the first amended counterclaim and third-party complaint, which asserts five state law claims and no federal claims. Counts I, II, III and V all would include evidence related to the real estate business that Raju claims Sunil and Varsha have been running since 2011, none of which is related to MedValue's trademarks or trade secrets, and most of which occurred years before the alleged violations of federal law. The remaining claim, Count IV, is essentially the mirror image of Count X in the second amended complaint, simply seeking a ruling

in Raju's favor rather than Sunil's—and it is unrelated to MedValue's trademarks or trade secrets and would require proof dating back to 2004 regarding whether Sunil effectuated two transfers of stock to Raju. As in Counts V through X in the second amended complaint, the proof and scope of issues raised by first amended counterclaim and third-party complaint differ significantly from Counts I and III in the second amended complaint and would substantially predominate over the federal claims. *Id.*

Therefore, even if the Court had supplemental jurisdiction over Counts V through X, the Court would decline to exercise it, as those state law claims would predominate over the federal claims in Counts I and III. See *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir. 2008) (concluding that district court did not abuse its discretion in declining to exercise supplemental jurisdiction over plaintiff's seven state law claims, on which no other judicial resources had been expended). For the same reasons, the Court would decline to exercise supplemental jurisdiction over the five state law claims in the first amended counterclaim and third-party complaint.

### B. Compliance with U.S.C. § 1746

Defendants also argue that the Court should dismiss Plaintiff's derivative claims for failure to comply with 28 U.S.C. § 1746. At this point, Counts I through IV remain in the case, and all are pled derivatively.

Federal Rule of Civil Procedure 23.1(b) governs derivative claims and requires Sunil to verify his pleading. Fed. R. Civ. P. 23.1. The term "verified" is governed by 28 U.S.C. § 1746, which states the language required for a proper verification. For a verification executed in the United States, that language is: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C.A. § 1746(2). Plaintiff' second amended complaint was labeled "Verified" but the verification page did not

contain the phrase "under penalty of perjury." [44] at 30. For that reason, Defendants urge the Court to dismiss the second amended complaint with prejudice. However, Sunil filed an "Amended Verification regarding response to motion, 53" [61] on February 5, 2019. It appears to be a corrected verification page intended to accompany the second amended complaint, though it was filed without any motion or brief to confirm Plaintiff's intent.

The Court construes the February 5 filing [61] as an attempt to correct the deficiency that Defendants point out in their motion to dismiss, and because it is an easy deficiency to correct (assuming Plaintiff can do so consistent with his Rule 11 obligations and without committing perjury), the Court declines to dismiss the second amended complaint with prejudice. However, to ensure compliance with Rule 23.1, the Court directs Plaintiff to refile the second amended complaint with a verification page that complies with 28 U.S.C.A. § 1746 by October 15, 2019, assuming he can do so consistent with his Rule 11 obligations and without committing perjury. See *Toscano v. Koopman*, 148 F. Supp. 3d 679, 685 (N.D. Ill. 2015) (requiring plaintiff to file a verified amended complaint, when plaintiff's first complaint was not verified but he offered to submit an affidavit instead). Defendants' motions to dismiss on these grounds are denied without prejudice.

### C.     Demand Futility

Defendant further argues that the Court should dismiss the derivative claims (now just Claims I through IV) for failure to adequately plead and demonstrate demand futility. Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation, 8 Del. C. § 141(a), the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are

incapable of making an impartial decision regarding such litigation. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Federal Rule of Civil Procedure 23.1 requires a complaint for a derivative action to be verified and to "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b). Failure to make demand is excused if it would be futile. *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 804, citing 805 Ill. Comp. Stat. 5/7.80(b) (1999). Sunil admits that he made no demand on MedValue's Board of Directors, claiming futility (see e.g. [44] at 14, ¶ 90), and Raju claims that Sunil has failed to demonstrate that making a demand would have been futile.

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *In re Discover Fin. Servs. Derivative Litig.*, 2015 WL 1399282, at *2 (citations omitted). While federal law governs the degree of detail a plaintiff must provide in its complaint, state law determines whether "the content of the statement suffices to permit the shareholder to proceed with the litigation." *Westmoreland Cty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 722, 725 (7th Cir. 2013); *Lowinger v. Oberhelman*, 924 F.3d 360, 366 (7th Cir. 2019). In cases involving derivative actions, the law of the state of incorporation controls and governs the issue of demand futility. See *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d at 803; *Cordero v. Torres*, 2019 WL 3287840, at *4 (N.D. Ill. 2019). Because MedValue is an Illinois corporation, Illinois law governs whether

demand is excused, and Illinois follows Delaware law on the issue. See *In re Abbott Labs. Deriv. S'holders Litig*, 325 F.3d at 803; *Spillyards v. Abboud*, 278 Ill.App.3d 663, 675 (1st Dist. 1996).

