32474-1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINIOS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUNIL BHATIA, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18 cv 02387 |
| | ) | |
| RAJU VASWANI, an individual, KARAN VASWANI, an individual, and ASSIVO, INC. (f/k/a/ MV OUTSOURCING, INC., an Illinois Corporation, | ) ) ) ) ) | |
| | ) | Honorable Robert M. Dow, |
| Defendants | ) | Magistrate Judge Beth Jantz |
| | ) | |
| RAJU VASWANI, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., An Illinois Corporation, | ) ) ) ) | |
| | ) | |
| Counter-Plaintiff and Third-Party Plaintiff, | ) ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SUNIL BHATIA, an individual, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

**RAJU VASWANI'S STATUS REPORT**

Defendant, Raju Vaswani (hereinafter "Vaswani"), individually, by and through his undersigned counsel, submits this Status Report in compliance with this Court's order dated June 10, 2020 [dkt. 147] (hereinafter "6/10/20 Order"), and states as follows:

1.      In the 6/10/20 Order, this Court ordered counsel for Raju Vaswani and Sunil Bhatia to meet and confer by July 1, 2020, and to submit a Joint Status Report by July 8, 2020.  Despite

his claimed urgent need for information from the MedValue AdWords account in order to properly answer the narrowly-targeted Interrogatory that has been served upon him, Bhatia has dragged his feet through every stage of the process since then, resulting in a proposed joint status report being sent by Bhatia's counsel at 5:14 p.m. on July 7, 2020 (the day before the due date), and which status report was wholly devoid of important facts that this Court needs to understand what has transpired in the interim. Therefore, Vaswani submits this status report on his own behalf, as it is not feasible for Vaswani and Bhatia to agree on the contents of same.

2. The entire purpose of the meet-and-confer, as articulated in the 6/10/20 Order, was for Bhatia to specify "what historical data" he needs "to supplement his responses to the interrogatories at issue regarding the trade secret information." In light of that directive, it fell upon Bhatia to initially specify what that historical data consists of and what gaps will it fill

3. As of June 24, 2020 – a full two weeks after the 6/10/20 Order – Bhatia had done nothing. He had not provided any indication of the information he would seek, much less attempted to schedule a meet-and-confer to discuss such information (such meet-and-confer, of course would be impossible until he described the information). Therefore, in order to avoid further delay, on June 24, Vaswani unilaterally and without a prior request from Bhatia, asked MedValue's third party agency, New Jupiter Media to generate the items below from AdWords and sent Bhatia everything he could conceivably claim to need in order to properly answer the targeted Interrogatory that has been served upon him. A copy of Vaswani's cover letter is attached hereto as Exhibit 1. As it shows, Vaswani unilaterally provided the following items:

    1. An excel spreadsheet containing a complete export of all data from Google AdWords as of June 18, 2020 (This spreadsheet had 43,000 plus rows and 125 plus columns)[1];

---

[1] Such exports are usually performed as a "snapshot" as of the date of the export.

2. An excel spreadsheet containing a full keyword report for the last 3 years from Google AdWords as of June 18, 2020;

3. Consolidated annual reports from MedValue's Google Adwords account for 2017, 2018, 2019, and January-May, 2020;

4. Sample monthly reports from MedValue's Google Adwords account for the months of September, 2019 to January, 2020.

It must be noted that Bhatia's counsel, Mike Leonard only requested Item No. 1 in the court hearing on June 10, 2020, when he stated that the entire information should be "sucked out" from the AdWords account. Apart from other inaccuracies, attorney Leonard stated at the June 10 hearing that New Jupiter Media could generate this export and then went on to misrepresent to the Court that New Jupiter Media works for Karan Vaswani and Assivo, Inc. As Bhatia and his counsel are now fully aware, this is patently untrue as New Jupiter Media that they have never worked for Karan or Assivo, Inc.

4. The parties scheduled the meet-and-confer for July 1, 2020 (the very last day under the 6/10/20 Order), and on June 30, 2020, Bhatia *for the very first time* provided an indication of what he was requesting from AdWords. On that day, at 4:38 p.m., attorney Bisbikis e-mailed a letter, copy attached as Exhibit 2, requesting the following:

1. The following predefined reports for each of the identified time periods
   - Predefined reports > Basic > Campaign details
   - Predefined reports > Basic > Ad Group details
   - Predefined reports > Basic > Search Keywords
   - Predefined reports > Basic > Audience
   - Predefined reports > Basic > Ad
   - Predefined reports > Locations > Geographic

Time Periods:
   - From the start of the account through July 23, 2017
   - From the start of the account through July 26, 2017
   - From the start of the account through September 16, 2017
   - From the start of the account through October 23, 2017
   - From October 23, 2017 to present

2. A list of the account's negative keywords.

3. An export of the current configuration of the account: A CSV file containing the data to show the current configuration of the account.

4. Copies of any historical exports of the account configuration made from July 23, 2017 to present.

5. Export Change History report, from July 23, 2016 to present.[2]

With respect to Item 1, Mr. Bisbikis' letter mentions that the basis of requesting the 30 reports in Item 1 above is to prove misappropriation of trade secrets and not to identify gaps in information to be able to respond to the interrogatory. (Attorney Bisbikis has since walked back that assertion in an email).

5.    The outrageousness of the above time-line, and subsequent actions discussed below, simply cannot escape comment. After strenuously arguing that he urgently requires certain information in order to answer an Interrogatory that has been pending since October, 2019, Bhatia waited until the afternoon before the meet-and-confer deadline to finally come forward with what he is seeking without indicating as to how this will help him respond to the interrogatory and supplement his response. He did so after Vaswani, rather than waiting for Bhatia to come forward, provided a vast quantity of information on his own. Under no reasonable conception can Bhatia or his counsel be deemed to have complied in good faith with the directive in the 6/10/20 Order that they first state what historical information they are seeking, and that the parties then meet-and-confer to address issues regarding same.

