**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUNIL BHATIA, derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | Case No. 1:18-cv-02387 |
| Plaintiff, | |
| v. | Honorable Magistrate Judge Jantz |
| RAJU VASWANI, an individual, KARAN VASWANI, an individual, ASSIVO, INC. (f/k/a MV OUTSOURCING, INC.), an Illinois Corporation, | JURY TRIAL DEMANDED |
| Defendants, | |
| and | |
| MEDVALUE OFFSHORE SOLUTIONS, INC., | |
| Nominal Defendant | |

**PLAINTIFF SUNIL BHATIA'S MEMORANDUM IN SUPPORT OF HIS MOTION TO ALLOW TIME TO COMPLETE DISCOVERY AND FOR OTHER RELIEF PURSUANT <u>FEDERAL RULE OF CIVIL PROCEDURE 56(D)</u>**

## INTRODUCTION

Sunil and Defendant Raju Vaswani (herein "Raju") are the sole shareholders of MedValue Offshore Solutions, Inc. (herein "MedValue"). Initially, MedValue provided data entry services to healthcare providers, but it quickly expanded the scope of its business beyond the healthcare industry. When it did so, it began using the names MV Outsourcing Solutions and MV Outsourcing to avoid confusion over the scope of its business. In his Second Amended Complaint (herein "Complaint")(Doc. #: 44), Plaintiff alleges that Raju approached Sunil in 2017 and demanded that his son, Defendant Karan Vaswani (herein "Karan"), become involved in MedValue and receive 25% of the revenue from the corporation. When Sunil refused, Karan, with the help of his father Raju, incorporated MV Outsourcing, Inc. (the name of which was changed to Assivo, Inc. (herein "MV Outsourcing/Assivo") after Plaintiff filed suit against Defendants) and began operating that corporation in competition with MedValue. Not only did they create the website www.mvoutsourcing.com and begin to advertise the same services that MedValue had been providing under the trademarks MV Outsourcing Solutions and MV Outsourcing, but they accessed and stole the confidential advertising information of MedValue to direct business to MV Outsourcing/Assivo and away from MedValue. Since the inception of MV Outsourcing/Assivo, Defendants have worked to steal most of MedValue's new incoming business and direct it to MV Outsourcing/Assivo. Because MV Outsourcing/Assivo's information, and other discovery, would demonstrate this, Defendants have worked hard to prevent discovery from proceeding.

On January 24, 2019, Sunil issued requests for production of documents to Raju and Karan, as well as interrogatories to MV Outsourcing/Assivo and deposition notices to Raju and Karan. On February 14, 2019, the magistrate judge presiding over the case at that time stayed discovery and, as a result of Defendants' actions, procedural delays and the current pandemic,

discovery has essentially been stayed since that time. Accordingly, Plaintiff has not received responses to his written discovery, has not been able to subpoena third parties and has not been able to conduct depositions or other discovery.

Despite the fact that discovery has been stalled for over a year and a half and even basic written discovery has not yet been completed, Raju has filed a Motion for Partial Summary Judgment ('Motion") on the claims for Unfair Competition and Misappropriation of Trade Secrets set forth in Sunil's Complaint. (Doc. #: 167). [1] Because Sunil has not been permitted to conduct discovery, he is unable to fully present the facts necessary to oppose to Raju's Motion.

To illustrate, with respect to Sunil's claims for Unfair Competition, the Court will have to consider, *inter alia*, the Defendants' intent in adopting the name MV Outsourcing for their competing business and whether the Defendants intentionally copied the name MV Outsourcing. However, Plaintiff has not yet received the Defendants' responses to written discovery, let alone had the opportunity to depose Defendants to discover information relevant to this issue. With respect to Plaintiff's claims for Misappropriation of Trade Secrets, the thrust of Plaintiff's claims is that MedValue maintained and utilized a confidential combination of keywords and bid amounts to advertise its services through the Google AdWords online advertising platform. Defendants terminated Sunil's access to the Google AdWords account, transferred access to the Google AdWords account to an email address belonging to MV Outsourcing/Assivo and began using the confidential keywords, negative keywords, bid amounts and other information from MedValue's Google Adwords account for the benefit of Assivo. At the same time, they manipulated MedValue's Google Adwords account to direct most new Google business inquiries to MV

