IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUNIL BHATIA, individually, and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:18-cv-02387 |
| v. | ) ) | |
| RAJU VASWANI, an individual, KARAN VASWANI, an individual, ASSIVO, INC. (f/k/a MV OUTSOURCING, INC.), an Illinois Corporation, | ) ) ) ) ) | Hon. Robert M. Dow, Jr., Presiding |
| Defendants. | ) | |

**DEFENDANTS KARAN VASWANI AND ASSIVO, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)
AND MOTION TO DIMISS PURSUANT TO F.R.C.P. 12(b)(1)**

Defendants Karan Vaswani ("Karan") and Assivo, Inc. ("Assivo") (together, "Defendants") respectfully move the Court pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings with respect to Counts I-IV, and for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on Counts II and IV. In support, Defendants state as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

1.  In early-2017, Karan conceptualized the idea of a small start-up company. In the Spring of 2017, Karan held discussions with MedValue about a potential business relationship. Based on these discussions, Karan decided to name his company as MV Outsourcing, Inc. Raju Vaswani ("Raju") and Sunil Bhatia ("Bhatia") are the owners of MedValue Offshore Solutions ("MedValue"), a well-established data entry services company incorporated in December 2003. (Dkt. 85 at ¶¶ 22-25). Karan is Raju's son, and is also the founder and owner of Assivo, Inc.,

which was incorporated in June 2017 and previously known as MV Outsourcing, Inc. (*Id.* at ¶ 43-52)

2. In April 2018, after Assivo had been in business only a few months, Bhatia filed this lawsuit and alleged that "MV Outsourcing" improperly infringed on alleged unregistered trademarks held by MedValue and was engaged in unfair competition. Bhatia alleged that, in mid-2017, Raju approached Bhatia about getting Raju's son, Karan, involved with MedValue. Bhatia claims that he rejected the idea, and falsely alleges that Raju and Karan reacted by establishing a company called "MV Outsourcing, Inc." which began business in mid-2017. Bhatia also falsely alleges that "MV Outsourcing" was a mark that had been previously used by MedValue (although it does not allege a single example of that). (*Id.*)

3. In his original complaint (filed in early 2018), Bhatia alleged two unfair competition claims against Karan and Assivo (one under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and one under Illinois common law). (Dkt. 1) Bhatia's original complaint also included several Illinois common law claims against Raju. The basis for federal court jurisdiction in the original complaint was the Lanham Act claim, which arose under federal law. (*Id.*) After Bhatia filed his original complaint, in April 2018, and MedValue made a demand upon Karan,[1] although he had done nothing wrong, Karan promptly changed his start-up company's registered name with the Illinois Secretary of State from "MV Outsourcing, Inc." to "Assivo, Inc." (Dkt. 85 at ¶¶ 50, 53). This action made Bhatia's demand for an injunction a legal impossibility.

---

[1] Bhatia has filed a derivative lawsuit on behalf of MedValue, without making a demand on its Board. Such a demand would not have been futile as MedValue actually made a demand from Karan and Assivo, Inc. complied. On this basis alone, Bhatia's derivative complaint on behalf of MedValue against Assivo, Inc. should be dismissed for not sufficiently alleging the demand futility requirements of derivative complaints under F.R.C.P. 23.1.

2

4. Bhatia responded to Karan's actions by filing an amended complaint in mid-2018. Therein, Bhatia claimed, that Defendants were also misappropriating MedValue's trade secrets, which it broadly alleged were "various advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and *Google* bid amounts." (Dkt. 85 at ¶ 68)

5. With respect to Counts I and II, Bhatia has not alleged – and cannot allege – the requisite facts necessary to establish standing on under Lanham Act. In particular, Bhatia has not alleged facts to show that MedValue suffered any harm or injury (e.g., lost sales, dilution of goodwill, or loss of customers) proximately caused by Defendants' brief operation of a business under the registered name "MV Outsourcing, Inc." Bhatia has also not alleged any facts to show that MedValue could own a descriptive mark. Neither has Bhatia alleged any facts about how Defendants' promotional materials could cause customer confusion.