Under Delaware law, there are two tests for evaluating demand futility: the *Rales* test, from *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), and the *Aronson* test, from *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). See *Oakland Cty. Emp. Ret. Sys. v. Massaro*, 772 F. Supp. 2d 973, 976 (N.D. Ill. Mar. 22, 2011). The *Rales* test "applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Under this test, a party "must plead particularized factual allegations that create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934 (internal quotation marks omitted). The *Aronson* test "applies to claims involving a contested transaction, *i.e.*, where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties." *Wood*, 953 A.2d at 140. Under *Aronson*, a plaintiff must "allege particularized facts creating a reason to doubt that (1) the directors are disinterested and independent or that (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id*. (internal brackets and quotation marks omitted) (citing *Aronson*, 473 A.2d at 814). "The test is disjunctive: if either prong is satisfied, demand is excused." *Westmoreland*, 727 F.3d at 725 (internal quotation marks and brackets omitted) (quoting *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000)). Under either test, a plaintiff must make a sufficient "threshold showing, through the allegation of particularized facts," that his claims have "some merit." *Westmoreland*, 727 F.3d at 729 (citing *Rales*, 634 A.2d at 934). The "mere threat of personal liability for approving a questioned transaction, standing alone, is

insufficient to challenge either independence or disinterestedness of directors," rather, it must be a "substantial likelihood" of liability. *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).

Raju's brief lays out the standard for both tests, but neither party explains which one applies: *Rales* because Raju's alleged actions were not a business decision of the board (see *Rales*, 634 A.2d at 934) or *Aronson* because Raju's alleged actions were a decision by the board (see *Aronson*, 473 A.2d at 815). Because the tests overlap on director disinterestedness and independence however, the Court need not resolve this omission. A plaintiff adequately alleges demand futility under *Rales* and the first *Aronson* prong where there is reason to doubt that a majority of the directors lack disinterestedness or independence. See *Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007); *In re Discover Fin. Servs. Derivative Litig.*, 2015 WL 1399282, at \*5.

A disinterested director "can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing." *Aronson*, 473 A.2d at 812. "Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders. In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Rales*, 634 A.2d at 936. An independent director is one whose "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816; see also *Rales*, 634 A.2d at 936.

Accepting the allegations in the second amended complaint as true, Raju is neither disinterested nor independent. Sunil makes specific factual allegations that, beginning in mid-2017:

- Raju twice asked for his son Karan to be made a partial owner or an employee of MedValue ([44] at 7, ¶¶43, 46)

- Raju threatened to start a competing business with his son ([44] at 7, ¶ 47)
- Raju and his son did start a competing business ([44] at 8, ¶¶ 48-52)
- Raju used MedValue's trademark in that business ([44] at 8-9, ¶¶ 53-61)
- Raju transferred access to MedValue's Google AdWords account from Sunil's MedValue email address to an email address at Assivo ([44] at 11, ¶¶ 71-72)
- Raju gave Karan and Assivo access to MedValue's alleged trade secrets ([44] at 11, ¶73)
- Assivo is using the alleged trade secrets to divert potential customers from MedValue to Assivo ([44] at 11, ¶¶ 74-75)

The second amended complaint alleges that Raju has a financial interest in Assivo and stands to benefit from Assivo's use of MedValue's trademarks and trade secrets. Furthermore, the action that Sunil sought on behalf of MedValue was a suit against Assivo, Raju's son Karan, and Raju himself. Such as suit could have a "materially detrimental impact" on Raju (*Rales*, 634 A.2d at 936), and Raju's decision to file or not file the suit would like have been influenced by "extraneous considerations" (*Aronson*, 473 A.2d at 816). Therefore, the second amended complaint pleads particularized facts raising a reasonable doubt as to Raju's independence and disinterestedness.[7] See *Rales*, 634 A.2d at 937; *Aronson*, 473 A.2d at 814. Defendants' motions to dismiss for failure to plead demand futility are denied.

### D. Motion to Dismiss for Failure to State a Claim (Counts III and IV)

Defendants finally argue that Counts III and IV must be dismissed on two additional grounds: that Sunil has failed to identify the alleged trade secrets with sufficient detail, and that the information described in the second amended complaint does not qualify as a trade secret. The Court takes these arguments in reverse order.