6.    In the meet-and-confer, in which attorney Bisbikis participated on behalf of Bhatia, attorney Christensen participated on behalf of Raju Vaswani, and Raju Vaswani participated personally[3], the parties discussed the information previously provided by Vaswani, as well as the

---

[2] For ease of reference, these five requests will be referred to herein as Item 1; Item 2; Item 3; Item 4 and Item 5.
[3] Counsel for Karan Vaswani and Assivo did not participate, as the meet-and-confer related only to information to be provided by MedValue, with which they are not in any way affiliated.

new requests served the previous day by Bhatia. In that discussion, the following facts became clear: (i) much of the information sought in the June 30 letter had already been provided with Vaswani's June 24 production and (ii) With the exception of Item 1, discussed below, Vaswani is prepared to provide any remaining information.

7.      More important than the above, in the meet-and-confer, Bhatia's counsel began to offer some insight into the all-important question of what Bhatia actually considers MedValue's trade secrets to consist of (setting aside what measures were ever taken to protect their secrecy). Specifically, in his Complaint and responses to MIDP and the interrogatory, Bhatia has asserted that MedValue's alleged trade secrets are information (and not methods, processes, algorithms, or software), at the hearing on June 10, Bhatia's other counsel, Michael Leonard, referred on two occasions to "algorithms." In the meet-and-confer, attorney Bisbikis walked back from any suggestion that any "algorithms" are the subject of the trade secrets claim, and instead made reference to "attributes and values" within the 31 categories of AdWords -- that is, the categories which Bhatia had provided in his initial response to the interrogatory.

8.      Attorney Bisbikis' reference to "attributes and their values" is groundbreaking, because if Bhatia is indeed now claiming that these "attributes and their values" are indeed what constitute the entirety of the alleged trade secrets at issue, then Bhatia should simply supplement his response to the targeted Interrogatory, and identify and list each one of the "attributes" that he claims constitute "trade secrets" (as well as the measures taken to protect the secrecy of such information, such as non-disclosure agreements, specific confidentiality legends marking documents as trade secrets, etc.)

9.      It bears noting that the entire purpose of the targeted Interrogatory was to require Bhatia to identify the trade secrets before he was permitted to conduct discovery, in order to

prevent him from backfilling his claims to match what he finds in discovery. If Bhatia is claiming that "attributes and values" within AdWords are the alleged trade secret, then there is no need for him to have any further information.

10.     Given the importance of this issue, on July 2, 2020 – the very next day following the meet-and-confer – Vaswani's counsel sent an e-mail which: (i) confirmed that attorney Bisbikis had identified the trade secrets as "attributes and their values"; and (ii) asked for clarification as to exactly what Bhatia and his counsel mean to denote by those terms. A copy of that e-mail is attached as Exhibit 3.[4]

11.     While such a request for confirmation and clarification goes to the entire purpose for a meet-and-confer process, attorney Bisbikis has never substantively responded. Instead, on July 6, 2020, he sent a letter, copy attached as Exhibit 4, which *completely ignores the request for confirmation and clarification*. Instead, that letter blindly demands the Item 1 materials and states "you have not articulated any reason why the reports cannot or should not be provided as we requested." This comment ignores the entire point of the 6/10/20 Order, which is for Bhatia to seek information that will allow him to answer the outstanding Interrogatory. In other words, rather than focusing on reasons why the Item 1 information should not be produced, it is Bhatia who must articulate how it will permit him to answer the Interrogatory. He has never done so, and has ignored Vaswani's request for confirmation and clarification.

12.     The larger picture here cannot be ignored. Bhatia filed this lawsuit more than two years ago, alleging serious claims of trade secret misappropriation. In his recent supplemental submission [dkt. 151], he admitted that as of the filing of the lawsuit, he did not have access to the

---

[4] With that e-mail, Vaswani's counsel also sent a zip file containing negative keywords (Item 2) and a change history (Item 5). Thus, with the exception of Item 1, Vaswani has now provided everything that Bhatia has requested.

AdWords account. Apart from showing that attorney Leonard blatantly misinformed this Court when he stated that access was removed when Bhatia served his discovery requests, this admission begs the question of what inquiry was done before filing the trade secrets claim, especially since Bhatia's MIDP Responses are sorely lacking in any supporting evidence. (*See*, letter from Vaswani's counsel to Bhatia's counsel dated July 6, 2020, copy attached as Exhibit 5.)

13.     Vaswani has now provided Bhatia with a full export of the AdWords account; a three year keyword report; annual reports for 2017, 2018, 2019, and January-May, 2020; sample monthly reports from MedValue's Google Adwords account for September, 2019 to January, 2020; a negative keyword report; and a change history. It should be noted that in years prior to Bhatia filing this complaint, all he received were monthly reports from New Jupiter Media. Despite this, Bhatia claims that he still cannot answer the Interrogatory, but at the same time refuses to provide clarification or confirmation as to his attorney's reference to "attributes and their values". In his proposed joint status report, which he sent late in the day before the due date, Bhatia mentions none of this.

14.     Both Raju Vaswani and Karan Vaswani and Assivo, through their counsel, have previously made clear to Bhatia and his attorneys their intention to seek sanctions under 28 U.S.C. §1927. See, Exhibits 6 and 7, attached hereto. The longer this case progresses with Bhatia failing to make any cogent identification of the purported trade secrets (as well as other key elements of his claims), the more evident it becomes that such sanctions are more than warranted.

15.     With regards to Bhatia's alleged claim that a third-party vendor must be retained to retrieve information, first, Bhatia already has virtually all information he has sought. Second, with regards to the Item 1 information, Bhatia's counsel himself has indicated that these reports can be generated very easily within AdWords – the issue is whether he is entitled to these reports. If this

Court should rule that he is indeed entitled to such reports, no grounds exist whatsoever for a new third-party vendor to be retained. It is also disingenuous for either Mr. Bhatia or his attorneys to ask that another third party should be used to access this information from the AdWords account, when they themselves subpoenaed only New Jupiter Media and Google, Inc. earlier this year and they clearly believe that this information is available with New Jupiter Media and Google, Inc.