---

[1] Count I assets a claim for Unfair Competition under 15 U.S.C. § 1125(a). Count II asserts a claim for Unfair Competition under common law. Count III asserts a claim for Misappropriation of Trade Secrets under 18 U.S.C. §§ 1831-1839. Count IV asserts a claim for Misappropriation of Trade Secrets under 765 ILCS 1065, *et seq*.

2

Outsourcing/Assivo instead of MedValue. Sunil requires discovery to both prove MedValue's trade secrets and to demonstrate that Defendants have misappropriated and are using those trade secrets to MedValue's detriment.

Accordingly, pursuant to Rule 56(d), and as explained in detail below, this Court should deny or defer consideration of Raju's Motion to give Sunil a sufficient opportunity to conduct discovery and prove his claims.

## **BACKGROUND**

This case was filed in April 2018. At the initial June 2018 status conference, Judge Dow set a deadline of March 1, 2019 for the completion of fact discovery, and referred this case to Magistrate Judge Mason for the purpose of holding proceedings related to a settlement conference. (Doc. #: 23). On August 22, 2018, Judge Dow stayed the entire action pending the parties' completion of the settlement conference. (Doc. #: 43). The settlement conference took place on October 16, 2018, but was unsuccessful. (Doc. #: 45).

Subsequently, both Defendants filed Motions to Dismiss, and in November 2018, Judge Dow set a briefing schedule on those motions. (Doc. #: 49). On January 24, 2019, Sunil issued interrogatories, requests to produce and deposition notices to Defendants. On February 1, 2020. Defendants sought to stay all discovery until the Court ruled on the motions to dismiss. (Doc. #: 57, p. 4). In February 2019, Magistrate Judge Cummings stayed all discovery—over Sunil's objections—until Judge Dow ruled on the parties' pending motions to dismiss. (Doc. #: 71.)

In late September 2019, Judge Dow issued his rulings on the motions to dismiss. (Doc. #: 83). With respect to Sunil's Unfair Competition and Trade Secret Misappropriation claims, Judge Dow found that Sunil had adequately stated claims and denied Defendants' motions.[2] On October

---

[2] In that Order Judge Dow dismissed Sunil's State law claims for breach of duty of loyalty and breach of fiduciary duty to Sunil and MedValue for lack of subject matter jurisdiction. However, Judge Dow has

3

1, 2019, Judge Cummings set a status hearing for November 19, 2019 (Doc. #: 84). On October 17, 2019, Defendants served their own discovery requests, including their first set of interrogatories, in which they requested that Sunil identify MedValue's trade secrets. Sunil timely responded to that interrogatory and identified thirty-one (31) specific Google AdWord attributes that constitute MedValue's trade secret information. Sunil also identified, as MedValue trade secrets, the identity of and MedValue's relationship with, its suppliers. Defendants contended that the response was not sufficient and should be supplemented. While demanding that Sunil supplement his answer to that interrogatory, all of the Defendants simply refused to respond at all to the discovery requests that Sunil had served upon them in January of 2019, over eight months earlier.