6. With respect to Counts III and IV, Bhatia has not alleged facts as to how the "trade secrets" meet the criteria to qualify as trade secrets under the Defend Trade Secrets Act ("DTSA") or Illinois Trade Secrets Act ("ITSA"). Bhatia has not alleged sufficient facts about measures taken by MedValue to protect its alleged trade secrets. Nor has he alleged that this information is not readily ascertainable through proper means. Bhatia has not plausibly alleged that any economic value can be derived from such dynamically changing information that changes by the minute, even if it's kept secret. Bhatia has not alleged these facts because he cannot do so. Thus, judgment on the pleadings should be entered against Bhatia on Counts I through IV.

3

## **LAW AND ARGUMENT**

**I.     The Legal Standards**

7. A motion for judgment on the pleadings is brought properly "[a]fter the pleadings are closed--but early enough not to delay trial." Fed. R. Civ. P. 12(c). The pleadings include the complaint, answer, and documents attached as exhibits to the complaint and answer. *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*, 455 F. Supp. 3d 681, 687 (N.D. Ill. 2020). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Pratt v. Everalbum, Inc.*, 283 F. Supp. 3d 664, 666 (N.D. Ill. 2017). The standards for judicial review under Rule 12(b)(6) are well established and were succinctly summarized in *Martin v. Wendy's Int'l*, 183 F. Supp. 3d 935 (N.D. Ill. 2016)

> A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In reviewing the sufficiency of a complaint under the plausibility standard, courts must accept the well-pleaded facts in the complaint as true, but they need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.

*Id.* at 928-29 (internal citations, quotes, and ellipses omitted). Thus, a plaintiff may not survive Rule 12 scrutiny simply by reciting "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8. In Counts I and II, Bhatia asserts claims for unfair competition that sound in fraud. On these claims, he bears the heightened burden of pleading with particularity as required under Fed. R. Civ. P. 9(b). Under Rule 9(b), Bhatia must allege with particularity "the circumstances constituting fraud or mistake," and requirement that courts have construed to encompass the identity of the person making the misrepresentations, the time, place and content of the

4

misrepresentations, and the method by which the misrepresentation was communicated to the plaintiff. Fed. R. Civ. P. 9(b); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *AAVN v. WestPoint Homes, Inc.*, No. 17-CV-8329, 2019 WL 1168102, * (N.D. Ill. Mar. 13, 2019).

## II. Judgment Must Be Entered In Favor Of Defendants On Count I.

9. Put simply, Count I fails because Bhatia has not alleged – and cannot allege – any facts to demonstrate that MedValue has suffered any injury that would confer standing on under the Lanham Act. Instead, Bhatia has provided the very type of "threadbare" recitation of conclusory allegations that courts have rejected time and again since *Iqbal* and *Twombly*. As the United States Supreme Court made clear in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014), a plaintiff in an action under 15 U.S.C. § 1125(a) must establish both Article III standing as well as standing under the Lanham Act. The former generally requires that a plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc.*, 572 U.S. at 125 (2014). The latter places additional requirements on a plaintiff. To establish Lanham Act standing, a plaintiff must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Finally, the "plaintiff's complaint [must] fall within the zone of interests protected by the law invoked." *Id*. at 129.

10. To establish standing under the Lanham Act, Bhatia must allege facts to show both injury and proximate cause, *i.e.*, that MedValue must allege that customers have "withheld trade" as a result of Assivo's brief use of the name "MV Outsourcing." Courts applying *Lexmark* have made it clear that plaintiffs must include allegations that include some factual content showing

5

both harm and proximate cause. A few examples make the point. In *TWD, LLC v. Grunt Style LLC*, No. 18 C 7695, 2019 WL 5420153 (N.D. Ill. Oct. 23, 2019), Judge Kocoras partially dismissed a claim to the extent the plaintiff "pleads the conclusory allegation that it believes 'it is likely to be damaged by such violation of 15 U.S.C. § 1125(a),' yet fails to note how it is likely to be damaged. *Id.* at *5. In *Time Warner Cable, Inc. v. DIRECTV, Inc.*, the Second Circuit held that "the likelihood of injury and causation will not be presumed, but must be demonstrated in some manner." 497 F.3d 144, 161 (2d Cir. 2007) (citation omitted). Absent a "literally false" comparison between products that mentions the plaintiff's product by name, "some indication of actual injury and causation is necessary to satisfy Lanham Act standing requirements and to ensure the plaintiff's injury is not speculative." *Id*. at 161-162, (internal quotations and citations omitted).[2]