First, Sunil has sufficiently pled that certain MedValue information constitutes a trade secret. 18 U.S.C. § 1839(3) defines "trade secret" to include:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices,

---

[7] Whether Raju owns 50% or 60% of MedValue—and this Court takes no position on that question—a majority of MedValue's board is not disinterested and independent.

formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

    (A) the owner thereof has taken reasonable measures to keep such information secret; and

    (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

The second amended complaint alleges that MedValue's trade secrets are "various advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and Google bid amounts, as part of various advertising and marketing strategies to attract business to MedValue and its service, MV Outsourcing, including extensive use of search engine optimization ('SEO') techniques," all of which is proprietary and confidential, ([44] at 10-11, ¶ 68), and that such information is "stored in a password protected MedValue AdWords account with Google" ([44] at 11, ¶ 70).

Raju asserts that no case in this district holds that Google AdWords or search engine optimization techniques and strategy are protectable as trade secrets, and in any event, the alleged trade secrets "are publically[sic] available or readily subject to disclosure through commercially available processes. Indeed, a variety of online vendors provide services to permit users to reverse engineer a competitor's SEO and Google Adwords[sic] strategy." [51] at 14. That may be so, but Defendants cite no cases holding that SEO optimization techniques or Google AdWords marketing information are *not* protectable as trade secrets. Nor do Defendants point the Court to evidence in the record that would allow it to conclude that the alleged trade secrets are in fact publicly available or readily subject to disclosure through commercially available processes and therefore not protectable as trade secrets.

At the very least, MedValue's "campaign budgets" and "Google bid amounts" appear to be "financial, business, * * * [or] economic" information under 18 U.S.C.A. § 1839(3). It may be that the definition of "trade secrets" also applies to other MedValue marketing and advertising information, including AdWords data, as well. The question is not whether Sunil has a winning claim, but whether he has stated a plausible claim sufficient to survive a motion to dismiss. The Court concludes that he has. Furthermore, "Whether something is a trade secret is 'one of the most elusive and difficult concepts in the law to define,' so 'the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side.'" *PolyOne Corp. v. Lu,* 2018 WL 4679577, at *10 (N.D. Ill. 2018); see also *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) ("The question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder[.]'") (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)).

Although the motion to dismiss does not develop the argument that MedValue's information is not a trade secret under Illinois law, the Court will address it now. 765 ILCS 1065/2 defines a trade secret as:

> "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."

Similar to the analysis above, MedValue's budgets and bid amounts appear to be "financial data" under 765 ILCS 1065/2, and the remainder of the advertising and marketing information may qualify as a "method," "technique" or "process" under the statute. That is a question best answered

by a fact finder, rather than at the motion to dismiss stage. *PolyOne Corp.,* 2018 WL 4679577, at *10 (N.D. Ill. 2018); *Learning Curve Toys, Inc.* 342 F.3d at 723. The second amended complaint adequately alleges, for this stage of the litigation, that MedValue's information constitutes trade secrets.

Second, Raju argues that the second amended complaint does not describe the alleged trade secrets with sufficient specificity. "For a DTSA claim to survive a motion to dismiss, a complaint need only identify the alleged trade secret in a general sense." *Invado Pharm., Inc. v. Forward Sci. Distribution LLC*, 2018 WL 5013556, at *3 (N.D. Ill. 2018) (citations omitted). "[T]rade secrets need not be disclosed in detail in the complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp .2d 915, 920-21 (N.D. Ill. 2001) (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991)). "At the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms." *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, 2015 WL 4945240, at *3 (N.D. Ill. Aug. 19, 2015). Thus, in this context, "[c]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) (quoting *AutoMed Techs., Inc.*, 160 F. Supp.2d at 921 n.3).

The second amended complaint meets of these requirements. It identifies the types of information claimed to be trade secrets and where they were stored (*i.e.*, in MedValue's Google AdWords account), and asserts that they were password protected. These "general terms" are enough for the pleading stage. See *Scan Top Enter. Co., Ltd.*, 2015 WL 4945240, at *3. Given Sunil's articulation of the specific information that makes up the purported trade secrets and his

other allegations regarding how Raju and Assivo have used that information, this is not one of the "extreme cases" that warrants dismissal for a lack of specificity. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 574–75 (N.D. Ill. 2019).

## IV.    Conclusion

For the reasons stated above, Raju and Karan's motions [51] and [52] are granted in part and denied in part. Specifically, the motions to dismiss are granted with respect to Counts V through X in the second amended complaint, which are dismissed for lack of subject matter jurisdiction. The motions are denied with respect to Counts I through IV in the Second Amended Complaint. Plaintiff Sunil Bhatia is directed to refile his second amended complaint with only the remaining counts (I through IV) as well as a certification page that complies with 28 U.S.C. § 1746 by October 15, 2019. The Court also dismisses the first amended counterclaim and third-party complaint [64] for lack of subject matter jurisdiction. Varsha's motion [70] is stricken as moot. This case is set for further status hearing on October 23, 2019 at 9:00 a.m.

Dated: September 25, 2019

_____
Robert M. Dow, Jr.
United States District Judge