16.     Finally, in the joint status report proposed by Bhatia, he referred to the fact that Judge Dow has granted a motion for reconsideration and thereby reinstated some of the state law counts that he previously dismissed. This ruling has no bearing – none – on the issues currently before this Court.  In fact, from a timing perspective, the parties are not even currently at issue on the reinstated counts or the counts in Raju Vaswani's counter-complaint. Indeed, to the extent that Judge Dow found that the trade secrets claims form a common nucleus between the federal claims and the state law claims, it still remains the burden of Bhatia to specifically identify the trade secrets, and the targeted Interrogatory remains entirely relevant.  Bhatia must be directed to promptly supplement his interrogatory response so as to conserve the parties' and the Court's resources.

Respectfully submitted,

HUCK BOUMA PC

By: /s/ Thomas A. Christensen

Thomas A. Christensen #6215881
Jenna N. Wadulak #6309859
HUCK BOUMA PC
1755 S. Naperville Road
Suite 200
Wheaton, Illinois 60189
(630) 221-1755
tchristensen@huckbouma.com
jwadulak@huckbouma.com

## CERTIFICATE OF FILING AND SERVICE

I, Thomas A. Christensen, certify as follows under penalty of perjury this 8th day of July, 2020:

1.      I filed **Raju Vaswani's Status Report** by filing it with the Clerk of the Court via electronic means on July 8, 2020.

2.      I served this **Raju Vaswani's Status Report** by filing it with the Clerk of the Court via electronic means, which electronic filing constitutes service by virtue of local rule 5.9.

3.      I made the electronic filing on July 8, 2020.

By: /s/ Thomas A. Christensen

Thomas A. Christensen (ARDC No. 6215881)
Jenna N. Wadulak (ARDC No. 6309859)
HUCK BOUMA PC
1755 S. Naperville Road
Suite 200
Wheaton, Illinois 60189
(630) 221-1755
tchristensen@huckbouma.com
jwadulak@huckbouma.com

# HUCK BOUMA PC

Thomas A. Christensen
Attorney at Law
direct: (630) 344-1152
tchristensen@huckbouma.com

755 South Naperville Road, Suite 200,   Wheaton, Illinois  60189
p: (630) 344-1149   f: (630) 221-1756
www.huckbouma.com

**June 24, 2020**

**VIA EMAIL**
Michael I. Leonard
John Bisbikis
LeonardMeyer, LLP
120 North LaSalle, 20th Floor
Chicago, Illinois 60602

      **Re:**   **Bhatia v. Vaswani, et al.**

Dear Counsel:

      At the hearing on June 10, 2020, during discussion with the Court regarding your request for data from the Google AdWords account, you expressly represented that you would identify the specific data that you are requesting. In this regard, the following colloquy occurred:

THE COURT: .... Why would you need – what is the problem with specifying what you need out of that account to answer an interrogatory?  What is wrong in that?

MR. LEONARD: Sure. **We are going to do to that.**

THE COURT: Why should I get rid of that?

MR. LEONARD: Yeah, **we are going to do that, Judge.  There is no reason why we cannot give them specificity of what we want.**

Transcript of Proceedings, June 10, 2020, 48:20-49:2 (emphases added).

      The Court then ordered that counsel meet and confer regarding "what the plaintiff wants out of" the AdWords account. *Id.*, 50:1-3.  The minute order directed that the meet and confer take place within 21 days. [Dkt. 147].

      Two weeks have now passed and you have neither specified what information you are seeking, nor made any effort to schedule a meet and confer.  Your silence and inaction are particularly puzzling given the urgency you have ascribed to your supposed need for this information.

1



**EXHIBIT**

tabbies®

1

We have no interest in continuing to wait for you to live up to your promise to the Court to specify what you are seeking. Therefore, consistent with our sense that the faster this case can move to a disposition on the merits the better, we are now e-mailing to you, as an attachment to this letter, the following:

1. An excel spreadsheet containing a complete export of all data from Google AdWords as of June 18, 2020[1];

2. An excel spreadsheet containing a full keyword report for the last 3 years from Google AdWords as of June 18, 2020;

3. Consolidated annual reports from MedValue's Google Adwords account for 2017, 2018, 2019, and January-May, 2020;

4. Sample monthly reports from MedValue's Google Adwords account for the months of September, 2019 to January, 2020.

This information constitutes more than adequate data that Mr. Bhatia could require in order to fully answer the Interrogatory that has been served upon him. Furthermore, these materials go over and above your request for an export of data ("suck everything out") and in fact include three additional reports. My client has expended significant effort to compile this information for Mr. Bhatia in good faith. Thus, even if Mr. Bhatia were to now claim that he requires some further or additional information, we contend that he has forfeited any claim for such information by failing to provide the promised specificity within a reasonable time following the June 10 hearing.

Accordingly, we look forward to receiving Mr. Bhatia's full answers to the Interrogatory that has been served upon him, without further delay. Furthermore, at the hearing on June 10, you stated that upon receiving this information, "there won't be a deficiency because we'll have the specific data, algorithm, numbers and figures to give to them." Transcript, 12:16-18. Please immediately provide us with the algorithm for Google AdWords, as well as the other information that you referred to, as well as all step taken to protect all such information, such as non-disclosure agreements, documents marked trade secrets, MedValue policy documents setting rules for the use of such information, or otherwise. Finally, please describe the steps taken besides password protection that you have characterized as "including but not limited to."

Sincerely,

Thomas A. Christensen

cc: Raju Vaswani
Tim Elliott

---

[1] Such exports are usually performed as a "snapshot" as of the date of the export.