At the parties' request, the status hearing set for November 19, 2019 was reset to December 10, 2020. (Doc. #: 92). On December 9, 2019, on his own motion, Judge Cummings further continued the status hearing to January 23, 2020 and ordered the parties to file a joint discovery schedule before that date. (Doc. #: 95). On December 27, 2019, Defendants filed a motion to further stay the discovery issued to them until Plaintiff supplemented his responses to Defendants' discovery. (Doc. #: 99). Sunil filed a motion to compel seeking Defendants' discovery compliance. (Doc. #: 102). At that time, Defendants had not only refused to respond to any of Sunil's discovery requests, they had not even made their Mandatory Initial Disclosures. On January 23, 2020, Judge Cummings granted Sunil's motion to compel discovery, and he denied Defendants' motion to stay discovery in part and granted that motion in part. (Doc. #: 108). The order, *inter alia*, required Sunil to supplement his discovery responses by February 7, 2020, and Defendants to respond to written discovery by February 28, 2020. (Doc. #: 108). On February 7, 2020, Sunil supplemented his interrogatory response to identify, with even greater specificity, the MedValue trade secrets. In

---

since reinstated those claims. (Doc. #: 152).

addition, at that same time, Sunil also produced documents containing specific examples of data for items he identified as trade secrets.

The case was then reassigned to this Court. (Doc. #: 114). On February 27, 2020, the day before Defendants were required to respond to written discovery, this Court entered an order indicating that it would reset written and fact discovery deadlines at a later date. (Doc. #: 120). The following day, Defendants filed a motion to compel further discovery from Sunil. (Doc. #: 121). Sunil filed his response shortly thereafter. (Doc. #: 126).

The following March 23, 2020 status hearing was unable to proceed in light of the COVID-19 pandemic, and was continued indefinitely. (Doc. #:129). Sunil continued his own efforts to obtain discovery to further his claims. On March 10, 2020, Sunil served requests for production on two third-parties that he had previously identified in his Initial Disclosures, namely New Jupiter Media and Google. Consistent with their pattern of refusing to respond to Sunil's discovery requests, while pursuing and insisting upon discovery compliance from Sunil, Defendants filed motions to quash those third-party subpoenas. (Doc. #: 135). On April 3, 2020, on its own motion, this Court stayed all discovery in light of the public health concerns. (Doc. #: 139). The Court denied Defendants' motion to quash as moot, and ordered Sunil to notify the subpoena respondents that no response to the subpoenas was required until further notice. (Doc. #: 139).

Ultimately, this Court held a hearing on Defendants' motion to compel on June 10, 2020. (Doc. #: 146-147). As a result of that June 10 hearing, this Court ordered Sunil and Raju "to meet and confer regarding what historical data Plaintiff should have access to from the Google AdWords account in order for Plaintiff to supplement his responses to the interrogatories at issue regarding trade secret information, and what vendor or other party will execute the data retrieval." (Doc. #: 147). Counsel for those parties met and conferred on those issues, and Sunil identified particular

5

information he was seeking from the Google AdWords account. He also identified independent third-part vendors that could retrieve that information – consistent with Magistrate's Jantz's suggestion. However, Raju refused to agree to allow such an independent third-party to undertake that work. Further proceedings with respect to Defendant's motion to compel are ongoing, pursuant to this Court's August 24, 2020 order. (Doc. #: 181). Discovery remains stayed pursuant to the Court's April 3, 2020 order.

From September 19, 2019, when Judge Dow dismissed all of Plaintiffs claims except for his Unfair Competition and Trade Secret Misappropriation Claims, until July 1, 2020, Plaintiff's Unfair Competition and Trade Secret Misappropriation claims were the only claims pending. However, on July 1, 2020, Judge Dow granted Plaintiff's motion for reconsideration and reinstated four breach of fiduciary duty claims. (Doc. #: 152). These claims do not present the same discovery sequencing issues that are currently being argued in Defendants' motion to compel.

In an effort to attack the jurisdictional basis of the reinstated claims, Defendant Raju, while continuing to refuse to provide responses to discovery and access to MedValue's Google AdWords account, has now filed a Motion for Partial Summary Judgment. (Doc. #: 163), claiming that Raju is entitled to summary judgment in his favor on Sunil's Unfair Competition and Misappropriation of Trade Secret claims because Sunil purportedly lacks all of the evidence he needs to establish all of the elements of his claims. The law is clear that he may not proceed on a motion for summary judgment until Sunil has had a fair opportunity to conduct discovery.