11.     Bhatia has not met his burden of alleging standing under the Lanham Act. He has not alleged any facts to suggest Defendants' brief use of "MV Outsourcing" has caused MedValue to suffer economic or reputational harm. In fact, he offers nothing beyond the types of "labels and conclusions" in a "formulaic recitation of the elements of a cause of action" which this Court has previously held, "will not do." *Checksum*, 412 F. Supp. 3d at 911. Indeed, Bhatia never actually alleges that MedValue lost an actual or potential customer, or was otherwise injured due to Assivo's brief use of "MV Outsourcing." Bhatia's allegations skirt around that issue in vague and

---

[2] *See also AAVN, Inc.*, 2019 WL at *2(dismissing claims where plaintiff did not allege "specific reputational harm proximately caused" by defendant's conduct); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020) (Plaintiff lacked standing under the Lanham Act where "[i]nstead of 'connecting the dots,' the Complaint blankly alleges, without supporting allegations, that Defendant's purported false advertising must have caused Plaintiff's injuries because the two compete."; *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368, 375 (S.D.N.Y. 2019) ("[P]laintiff who does not come forward with evidence of an injury proximately caused by defendant's advertisements does not have a statutory interest in deterring willful violations of the Lanham Act.").

conclusory language that does not provide the requisite facts. Specifically, Count I only contains the following accusations:

- "Assivo, Inc., Raju Vaswani, and Karan Vaswani's use of the 'MV Outsourcing' mark is likely to cause confusion, mistake and deception among consumer of MedValue and MV Outsourcing, Inc.'s services." (Dkt. 85 at ¶ 91)

- "Assivo, Inc., Raju Vaswani, and Karan Vaswani's unfair competition has caused, and will continue to cause, damage to MedValue, and is causing irreparable harm to MedValue for which there is no adequate remedy at law." (*Id.* at ¶ 93)

- "Assivo, Inc., Raju Vaswani, and Karan Vaswani have caused, and will continue to cause, immediate and irreparable injury to MedValue, including injury to MedValue's business, reputation and goodwill, for which there is no adequate remedy at law." (*Id.* at ¶ 94)

12. Such allegations are not enough to establish Lanham Act standing. ***First***, Paragraph 91's allegation that Defendants' use of "MV Outsourcing" is *likely* to cause confusion falls short of alleging that it actually did cause confusion. While such an allegation may have import in a case involving injunctive relief, it has no significance here, where the allegedly wrongful conduct stopped well over two years ago. Indeed, Bhatia's allegations of ongoing injury are puzzling. Bhatia himself admits that Assivo stopped using "MV Outsourcing" well over two years ago. (Dkt. 85 at ¶¶ 50, 53)

13. ***Second***, Paragraphs 93 and 94 are examples of the fact-less, conclusory allegations that *Twombly* inveighed against. Those paragraphs are nothing except a thread-bare recitation of a pleading element without any supporting factual content. If Bhatia contends that some customer was confused by Assivo's use of "MV Outsourcing," or that MedValue lost goodwill, then Bhatia must allege facts to support those contentions. Paragraphs 93 and 94 in their current form are simply not enough.

14. In addition, Count I also fails for several additional reasons. Bhatia has not alleged, and cannot allege, a protectable trademark. There is no allegation that the term "MV Outsourcing"

7

(which is apparently what Bhatia claims as MedValue's trademark) is registered with the USPTO. Nor could it be. The first part is simply two letters of the alphabet (MV) and the second word is a description of services (Outsourcing). That's descriptive and not distinctive, and Bhatia has not alleged any facts to show "MV Outsourcing" has acquired any "secondary meaning" *i.e.,* is uniquely associated with MedValue.³ *See Custom Vehicles, Inc. v. Forest River, Inc.,* 476 F. 3d 481, 483 (7th Cir. 2007); *Uncommon, LLC v. Spigen, Inc.*, 926 F. 3d 409, 420 (7th Cir. 2019) (descriptive marks are not inherently distinctive).