## Tom Christensen

| | |
|---|---|
| **From:** | John Bisbikis <jbisbikis@leonardmeyerllp.com> |
| **Sent:** | Tuesday, June 30, 2020 4:38 PM |
| **To:** | Tom Christensen |
| **Cc:** | Timothy D. Elliott; Mike Leonard |
| **Subject:** | Bhatia v. Vaswani, et al. – Case No. Case 1:18-cv-02387 |
| **Attachments:** | 2020.06.30 – Letter to T. Christensen - Bhatia v. Vaswani.pdf |

Tom:

Please see the attached letter.  Let's discuss at 1:30 pm tomorrow.

Please use this dial-in:

      Dial In: 917-654-0488
      Code: 110-377-276-36

Sincerely,

John


--



o. 312.374.8084
m. 312.909.4838
www.leonardmeyerllp.com

**EXHIBIT**
2

1

# IIILEONARDMEYER

**JOHN BISBIKIS**
**JBISBIKIS@LEONARDMEYERLLP.COM**
**O 312.374.8084**
**M 312.909.4838**

June 30, 2020

<u>Via email</u>
Tom Christensen
Huck Bouma
1755 South Naperville Road
Suite 200
Wheaton, IL 60189

Re: Bhatia, et al. v. Vaswani, et al. - Case No. Case 1:18-cv-02387

Dear Tom:

I am writing in advance of our call tomorrow to provide you with the information we are requesting concerning the MedValue Google AdWords account.

At the hearing, you indicated that "if Mr. Bhatia wishes to specify the information from the AdWords account that he needs within some particular time frame and again with specificity of what he's looking for that he contends exists within the Google AdWords account, then that information can be provided to him…". (Transcript p. 47.) You also indicated that "[i]f they will specify what they want from the AdWords account, we can make arrangements to provide that information." (Transcript at p. 48.).

Based on the discussion with the Court at the last hearing, we are not presently requesting all information about the account or all pre-defined reports that are available in Google AdWords. I have attached as Exhibit A, a limited number of pre-defined reports, for specified time periods and other limited exportable information from the MedValue Google AdWords account we are requesting. We have confirmed with others who have sophisticated knowledge of these types of reports that these can be quickly generated with no burden to your client. There are many other pre-defined reports that are readily available in Google AdWords that would also be easy to generate without any burden to your client and we reserve the right to seek additional information from the Google AdWords account during this process. If you contend that any of the reports we have requested were provided by you last week, please identify them and explain.

Regarding the time periods we have specified, as you know, at the time Sunil Bhatia's access to MedValue's Google AdWords account was terminated, a username was created for an email address at a domain that was created and is controlled by Karan Vaswani/Assivo. On

1

information and belief, that username was used to access the account on at least July 23, 2017, July 26, 2017, September 16, 2017 and October 23, 2017. That is the basis for the requests for the reports over various time periods.

Again, we reserve all rights, including the right to seek additional information from the Google AdWords account during this process and we also expect to request additional information during discovery.

Sincerely,

John G. Bisbikis

encl.

<u>Exhibit A</u>

1. The following predefined reports for each of the identified time periods:
   - Predefined reports > Basic > Campaign details
   - Predefined reports > Basic > Ad Group details
   - Predefined reports > Basic > Search Keywords
   - Predefined reports > Basic > Audience
   - Predefined reports > Basic > Ad
   - Predefined reports > Locations > Geographic

Time Periods:
   - from the start of the account through **July 23, 2017**
   - from the start of the account through **July 26, 2017**
   - from the start of the account through **September 16, 2017**
   - from the start of the account through **October 23, 2017**
   - from October 23, 2017 to present

2. A list of the account's negative keywords.

3. An export of the current configuration of the account: A CSV file containing the data to show the current configuration of the account.

4. Copies of any historical exports of the account configuration made from July 23, 2017 to present

5. Export Change History report, from July 23, 2016 to present.

3

## Tom Christensen

| | |
|---|---|
| **From:** | Tom Christensen |
| **Sent:** | Thursday, July 2, 2020 1:30 PM |
| **To:** | John Bisbikis |
| **Cc:** | Mike Leonard; Timothy D. Elliott; Rebecca Chacko; Raju N. Vaswani (rvaswani@yahoo.com) |
| **Subject:** | RE: Call today - NOTE - RAJU VASWANI IS COPIED ON THIS E-MAIL |
| **Attachments:** | Change history report.xlsx; Negative-keywords-07-01-2020.zip |

John and Mike,


As a follow up to our meet and confer, attached please find a zip file containing negative keywords (Item 2 Exhibit A) and Change history in Excel (Item 5 Exhibit A). You now have been provided Items 2 to 5 from Exhibit A of your letter, most of which were provided to you voluntarily and unilaterally before you ever notified me of what additional information you are seeking.

As to Item 1, I need some further clarification in the interest of ongoing meet and confer efforts.

Your initial interrogatory response described 31 categories as MedValue's alleged trade secrets. Then in the hearing on June 10, Mike referred repeatedly to an "algorithm." In yesterday's meet and confer when discussing Item 1, you described MedValue's alleged trade secrets as attributes and their values, and when we asked about Mike's reference to an algorithm, you indicated that no such algorithm is contended to be part of MedValue's trade secrets. Thus, my understanding is that at this point, your claim of trade secrets is based upon what you have referred to as "attributes and their values" from AdWords.

Since we had a hard stop and could not finish this discussion, can you please clarify from yesterday's call as to what you mean by attributes and their values. For example in Category No. 9 - Keyword Pricing, are you saying that a Bid for a particular keyword (e.g. Data Entry) is an attribute? Then a value for the bid of $15or $22 is a value of this attribute i.e., keyword bid? Also please clarify whether your client believes that attributes are the trade secret or both attributes and their values?

Also, in our meet and confer, I indicated that it appears from your email dated July 1, that the 30 reports in Item No. 1 in Exhibit A appear to be intended to prove misappropriation, not the trade secrets themselves. You stated this is not the case, which is a different stance, than what you stated in your letter of June 30. But please clarify this important part about your request for these 30 reports. Is the comprehensive export that we provided not sufficient to determine attributes and values? Are you suggesting that if your client is provided these 30 reports your client will supplement the interrogatory promptly and provide complete specifics of MedValue's alleged trade secrets and the steps taken to protect such trade secrets?