## **ARGUMENT**

A party is entitled to summary judgment if it affirmatively presents undisputed evidence of facts that entitle it to judgment as a matter of law. Fed. R. Civ. P. 56. Alternatively, if the party does not bear the burden of proof on a claim, the party may move for summary judgment and

6

require the non-moving party to come forward with affirmative evidence in support of its claims, provided there has been adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Raju's motion for summary judgment is the latter type. While he has filed a document styled as a statement of material facts, it contains very few affirmative facts. Rather, of its sixty paragraphs, thirty-nine are simply assertions that Sunil has no evidence of various matters. The remaining statements of fact consist largely of a description of the parties and facts supporting venue. These remaining facts are sourced from Plaintiff's Complaint--which has already withstood motions to dismiss—and Defendants' answers thereto. To summarize, Raju's motion does not try to prove Raju's case; rather, it challenges Sunil to prove his case without the benefit of discovery.

"Summary judgment should not be entered until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Grayson v. O'Neill*, 308 F.3d 808, 815 (7th Cir. 2002) (internal quotations omitted). In order to prevent summary judgment from being entered before a nonmovant has an adequate opportunity to conduct discovery, a nonmovant may obtain a denial of the motion, or other appropriate relief, by demonstrating it cannot present facts essential to its opposition of the motion. Fed. R. Civ. P. 56(d). The Rule "is intended as a safeguard against a premature grant of summary judgment, and should be liberally construed." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir.1994).

While a district court has discretion when ruling on a Rule 56(d) motion, appellate courts often remand a denial of additional time for discovery when the motion for summary judgment is filed before the close of discovery, especially if there are pending discovery disputes. *Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 865 (7th Cir. 2019). When a summary judgment motion is filed so early in the litigation that a party has not had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(d) motion fairly freely.

*Id*. (citing *Burlington Northern Fe Railroad Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003)).  When a party is seeking discovery that is germane to the pending summary judgment motion, it is inequitable to pull out the rug from under them by denying such discovery.  *Smith*, 933 F.3d at 865 (citing *Wichita Falls v. Banc One*, 978 F.2d 915, 920 (5th Cir. 1992)).  While the Seventh Circuit has stopped short of holding that Rule 56(d) motions should be granted as a matter of course, it has emphasized the importance of allowing a party an opportunity to take meaningful discovery before considering whether to grant summary judgment against them.  *Smith*, 933 F.3d at 866.

Rule 56(d) motions have been granted in similar situations in this Court.  In *Signature Transportation Group, LLC v. Jacobs*, 2020 WL 1663124, at *1 (N.D. Ill. 2020), defendants filed a summary judgment motion in which they argued that plaintiff's Lanham Act theory rested on rank speculation and contended that plaintiff would not be able to develop facts to support its claims. At the time of that filing, defendants had not produced a single document and no depositions had been completed.  *Id*. at *3. In response, plaintiff outlined the discovery necessary to prove their trademark claims and respond to defendant's motion, pointed to facts in the limited record that had been developed in support of their theory of the case, and identified avenues of discovery from defendants and third-parties which would allow the plaintiff to uncover facts to prove its claims. *Id*. at 6. The court granted plaintiff's Rule 56(d) motion, finding it was entitled to conduct discovery in an attempt to "chip away at the black paint defendants [had] painted on the windows to see if some light comes in." *Id*. The court similarly reasoned that plaintiffs were entitled to discovery on their State law claims for consumer fraud, tortious interference, and defamation because the evidentiary record had been similarly undeveloped by discovery.