15. Moreover, Bhatia has not alleged facts to satisfy the "use in commerce" requirement of the Lanham Act. Bhatia does not allege that MedValue sold services under the mark "MV Outsourcing" to even one single customer, because he cannot do so. Without bona fide use, MedValue cannot own a mark. *See Clorox Co. v. Salazar,* 108 USPQ2d 1083, 1086 (TTAB 2013) ("[A]pplicant had not made bona fide use of its mark in commerce, as applicant had not sold or transported goods bearing the mark in commerce").

16. Nor has Bhatia plausibly alleged that Defendants' promotional materials create a likelihood of confusion. "Allegations of consumer confusion in a trademark suit, just like any allegations in any suit, cannot save a claim if they are implausible." *Fortress Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F. 3d 696, 706 (7th Cir. 2014). Here, a side-by-side comparison of the marketing materials included as attachments in Bhatia's complaint show they could not plausibly give rise to any consumer confusion. MedValue never uses the term "MV Outsourcing" in a free-standing manner and always uses it in combination with its registered trademark "MedValue." MedValue uses the term "MV Outsourcing" as a service of MedValue. By contrast,

---

³ By contrast, MedValue's trademark "MedValue" is registered with the USPTO in a particular design, font, and color.

8

Assivo briefly used it as a legal corporate name "MV Outsourcing, Inc.", as registered with the Secretary of State. The logos are also very different from each other. Thus, dismissal is proper under Rule 12(b)(6) or 12(c) is appropriate. *See Mintz v. Subaru of Am., Inc.,* 2016 WL 5909360, at *2 (N.D. Cal. Oct. 11, 2016), *aff'd,* 716 F. App'xx 618 (9th Cir. 2017); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2005).

### III.     Count II Fails For The Same Reasons As Count I.

17.     Bhatia's common law claim for unfair competition also fails to state a claim. Count II is largely a repetition of the first seven paragraphs of Count I. Unfair competition claims brought under Illinois law are resolved according to the principles set forth under the Lanham Act. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("The state unfair competition claim is analyzed under the likelihood of confusion standard and thus mirrors our infringement analysis [under the Lanham Act]."). In addition, Rule 9(b)'s particularity requirements apply to Count II as well as Count I and Bhatia has not met those requirements.

18.     In Count II, Bhatia seeks both injunctive relief and money damages. He is not entitled to either. Bhatia admits that any allegedly wrongful conduct stopped in April 2018. (Dkt. 85 at ¶¶ 50, 53) Thus, there is no basis for injunctive relief. With respect to money damages, Bhatia's claim fails because he has not pled, with the requisite particularity, the "who, what, where, why and when" of any deceptive conduct, or that MedValue actually suffered any injury proximately caused by Defendants' use of "MV Outsourcing." While the latter point is governed under Rule 8 rather than Rule 9(b), that does not provide Bhatia with license to submit a complaint utterly devoid of factual content and simply recites the elements of an unfair competition claim.

19.     Moreover, Count II also fails due to Bhatia's lack of any protectable trademark and lack of confusion or the possibility of confusion. Because Counts I and II are largely based on the

9

same allegations, Count II must "rise or fall based on the Lanham Act claim." *MJ&Partners Rest. Ltd. P'ship v. Zadikoff,* 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998).

20. Additionally, Bhatia's allegations are made upon "information and belief."[4] Thus, Bhatia must state a basis for his suspicion, which he does not. Bhatia fails to meet the pleading standard of Rule 9(b) because he fails to allege with particularity the who, what, where, and when of the allegations. *See Control Solutions, LLC v. Oshkosh Corp.*, 10-CV-121, 2011 WL 1131329, *3 (N.D. Ill. Mar. 28, 2011) ("…since these allegations are made on information and belief, Oshkosh must state a basis for its suspicion that these allegations occurred, which it does not")

### IV. Counts III And IV Both Fail As A Matter Of Law.

21. Something cannot be misappropriated if it does not exist. ITSA defines a trade secret as information that is (i) sufficiently secret to derive economic value from not being generally known and (ii) is the subject of reasonable efforts to maintain its secrecy. DTSA is in accord, and also adds that efforts should be taken by owner. As explained below, Bhatia's complaint fails to allege that MedValue owns any information that meets the requirements for trade secrets under either applicable laws i.e., DTSA or ITSA.