Please let me know as soon as possible.

Thomas A. Christensen
Senior Director



HUCK BOUMA<sup>PC</sup>
ATTORNEYS AT LAW
Upload Files Here
AV PREEMINENT



**EXHIBIT**
3

1

http://huckbouma.com/Page/ThomasAChristensen
https://www.facebook.com/HuckBoumaPC
1755 South Naperville Road, Suite 200, Wheaton, IL 60189
Phone: 630.221.1755 | Direct: 630.344.1152 | Fax: 630.221.1756 | E-mail:
tchristensen@huckbouma.com
Please visit our website at: www.huckbouma.com

*Confidentiality Notice:* *The information contained in this email and/or any file transmitted with it, is intended only for the personal and confidential use of the designated recipients to whom they are addressed. If the reader of this message is not the intended recipient or an agent responsible for delivering it, you are hereby notified that you have received this document in error, and that any review, disclosure, dissemination, distribution or copying of this message or the taking of any action in reliance on its contents, is strictly prohibited. If you have received this communication in error, please notify the originator immediately.*


**From:** John Bisbikis <jbisbikis@leonardmeyerllp.com>
**Sent:** Wednesday, July 1, 2020 2:43 PM
**To:** Tom Christensen <tchristensen@huckbouma.com>
**Cc:** Mike Leonard <mleonard@leonardmeyerllp.com>; Timothy D. Elliott <TElliott@rathjewoodward.com>; Rebecca Chacko <rchacko@leonardmeyerllp.com>
**Subject:** Re: Call today

Tom:

Following up on our call today about the reports and information we have requested:

1. Pre-Defined Reports for Various Time Periods - You indicated you were concerned that we were requesting the pre-defined reports for purposes other than identifying trade secrets in the account. I explained that was not the case and that the pre-defined reports we requested will contain additional trade secret information that is not included in the reports you have already provided us. You indicated you will discuss with Raju and get back to us.

2. A list of the account's negative keywords - You indicated that a list of the account's negative keywords were included in the report you sent me called "Med   Value+Current_view+2018-10-11.csv", and that list was current as of the date of the report (October 2018). I explained we also wanted a current list of the negative keywords and you agreed to provide such a report.

3. An export of the account's current configuration - You indicated that the report you sent us previously called "File Export-061820.xls" was such an export. We will review and confirm.

4. An export of the Change History report, from July 23, 2016 to present - You explained that this report could only be run for a time period going back 2 years and that you would provide such a report.

5. Copies of any historical exports of the account configuration made from July 23, 2017 to present - Raju indicated he would check with New Jupiter Media to see if any copies of historical export reports existed and would provide them to the extent they are located.

We ran short on time and we did not discuss what third-party vendor could be used to obtain and provide the reports and information we have requested, as contemplated at the hearing. We think using a third-party vendor is appropriate and if you have any you would like us to consider, please let us know. Otherwise we will propose vendors for your consideration.

I look forward to hearing from you.

Sincerely,

John


On Wed, Jul 1, 2020 at 12:12 PM Tom Christensen <tchristensen@huckbouma.com> wrote:

Counsel,
Raj will be on the line for the call.  Please feel feee to have Sunil on as well.

Thomas A. Christensen
Attorney
HUCK BOUMA<sup>PC</sup>
     ATTORNEYS AT LAW
Upload Files Here

http://huckbouma.com/Page/ThomasAChristensen
https://www.facebook.com/HuckBoumaPC
1755 South Naperville Road, Suite 200, Wheaton, IL 60189
Phone: 630.221.1755 | Direct: 630.344.1152 | Fax: 630.221.1756 | E-mail: tchristensen@huckbouma.com
Please visit our website at: www.huckbouma.com

***Confidentiality Notice:***  *The information contained in this email and/or any file transmitted with it, is intended only for the personal and confidential use of the designated recipients to whom they are addressed. If the reader of this message is not the intended recipient or an agent responsible for delivering it, you are hereby notified that you have received this document in error, and that any review, disclosure, dissemination, distribution or copying of this message or the taking of any action in reliance on its contents, is strictly prohibited. If you have received this communication in error, please notify the originator immediately.*


--
IIILEONARDMEYER
JOHN BISBIKIS I PARTNER
o. 312.374.8084
m. 312.909.4838
www.leonardmeyerllp.com

# IIILEONARDMEYER

**JOHN BISBIKIS**
**JBISBIKIS@LEONARDMEYERLLP.COM**
**O 312.374.8084**
**M 312.909.4838**

July 6, 2020

<u>Via email</u>
Tom Christensen
Huck Bouma
1755 South Naperville Road
Suite 200
Wheaton, IL 60189

Re: Bhatia et al. v. Vaswani, et al. - Case No. Case 1:18-cv-02387

Dear Tom:

I am writing to follow up on our meet and confer and to respond to your letter of June 30, 2020.

Judge Jantz's order required us to "meet and confer regarding what historical data Plaintiff should have access to from the Google AdWords account in order for Plaintiff to supplement his responses to the interrogatories at issue regarding trade secret information, and what vendor or other party will execute the data retrieval." (Dkt. 147.)

Pursuant to the Court's order, we have specified a limited number of pre-defined reports (6 such reports) and other information we want from the Google AdWords Account. We understand that there are numerous other basic pre-defined reports available in Google AdWords and also hundreds of custom reports that can be created by Google AdWords, so our request is very limited. We reserve the right to seek additional reports and information from the AdWords account in discovery in connection with the trade secret issue and any other issue in the case.

You contend that we requested 30 pre-defined reports, but we have only requested 6 pre-defined reports and that they be run over different time periods. As we discussed on our call, the reports and information we have requested over the specified time periods are easy to run and can be provided with no burden to Raju. You have not disputed this.