Similarly, in *RE/MAX, LLC v. Macahon,* 2013 WL 12314398, at *1 (N.D. Ill. 2013),

defendant brought a motion for summary judgment on trademark claims, contending that no reasonable consumer would be confused by the trademark designs, that discovery would be unnecessary, and that "the Court can make a determination by applying the standard and deciding whether [there] is a likelihood of confusion. *Id*. at *2. However, at the time of that filing, there had been no meaningful discovery taken on the issues that were the subject of the motion for summary judgment. *Id.* In response, plaintiff submitted a Rule 56(d) motion contending that it lacked facts necessary to oppose defendant's motion, and requested further discovery. Plaintiff's claims were asserted under federal and state law, alleging trademark infringement, unfair competition, and deceptive business practices. *Id*. Each of those claims were premised upon the allegation that a reasonable consumer would likely be confused about the relationship between the plaintiff and defendant because of defendant's use of design that was similar to plaintiff's trademarks. *Id.* The court granted plaintiff's motion for discovery pursuant to Rule 56(d), reasoning that discovery was necessary to allow it the opportunity to seek additional information supporting its claims before having to respond to defendant's motion. *Id.* The court found that the record at that point was "insufficient to make such a fact-intensive determination." *Id*.

Likewise, with respect to trade secret cases, Judges within the Northern District have acknowledged that "[a] discovery continuance is allowed under Rule 56(d), which is meant to prevent a premature grant of summary judgment and should be liberally construed." *Pactive Corp. v. Multisorb Techs., Inc.*, 823 F.Supp.2d 840, 844 (N.D. Ill. 2011) (*citing King v. Cooke*, 26 F.3d 720, 726 (7th Cir.1994). In *Pactive*, the court granted a Rule 56(d) motion "to make sure that all relevant documents have been produced and to allow their significance may [sic] be addressed" even though the court noted that plaintiff should have already had all of the confidential documents it provided to the defendant in its own possession. *Pactive*, 823 F.Supp.2d at 844.

9

Here, Raju's motion is premature. Sunil is entitled to discovery designed to gather documents and testimony that will enable him to prove his claims before this case is ripe for summary adjudication. As referenced above, Sunil has been more than diligent in continually attempting to pursue discovery from the Defendants as well as from third-parties. In response, Defendants have done everything they can to deny Sunil any meaningful discovery. Sunil should be provided with the written discovery he has requested and he should be afforded the opportunity to depose the Defendants, and the relevant third-parties with respect to, *inter alia*, Defendants' denials of material facts; the existence, nature, extent, and substance of documents directly relevant to the Motion for Partial Summary Judgment; and the issues raised by Defendants in that motion. Without this discovery, Sunil is unable to respond to that motion

Sunil's claim for Unfair Competition requires him to prove that MedValue has a protectable trademark and that there is likelihood of confusion as to the origin of the Defendants' product. *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). In Raju's memorandum in support of his motion for summary judgment, Raju admits that Plaintiff's trademark may be descriptive. (Doc. #: 163, pg. 8 (stating "At most, 'MV Outsourcing' is a descriptive phrase with no acquired secondary meaning")). Descriptive trademarks are protectible if they have acquired secondary meaning. *Id*. Accordingly, there will be an issue as to whether the trademark has acquired secondary meaning. The determination of whether a trademark has acquired secondary meaning is a multi-factor test, which requires a court to consider the amount and manner of advertising, volume of sales, the length and manner of use, direct consumer testimony, and consumer surveys. *Id.* Of these elements, consumer testimony and surveys are the only direct evidence, the other factors are relevant in a circumstantial fashion. *Id.*

For a number of reasons, Plaintiff needs discovery to prove that MedValue has utilized the

10

trademark in a substantial amount of advertising. Despite being one of two owners and officers of MedValue— the other being Raju—Sunil has been locked out of MedValue's Google AdWords account since July 23, 2017, roughly the same time that Karan incorporated MV Outsourcing/ Assivo. Sunil's Aff., ¶ 3, 4, 5, 9, 18. Accordingly, he does not have access to MedValue's advertising information. Sunil's Aff., ¶18, 23. Sunil has requested access to MedValue's Google AdWords account. However, Defendants have refused to provide it.