22. In alleging "reasonable measures to protect", Bhatia has not alleged anything but a threadbare recital of the elements of the law in Dkt. 85 at ¶¶ 110 & 119, as follows: "MedValue took reasonable steps to protect the secrecy of its trade secrets and confidential and proprietary information." There are no facts about what steps were taken either in these paragraphs or anywhere else in the complaint. Bhatia has not alleged sufficient measures taken to protect alleged trade secrets. This is not good enough to meet the pleading requirements under *Ashcroft v. Iqbal*,

---

[4] In fact, Bhatia's verification of his derivative complaint does not meet Rule 23.1's requirements since it states facts only upon information and belief. On this basis alone, this complaint should be dismissed because it does not meet verification requirements under Fed. R. Civ. P. 23.1.

10

556 U.S. 662, 678 (2009); *see also Am. Ctr. for Excellence in Surgical Assisting*, 315 F. Supp. 3d at 1058 ("[Plaintiff] did not take the kinds of affirmative measures courts have recognized as secrecy-preserving under Illinois law, such as 'limit[ing] access to the information to certain employees only, keep[ing] the information encrypted, password-protected, or locked, prevent[ing] copying of the protected information, or requir[ing] employees to sign confidentiality agreements.'").

23. Bhatia has not alleged that the alleged trade secret information was labeled "trade secrets" or "confidential" in the Google Adwords account, because he cannot do so. *See Dryco, LLC v. ABM Indus.,* No. 07-CV-69, 2009 WL 3401168 (N.D. Ill. Oct. 16, 2009) (Plaintiffs required no confidentiality agreements with their own employees and did not label any of their documents as confidential.) Similarly, Bhatia has not alleged, because he cannot do so, that employees of MedValue with access to alleged trade secret information, were informed of the existence of alleged trade secrets or the particularity and specificity of MedValue's trade secrets. See *CMBB LLC v. Lockwood Mfg., Inc.*, 628 F. Supp. 2d 881 (N.D. Ill. 2009).

24. Bhatia has not alleged the existence of any company documents describing with specificity what the trade secrets are, and labeling them as such, because he cannot do so. *See Dryco, LLC.*, 2009 WL 3401168. Bhatia also has not alleged that MedValue executed non-disclosure agreements with any of its employees because he cannot do so. *See Raben Tire Co., LLC v. McFarland*, 5:16-CV-00141-TBR, 2017 WL 74569 (W.D. Ky. Feb. 24, 2017). In that case, the court dismissed the complaint and stated "Raben Tire Co.'s complaint is entirely devoid of any allegations of how it protected the information in question from dissemination. There is not a suggestion, for example, that either McFarland or Bates were restricted from sharing that information due to a nondisclosure agreement." *Id.* at *2. The Court found that "[e]ven viewing

11

the complaint in the light most favorable to Raben Tire Co., the omission is fatal to its claim for misappropriation of trade secrets under the DTSA." *Id.*

25. Moreover, confidentiality or non-disclosure agreements, even if necessary, are not sufficient to protect trade secrets if no other measures were taken. In fact, this Court has specifically stated that non-disclosure agreements – without more measures – are not enough to meet the requirements of trade secrets laws. *See Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*, No. 17-CV-923, 2018 WL 1156246, *3 (N.D. Ill. Mar. 5, 2018) ("While an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret, such an agreement, without more, is not enough"); *see also Bison Advisors LLC v. Kessler,* No. cv-14-3121 (DSD/SER), 2016 WL 4361517, at *4 (D. Minn. Aug. 12, 2016). ("The law is clear that the mere existence of a confidentiality agreement is insufficient to establish that the covered information is a trade secret"); *Coyne's & Co. v. Enesco, LLC*, No. 07-4095, 2010 WL 3269977 (D. Minn. Aug. 16, 2010) (Same). Here, Bhatia has not even alleged the existence of a non-disclosure agreement with any employees of MedValue.

26. Bhatia similarly fails to allege MedValue took even basic measures. MedValue has not alleged that it: (i) confined access only to those employees, who had a need to access, (ii) asked employees to sign non-disclosure agreements before accessing alleged trade secrets, (iii) created employment policies, employee training manuals or documents instructing employees how to protect alleged trade secrets, (iv) restricted employees from sharing passwords, label "proprietary" or "confidential" documents, files, or information containing alleged trade secrets, or (v) took any measures to protect alleged trade secrets, which are different than measures taken to protect routine business and company information. Bhatia has not alleged the above, because he cannot do so.