You have not articulated any reason that the reports and information cannot or should not be provided as we requested. In your email, you purportedly seek to understand what information we are requesting based on certain statements made during the hearing. But Judge Jantz's order was clear. Our request identifies exactly what the Court ordered and provides

1


EXHIBIT
4

the specificity you told the Court Raju would need in order to provide the requested information.

Also, per Judge Jantz's order, and as I told you in my email of July 1, 2020, the reports we are requesting from the MedValue Google AdWords account need to be obtained and provided by a neutral third-party vendor. Despite our request and Judge Jantz's order, you have not proposed any neutral third-party vendors and have provided reports yourself. While we are still open to other third-party vendors you may propose, we propose using either of the two vendors below (subject to them agreeing to be bound by the terms of the confidentiality order in this case or to another appropriate confidentialty agreement) to run the reports and retrieve the information we requested in items 1, 2, 3 and 5 in our list.

> Mr. Joe Balestrino
> https://joebalestrino.com/
> Email: joey.balestrino@gmail.com
> Phone Number: 347-885-4989

> Mr. Steve Pitt
> https://internetexpertonline.com/
> Email: stevepitt@internetexpertonline.com
> Phone Number: 720-815-7587

If Raju refuses to allow a third-party vendor to obtain and provide us with the information requested in our June 30, 2020 letter, we will seek an appropriate order from the Court for those reports and information to be produced from a third-party vendor.

Finally, in our call, Raju said he would search for any historic copies of the MedValue's Google AdWords account configuration, per our item no. 4 in our list. Please forward any such historical reports that Raju has in his possession or control.

Again, we reserve all rights, including the right to seek additional information in discovery and to supplement our interrogatory response as information becomes available.

Sincerely,

John G. Bisbikis

cc: Tim Elliott
    Mike Leonard

# HUCK BOUMA PC

Thomas A. Christensen
Attorney at Law
direct: (630) 344-1152
tchristensen@huckbouma.com

1755 South Naperville Road, Suite 200, Wheaton, Illinois 60189
p: (630) 221-1755  f: (630) 221-1756
www.huckbouma.com

July 6, 2020

**VIA EMAIL**
Michael I. Leonard
John Bisbikis
LeonardMeyer, LLP
120 North LaSalle, 20th Floor
Chicago, Illinois 60602

**Re:** **Bhatia v. Vaswani, et al.**

Dear Counsel:

As you are well aware, Judge Dow's Standing Order regarding Mandatory Initial Discovery Pilot states that the discovery obligations addressed therein supersede the disclosures required by Rule 26(a)(1) and are framed as court-ordered mandatory initial discovery pursuant to the Court's inherent authority to manage cases, Rule 16(b)(3)(B)(ii), (iii), and (iv), and Rule 26(b)(2)(C). Unlike initial disclosures required by current Rule 26(a)(1)(A) & (C), the Standing Order does not allow the parties to opt out.

Furthermore, the duty of mandatory initial discovery set forth in this Order is a continuing duty, and each party must serve supplemental responses when new or additional information is discovered or revealed. A party must serve such supplemental responses in a timely manner, but in any event no later than 30 days after the information is discovered by or revealed to the party.

Since you have not provided us with the following in your MIDP responses, the purpose of this letter is to confirm that as of May 31, 2020 neither you nor your client had possession of the following:

1. Any fully executed copy or original of a non-disclosure or confidentiality agreement, between Mr. Sunil Bhatia and his employer, MedValue, the owner of the "Trade Secrets" alleged in your pleadings;

2. Copies of invoices to customers, signed copies of sales contracts with customers, or signed copies of work orders from customers to MedValue, showing the sale in interstate commerce of MedValue services exclusively under the name "MV Outsourcing";

3. Copies of MedValue documents describing alleged "Trade Secrets" and marking them as such.



EXHIBIT
5

4. Copies of written instructions to any employee of MedValue or third party dealing with MedValue that in any way restricts or prohibits them from sharing any information claimed to constitute "Trade Secrets" in your pleadings;

5. Details and evidence of damages incurred by MedValue because of Assivo's use of "MV Outsourcing, Inc." as its company name;

6. Names of MedValue customers, who were confused that Assivo, Inc. and MedValue could be one and the same or otherwise confused as to the source, origin or sponsorship of any services offered by Assivo;

7. Evidence that Raju Vaswani is a shareholder, officer, or employee of Assivo, Inc.;

8. Any MedValue documents showing "MV Outsourcing" being used as a free-standing trademark not along with MedValue's trademark MEDVALUE;

9. Evidence to support the proposition that no one outside of MedValue (for example Google, New Jupiter Media) had access to informationwhich MedValue alleged in its pleadings consitutes its alleged "Trade Secrets";

10. Details andevidence of Assivo's possession or use of MedValue's alleged "Trade Secrets";

11. Details and evidence of damages incurred by MedValue because of Assivo's use of alleged "Trade Secrets";

12. Details and evidence of how the information contained in MedValue's Google Adwords account cannot be obtained by proper means such as development by Assivo internally, reverse engineered, obtained from Google tools, obtained from other professionals in the Adwords/PPC industry, obtained through use of PPC and Keyword Planner type software from Google or other software providers.

Sincerely,

HUCK BOUMA<sup>PC</sup>

Thomas A. Christensen

cc:    Raju Vaswani
       Tim Elliott



**RATHJE | WOODWARD** LLC

ATTORNEYS AT LAW, ESTABLISHED 1938.

300 EAST ROOSEVELT ROAD, SUITE 300
WHEATON, ILLINOIS 60187

630-668-8500
Fax: 630-668-9218
telliott@rathjewoodward.com
Direct: 630-510-4910

June 26, 2020

**BY ELECTRONIC MAIL**

Mr. Michael I. Leonard, Esq.
Mr. John G. Bisbikis, Esq.
Leonard Meyer LLP
120 N. LaSalle St., Suite 2000
Chicago, Illinois 60602
MLeonard@leonardmeyerllp.com
JBisbikis@leonardmeyerllp.com

Re:  *Bhatia v. Vaswani, et al.*, Case No. 18-cv-02387

Dear Mike and John:

Please accept this letter as notice from defendants Karan Vaswani and Assivo, Inc. that we believe your client's filing and continued prosecution of this lawsuit against Vaswani and Assivo constitutes sanctionable, harassing and vexatious conduct under 28 U.S.C. § 1927.