Additionally, on January 24, 2019, Sunil issued a deposition notice to Raju, but he has not yet appeared for his deposition. As an officer, director and shareholder of MedValue—and the only one that has had access to MedValue's Google AdWords account since July 23, 2017—Raju likely, if not necessarily, has information regarding the manner of advertising of the trademark, the volume of sales and the length and manner of the trademark's use.

Further, on March 10, 2020, Sunil subpoenaed New Jupiter Media—a third party vendor and partner with Google that was instrumental in implementing MedValue's AdWords campaign—and Google itself. However, Raju moved to quash these subpoenas. (Doc. #: 135). On its own motion, the Court stayed discovery in response to the current pandemic and ordered Plaintiff to inform the respondents that they did not need to respond until further notice. (Doc. #: 139). The subpoenas to New Jupiter Media are all the more necessary because, despite the fact that Sunil is an officer, director and shareholder of MedValue, Raju has instructed New Jupiter Media not to provide Sunil with information. Sunil's Aff., ¶ 17.

Plaintiff's discovery may also yield additional information demonstrating the substantial volume of sales associated with the MV Outsourcing trademark and the considerable length of its use. Further, depending on the circumstantial evidence revealed through discovery, Plaintiff may need to obtain direct evidence by issuing third-party discovery to obtain consumer testimony and

surveys. However, given that Defendants have not yet responded to written discovery, have not appeared for deposition and have resisted the previously issued third-party discovery, the initiation of such additional third-party discovery is premature.

Moreover, to prevail on his Unfair Competition claim, Plaintiff must demonstrate that Defendants' use of the trademark created a likelihood of confusion. Again, this is determined by a multi-factor test that requires a court to consider the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and intent on the part of the alleged infringer to palm off his products as those of another. *Int'l Kennel Club of Chi., Inc.*, 846 F.2d 1079 at 1087. None of these factors is dispositive. *Id.*

Plaintiff needs discovery to demonstrate that the marks were used concurrently in the same area to target the same clients, that the products marketed were the same, that clients were actually confused and that Defendants copied the mark with the intent to confuse clients. There is evidence that, shortly after Plaintiff refused Raju's request to include Karan in MedValue, MV Outsourcing, Inc. was incorporated; that Karan is its President; and that the website www.mvoutsourcing.com was created. Sunil's Affidavit, ¶ 6, 8, 9, 10. Further, before Raju instructed New Jupiter Media to cease providing information to Sunil, they informed Sunil that, on July 23, 2017, Raju logged into MedValue's AdWords account and removed the users sunilb@medvaluebpo.com and ad@medvaluebpo.com, then sent an email to himself at his MV Outsourcing/Assivo email: raj@mvoutsourcing.com, which provided administrative access to MedValue's account. Sunil's Affidavit, ¶ 15, 16. However, Plaintiff lacks to information about what has transpired behind the curtains at MV Outsourcing, Inc. Sunil's Affidavit, ¶ 25. Although requested in Plaintiff's

discovery, Plaintiff does not have full access to Raju's email communications, including communications with Karan, MedValue's clients and MV Outsourcing, Inc.'s clients. Sunil's Affidavit, ¶ 26. Likewise, although requested, Plaintiff does not have access to documentation of MV Outsourcing, Inc.'s marketing efforts, including its Google AdWords campaigns, MV Outsourcing, Inc.'s vendors, and MV Outsourcing's clients and the services sold to them. Sunil's Affidavit, ¶ 23. This documentation will shed light, *inter alia,* on the similarity of products for which the name MV Outsourcing is used, the area and manner of concurrent use, actual confusion and, perhaps most significantly, whether Defendants purposefully used the name MV Outsourcing to trick MedValue's clients into thinking they were still dealing with MedValue. Further, the depositions of Karan and Raju—noticed but not attended—will necessarily provide evidence regarding the operations of MV Outsourcing, Inc. and consequently, the similarity of products, area and manner of concurrent use, actual confusion and intent to confuse, as will the documents subpoenaed from Google and New Jupiter Media.