*See Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888 (N.D. 2019*). See also Am. Ctr. for Excellence in Surgical Assisting*, 315 F. Supp. 3d at 1058.

27. Bhatia has not alleged that MedValue's alleged trade secrets were always kept under "lock and key" or encryption or behind a security firewall or any equivalent security measure, because he cannot allege so. Bhatia has alleged in Dkt. 85 at ¶¶ 70 that alleged trade secret "information is stored in a password protected MedValue Adwords account with Google". Bhatia has, however, not alleged that the password protection was a measure taken by MedValue, because he cannot do so. Rather, the password is a requirement of Google, and not MedValue. DTSA makes it clear that ***the measures should be taken by the owner***. Password protection is a necessary step, but in and of itself and as the only measure, is not sufficient to protect trade secrets. Protective measures that are applied equally to all of a company's information may not be sufficient. Courts have indicated that a company must go above and beyond normal business practices like passwords to protect their trade secrets. *See Dryco LLC v. ABM Indus. Inc.,* 2009 WL 3401168. Indeed, Judge Sharon Johnson Coleman recently granted a motion to dismiss after finding that the plaintiff had done "nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information." *Opus Fund Servs. (USA) LLC*, 2018 WL 1156246, at *5. In *Liebert Corp v. Mazur*, 357 Ill. App. 3d 265, 279 (Ill. App. Ct. 2005), the court held that "[r]estricting access to sensitive information by assigning employee passwords on a need-to-know basis is a step in the right direction." *Id.* That precaution in and of itself, however was not enough. The court was "troubled" by plaintiff's "failure to either require employees to sign confidentiality agreements, advise employees that its records were confidential, or label the information as confidential." *Id.*

28. Here, Bhatia has not alleged that MedValue's alleged trade secret information cannot be obtained by "proper means" by any other party in the industry. He has not alleged so because he cannot do so and knows that it can be obtained through Google, software companies like SEM Rush, SEO and Adwords agencies like New Jupiter Media, and can be reverse engineered by creating an Adwords account and bidding against MedValue.

29. Similarly, Bhatia has not alleged how MedValue's alleged trade secrets create any economic value for MedValue, because he cannot do so. The information contained in Google Adwords, changes dynamically, and loses value and relevance the next instant. So, as an example, bids for keywords, even if kept secret through reasonable measures (which is not the case here) are of no value in the next hour, what to speak of the next week or next month.

30. Bhatia has not alleged, because he cannot do so, as to how MedValue has suffered a loss in revenue or profits or lost any specific customers to Assivo. *See Repat, Inc. v. Indiewhip, LLC*, 281 F. Supp. 3d 221, 231 (D. Mass. 2017) (Plaintiff is required to show real economic damage as opposed to some speculation of harm in the future).

**V.     Alternatively, This Court Should Dismiss Counts II and IV Under FRCP 12(b)(1).**

31. In the event judgment on the pleadings is entered in favor of Defendants only as to Counts I and III, then this Court should decline to exercise supplemental jurisdiction over Counts II and IV of Bhatia's Second Amended Complaint. In the absence of viable federal law claims against Defendants, there would be no basis to exercise supplemental jurisdiction on state-law claims.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, Defendants Karan Vaswani and Assivo, Inc. respectfully move this Court, pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings

on Counts I-IV of Plaintiff's Second Amended Complaint, Dkt. 85, and under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on Counts II and IV, and respectfully request the Court to enter an order dismissing Counts I-IV and to award such other and further relief deemed equitable and just.

Dated:  November 12, 2020                                   Respectfully submitted,

By:  _/s/ Timothy D. Elliott_____
Timothy D. Elliott
Rathje Woodward LLC
300 E. Roosevelt Road, Ste. 300
Wheaton, Illinois 60187
(630) 668-8500
telliott@rathjewoodward.com

*Attorneys for Defendants Karan Vaswani and MV Outsourcing, Inc*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notification of the filing to all counsel of record for the parties.

/s/ Timothy D. Elliott