As the Seventh Circuit has noted, Section 1927 sanctions are properly rendered in instances of "a series and studied disregard for the orderly processes of justice." *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968). The purpose of section 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co. v. C&O Enters.*, Inc., 886 F.2d 1485, 1493 (7th Cir. 1989) (citations omitted). "[A] court is not required to find that a party's claims are frivolous in order to find its attorney's conduct sanctionable pursuant to section 1927 . . . ." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016) (citing *Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485, 1493 (7th Cir. 1989)). "A finding of subjective bad faith on the part of the offending attorney will support the imposition of sanctions under section 1927, but such a finding is not necessary; 'objective bad faith' will also support a sanctions award. *Boyer*, 824 F.3d at 708 (citing *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006)).

At the very outset of this case, we advised you that your client's claims against Karan and Assivo were frivolous, unreasonable and vexatious. In 2018, we also provided you with financial data that demonstrated Assivo had operated at a loss during 2017 and the first few months of 2018 – a time period that more than encompassed any period of supposed "infringement" by them. Put simply, even if Plaintiff could demonstrate that Karan and Assivo engaged in trademark



EXHIBIT
6

Mr. Michael Leonard
Mr. John G. Bisbikis
June 26, 2020
Page 2

"infringement," Plaintiff did not suffer any damages; nor can any damages or remedies be awarded on Plaintiff's trademark and unfair competition claims. Additionally, even after having so many opportunities (including but not limited to your MIDP responses), MedValue was never able to cite or provide evidence that the alleged mark was ever used in interstate commerce (a key element of Lanham Act). Similarly, it seems clear that Plaintiff cannot prevail on any claim of trade secret misappropriation as the information you identify cannot plausibly be characterized as "trade secrets" under applicable laws and MedValue did not take reasonable measures to protect its alleged "trade secrets."

Those facts are as true today as they were back in 2018 when we first apprised you of them, and you have not addressed them since, despite being required to state the facts relevant to Mr. Bhatia's claims in your Mandatory Initial Discovery Protocol (MIDP) responses. Because your MIDP responses are inexplicably marked Attorneys Eyes Only in their entirety, this letter discusses only what those responses do not say.

- Your MIDP responses do not dispute that MedValue permitted Karan to engage in the very conduct of which it now complains, which obliterates any claim of infringement or unfair competition. MedValue agreed that Karan could use his company to elevate MedValue's business and to execute this plan, Karan formed MV Outsourcing, Inc. Given MedValue's consenting to Karan's use of the term "MV Outsourcing" in his company name,, there is no evidence to suggest that Karan or Assivo, Inc. have acted willfully or intentionally to subvert MedValue's rights or business. Besides, MedValue can never claim that it has ever registered the term "MV Outsourcing" with the Secretary of State as a DBA and MedValue cannot claim trademark rights to the letters of the alphabet MV followed by a generic description of services it provides. But even then, after filing of this lawsuit and when MedValue demanded Karan to stop using the name MV Outsourcing, Inc., he promptly changed it to Assivo, Inc. Thus, your injunction claims are a legal impossibility.

- Your MIDP responses do not dispute that, while MV Outsourcing was operating, none of Karan's customers identified any correlation between his business and MedValue. Instead, all of Karan's customers were aware that the business belongs to him and identified the operation under the TaskGenie service mark. Additionally, you have never provided evidence that any of MedValue's customers were confused. The services that Assivo provides are considered purchases and they involve doing presentations, submitting proposals, and negotiating contracts. There's no opportunity for confusion.

- Your MIDP responses do not dispute that search engine optimization (SEO) information and Google Adwords Pay Per Click (PPC) information is either available or readily subject to disclosure through commercially available processes, software, or professionals in the SEO and PPC industry. Mr. Bhatia, in response to an interrogatory, stated that he is the person at MedValue who is most knowledgeable about MedValue's alleged trade secrets. Yet, to date, you have not produced a non-disclosure or confidentiality agreement executed by Mr. Bhatia with his employer, MedValue, the owner of alleged trade secrets. Thus, the information Mr. Bhatia claims to be protected

Mr. Michael Leonard
Mr. John G. Bisbikis
June 26, 2020
Page 3

under the Defend Trade Secrets Act (DTSA) and the Illinois Trade Secrets Act (ITSA) cannot be a trade secret at all. Therefore, your client is not entitled to any damages, actual or exemplary, injunctive relief, or attorneys' fees under either the DTSA or the ITSA.

- Mr. Bhatia still has not divulged the name of a single customer that was confused by Karan's or Assivo, Inc.'s prior use of the term MV Outsourcing in its company name. Nor has MedValue provided an accounting of lost customers or business because of Karan's or Assivo, Inc.'s endeavors.

We similarly note that Mr. Bhatia has consistently been unable to identify any specific information, formula, algorithm, method, or process, that could even remotely be construed to be a trade secret. Despite several attempts, he has been unable to identify with specificity any information that is not publicly available or easily knowable to competitors in MedValue's industry via software, professionals in the industry, or reverse engineering. The inability to identify any such information and the inability to identify non-disclosure agreements and other measures taken to protect trade secrets or lack thereof, strongly suggests a failure to engage in the type of pre-suit investigation required under Rule 11 and Section 5 of ITSA. The continued maintenance of the claims is precisely the type of vexatious conduct that is barred under Section 1927. Indeed, the original complaint filed by you in this court did not have any trade secret counts at all. It seems clear that the trade secret claims were inserted into this case as a means to survive a challenge to federal court jurisdiction after Karan changed the name of his company to Assivo, Inc.