      Plaintiff's claims for Misappropriation of Trade Secrets presents similar issues; however, Defendants actions in resisting discovery and moving for summary judgment are even more egregious here. In order to prevail on these claims, Plaintiff must prove that (1) a trade secret existed; (2) the trade secret was misappropriated; and (3) the owner of the trade secret was damaged by the misappropriation. *Covenant Aviation Security, LLC v. Berry*, 15 F.Supp.3d 813, 817 (N.D. Ill. 2014). It is axiomatic that in order to prove a trade secret exists, Sunil needs access to information comprising the trade secret. However, Raju has denied Sunil this information by removing his access to MedValue's AdWords account in July of 2017, failing to respond to Sunil's written discovery and moving to quash Sunil's subpoenas to New Jupiter Media and Google. Sunil's Affidavit, ¶ 15, 18. Accordingly, Sunil needs discovery to identify the trade secrets that

Raju misappropriated. Even worse, Defendants have argued that the Defendants should not have to provide any information to Sunil regarding the marketing efforts of MV Outsourcing, Inc., including its Google AdWords campaigns, until Sunil "sufficiently" identifies the trade secrets of MedValue. (Doc. #: 121). The trade secrets that Defendants are demanding that Sunil identify are the same trade secrets that Raju has sole access to and has prevented Sunil from accessing. Accordingly, not only does Sunil need discovery to identify the specific keywords, bid amounts and other related information that comprise MedValue's trade secrets, he needs discovery to prove that MV Outsourcing, Inc. has used those very same keywords, bid amounts and related information while Raju has discontinued their use by MedValue. Sunil's Affidavit, ¶ 23. The evidence of this misappropriation and its timing will also be necessary to demonstrate that it is the cause MedValue's significantly reduced revenues. Likewise, discovery regarding MV Outsourcing, Inc.'s clients and revenue will aid Sunil in demonstrating a corresponding benefit to MV Outsourcing, Inc. from the misappropriation.

Despite Sunil's diligence and because of Defendants' efforts to prevent discovery from proceeding, almost no discovery has been completed. Yet, Raju has filed a motion for summary judgment that does not attempt to affirmatively defeat Sunil's claims, but rather challenges Sunil to prove them without the aforementioned discovery. The authority set forth in this brief demonstrates the obvious, this is not appropriate. As set forth above, Sunil requires substantial discovery to present facts essential to his opposition of the motion for summary judgment and the motion should not be decided until he has had an opportunity to conduct such discovery.

**WHEREFORE**, Plaintiff, Sunil Bhatia, by and through his undersigned counsel, moves this Court, pursuant to Rule 56(d), to deny, or defer consideration of, Defendant's Motion for Partial Summary Judgment, and for all such other and further relief the Court deems necessary.

                                                  Regas, Frezados & Dallas LLP

                                          By:/s Steven M. Dallas
                                                 Attorneys for Plaintiff

Steven M. Dallas 6303138    stevend@rfd-law.com
William D. Dallas 6186780    wdd@rfd-law.com
Regas, Frezados & Dallas LLP
20 N. Clark St., Ste. 1103
Chicago, IL 60602
(312) 236-4400

## CERTIFICATE OF SERVICE

      The undersigned certifies that on September 16, 2020, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois Plaintiff's Sunil Bhatia's Memorandum In Support of His Motion to Allow Time to Complete Discovery and for Other Relief Pursuant to Federal Rule of Civil Procedure 56(D) using the Court's ECF system, which automatically results in the transmission, by e-mail to all parties in this action who have registered use the ECF in the Northern District of Illinois, of a notice of electronic filing that constitutes service, pursuant to the general order issued by this Court and the Federal Rules of Civil Procedure.

[T]    Under penalty of perjury, I certify that the statements set forth forth herein are true and correct.    /s   Steven M. Dallas
                                                                              Signature