Additionally, it is not in dispute that Karan and Assivo, Inc. are no longer using the name MV Outsourcing. Shortly after Mr. Bhatia filed the original Complaint (Dkt. No. 1) and MedValue demanded that Karan not use the term MV Outsourcing in his company name any further, Karan renamed MV Outsourcing, Inc. to Assivo, Inc. This fact is memorialized by the company's public record with the Illinois Secretary of State, which shows that the name was changed on April 23, 2018—well before Mr. Bhatia filed his first amended complaint on July 12, 2018 (Dkt. No. 35) and subsequently the two versions of the second amended complaints. Thus, your client's prayer for injunctive relief remains a legal impossibility given the lack of any ongoing unfair competition or use of MedValue's alleged trademarks. We further note that your client has never clearly articulated why or how Assivo, Inc. should be viewed as a competitor. Prior to filing this lawsuit in federal court, Mr. Bhatia filed an action in state court. In denying Mr. Bhatia's motion for TRO, Judge Fullerton specifically cited to a lack of evidence that Karan's company is a competitor of MedValue.

Finally, regarding the alleged "gains, profits and advantages [Assivo] has obtained by reason of [Assivo's] acts" (Dkt. No. 35, ¶ 91; Dkt. No. 85, ¶ 96), Assivo, Inc. has not generated profits while operating under the company name MV Outsourcing, Inc and utilizing the brand Task Genie to market its services We produced—long ago—financial data showing Assivo, Inc.'s net losses of over $25,000 in 2017 and first few months of 2018. Thus, well before filing Mr. Bhatia's verified second amended complaint, you knew that your client's demand for an award of Karan's or Assivo, Inc.'s profits was (and is) a nullity.

Mr. Michael Leonard
Mr. John G. Bisbikis
June 26, 2020
Page 4


     Given your unreasonable and vexatious conduct in the face of these circumstances, and the lack of evidentiary and legal support for the claims against our clients, we believe that sanctions under 28 U.S.C. § 1927 are warranted in this matter. Indeed, it seems very clear to us that the claims against our clients were not brought in good faith, but rather were brought in a misguided and improper attempt to gain leverage in a different dispute on Plaintiff's business partner, Raju Vaswani.

     In light of the severe deficiencies in your client's claims, we respectfully request that your client voluntarily dismiss any and all claims against Karan and Assivo – with prejudice – within 21 days of receipt of this letter. If you do not, please be advised that we will seek such sanctions from the Court, including reimbursement for all legal fees and costs incurred.


              Regards,

              Timothy D. Elliott


TDE/se
cc:    Tom Christensen, TChristensen@huckbouma.com
       Jenna Wadulak, JWadulak@huckbouma.com

# HUCK BOUMA PC

1755 South Naperville Road, Suite 200,  Wheaton, Illinois 60189
p: (630) 221-1755   f: (630) 221-1756
www.huckbouma.com

Thomas A. Christensen
Attorney at Law
direct: (630) 344-1152
tchristensen@huckbouma.com

June 26, 2020

**VIA EMAIL**
Michael I. Leonard
John Bisbikis
LeonardMeyer, LLP
120 North LaSalle, 20th Floor
Chicago, Illinois 60602

        Re:    **Bhatia v. Vaswani, et al.**

Dear Counsel:

        The purpose of this letter is to join, on behalf of Raju Vaswani, in the correspondence sent to you earlier today by attorney Timothy D. Elliott as counsel for Karan Vaswani and Assivo, Inc. Each of the points stated by Mr. Elliott apply with equal force to the claims that you have asserted against Mr. Vaswani and are hereby adopted on his behalf.

        In addition to the above, Counts I and II of your pleadings are uniquely meritless as they pertain to Mr. Vaswani, as you have provided no evidence – because none exists – that Mr. Vaswani is a competitor of MedValue Offshore Solutions, Inc. (hereinafter "MedValue"), or that he authorized, directed or participated in any alleged infringement of any alleged mark that you contend belongs to MedValue.  Indeed, your MIDP responses provide no evidence whatsoever that Raju Vaswani is in any way affiliated with Assivo, as an owner, officer, director, employee or otherwise, because he is not.  No grounds exist or have ever existed to sue Mr. Vaswani under the Lanham Act or the common law of unfair competition, and your claims in this regard are patently frivolous.

        We further note that apart from all of the points asserted in Mr. Elliott's correspondence, as pertains to trade secrets, you have never provided any evidence – because none exists – of any efforts to protect the secrecy of the information at issue.  To the extent that your MIDP Responses attempt to show any such efforts, they are woefully inadequate.  As Mr. Bhatia well knows, MedValue has never used or required any non-disclosure agreement, confidentiality agreement, internal policy or any other method to protect the alleged secrecy of the subject information. Indeed, the information from the Google AdWords account that you contend is a trade secret, was routinely conveyed to Mr. Bhatia and Mr. Vaswani by New Jupiter Media via unencrypted e-mails and without password protection.



EXHIBIT

7

tabbies®

Finally, apart from the failure of your MIDP Responses to disclose any facts which would show any viable claim for trademark infringement or trade secret misappropriation, you have studiously avoided answering Requests for Admission which we served upon you in December, 2019. While we recognize that this delay has been pursuant to certain orders entered by the Court, we nevertheless maintain that timely answers to those Requests would have promptly revealed the utter lack of factual support for your claims. Indeed, we would presume that if you considered any of those facts to be false, you would have eagerly responded with denials.

In light of all of the foregoing, we demand on behalf of Raju Vaswani that your client voluntarily dismiss any and all claims against him – with prejudice – within 21 days of receipt of this letter. If you do not, please be advised that we will seek all appropriate sanctions from the Court, including reimbursement for all legal fees and costs incurred.

Sincerely,

HUCK BOUMA<sup>PC</sup>

Thomas A. Christensen

cc:    Raju Vaswani
       Tim Elliott