## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUNIL BHATIA, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-2387 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| RAJU VASWANI, KARAN VASWANI, and MV OUTSOURCING INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| RAJU VASWANI, individually and derivatively on behalf of MEDVALUE OFFSHORE SOLUTIONS, INC., | ) ) ) ) | |
| Counter-Plaintiff and Third-Party Defendant, | ) ) ) | |
| v. | ) ) | |
| SUNIL BHATIA, | ) ) | |
| Counter-Defendant, | ) ) | |
| and | ) ) | |
| VARSHA BHATIA, | ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sunil Bhatia ("Bhatia"), individually and derivatively on behalf of MedValue

Offshore Solutions, Inc. ("MedValue"), brings suit against Defendants Raju Vaswani ("Raju"),

Karan Vaswani ("Karan"),[1] and Assivo, Inc. ("Assivo") (collectively, "Defendants") for violations of the Lanham Act, 15 U.S.C. 1125(a) and the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-1839 ("DTSA"), as well as various state law causes of action. Currently before the Court are Assivo's and Karan's motion for judgment on the pleadings/motion to dismiss [219]; Raju's motion for judgment on the pleadings/motion to dismiss [221]; Assivo's motion to dismiss Bhatia's derivative counts [229]; and Raju's motion to dismiss the derivative counts [265]. For the following reasons, all four motions, [219], [221], [229], and [265], are denied.[2]

## I.      Background

The following facts are drawn from Bhatia's Verified Second Amended Complaint ("Complaint") [85]. All well-pled facts are presumed to be true for purposes of Defendants' motions to dismiss for failure to state a claim and motions for judgment on the pleadings. See *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021); *Kenall Manufacturing Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 881 (N.D. Ill. 2018).

MedValue is an Illinois corporation and leading U.S.-based data entry services company. Since 2003, MedValue has been providing data entry, data capture, and data processing services to clients throughout the United States. Plaintiff Bhatia and Defendant Raju each own fifty percent of MedValue. Since MedValue's inception, they have been its only two employees and the only two members of its Board of Directors. Bhatia is also MedValue's Treasurer, Secretary, Vice President, Chief Operating Officer, and Chief Technology Officer. Raju is Chairperson, President, and Chief Executive Officer.

---

[1] Because two of the Defendants share the same surname, the Court will refer to them separately using their first names to avoid confusion.
[2] The Court notes that the operative version of the Second Amended Complaint [85] does not contain the state-law counts that the Court previously dismissed but then reinstated when it granted, in part, Bhatia's motion for reconsideration. At the next status hearing, the Court will discuss whether it makes sense to have Bhatia file a new version of the complaint with all of the still-viable claims included.

In early 2006, Raju approached Bhatia about a potential purchase of 10 percent of Bhatia's

ownership in MedValue.  Bhatia agreed, but Raju "never paid any monies towards that buy out or

otherwise provided any other form of consideration for it," leaving Bhatia and Raju as equal, 50/50

co-owners of MedValue.  [85] at 5.

Since its founding in 2003, MedValue has offered its services under the mark "MedValue."

MedValue has owned and operated the website www.medvaluebpo.com since 2004 to market and

promote its services.  MedValue was "initially solely in the business of utilizing India-based

suppliers to provide data entry services to U.S. based healthcare providers."  [85] at 5.

Around 2006, Bhatia and Raju "realized that their data entry outsourcing model, as offered

to U.S. based healthcare clients through MedValue, could extend well beyond the healthcare

industry."  [85] at 6.  They were "concerned, however, that they would not attract potential

customers because of the connotation of having 'Med' as part of their corporation's name—

implying it was purely for businesses in the healthcare space."  *Id*.  Therefore, they registered a

second domain name, data-entry-services.com.  MedValue has owned and operated that website

since 2006.  When MedValue began operating its second website, it also "began offering services

under the mark 'MV Outsourcing Solutions,' as a 'service' of MedValue."  *Id*. at 6.  It began using

the shortened mark "MV Outsourcing" by 2008.  The Complaint refers to the two marks

collectively as the "MV Marks."

MedValue uses the MV Marks in interstate commerce in connection with the sale, offer

for sale, and marketing of its data entry and claims processing services, including on both of its

websites and other marketing materials for its service.  [85] at 6-7.  "Since the inception of the

second domain name, the primary driver of new customers to MedValue has been MV

Outsourcing's and MedValue's website, www.data-entryservices.com."  *Id*. at 6.  According to the

Complaint, "many of MedValue's customers recognize MV Outsourcing as synonymous with MedValue." *Id.*

MedValue has also "spent large amounts of time, effort, and money developing valuable, confidential and proprietary trade secret information relating to its on-line marketing and advertising strategies," including on-line search engine optimization ("SEO") techniques for directing potential customers to its website. [85] at 3. More particularly, MedValue has spent approximately $1,000,000.00 on Google and other search engine marketing campaigns. It has also spent large amounts of time, effort, and money developing, testing and deploying various advertising keywords and search terms, landing pages, advertising messages, negative keywords, campaign budgets, advertising text, and Google bid amounts, as part of various advertising and marketing strategies, including extensive use of SEO techniques. MedValue's use of its advertising and marketing trade secrets has caused MedValue to appear at the top of search engine Google "Adwords" results when potential customers search for services using certain keywords; this directs potential customers to relevant landing pages on MedValue's website. Information relating to these trade secrets is stored in a password protected MedValue AdWords account with Google. Use of the trade secrets has generated new clients and significant revenue for MedValue.

Around May 2017, Raju approached Bhatia seeking to have Raju's son, Karan, become an employee and/or owner of MedValue. Bhatia refused. Raju met with Bhatia on June 23, 2017 and "again demanded that Karan … be made an employee or partner of MedValue" and given "25% of all incoming revenue." [85] at 7. Bhatia again refused. During the same meeting, Raju allegedly threatened Bhatia that, if he continued to refuse, Raju and Karan would "form a competing business with the express purpose of drawing customers away from MedValue and its MV Outsourcing service." *Id.*

Unbeknownst to Bhatia, between his first and second conversation with Raju, Raju and Karan registered the corporate entity MV Outsourcing, Inc. with the Illinois Secretary of State. They also created a new domain, mvoutsourcing.com. Its website displayed the name "MV Outsourcing" in connection with the promotion, marketing and sale of services that directly compete with MedValue's services. According to the Complaint, the appearance and overall impression of the "MV Outsourcing" mark used by Defendants is identical to MedValue's "MV Marks," which is likely to cause confusion, deception or mistake in the minds of consumers in the marketplace.

After this action was filed, Karan and Raju changed the name of MV Outsourcing, Inc. to "Assivo," which is also named a Defendant in this action. Prior to the name change, MV Outsourcing, Inc. registered "TaskGenie" as an assumed name with the Illinois Secretary of State's Office. "MV Outsourcing, Inc. did and still does business under the name 'TaskGenie." [85] at 8. Karan and Raju also created two new domains, task-genie.com and mvoutsourcing.com, "for the express purpose of drawing business away from MedValue." *Id*.

In addition to infringing the MV Marks, the Complaint alleges that Karan and Raju misappropriated MedValue's trade secrets. On information and belief, they "are using MedValue's confidential and proprietary information and search engine optimization techniques to advertise Assivo's competing services on 'Google.'" [85] at 3. More particularly, the Complaint alleges that administrative access rights to MedValue's AdWords account were removed for Bhatia's MedValue email address and assigned to an email address at Assivo. Assivo has allegedly used and is using MedValue's Advertising and Marketing Trade Secrets to run Google campaigns to direct potential customers to task-genie.com. According to the complaint,

this has diverted potential customers from MedValue to Assivo and given Assivo an unfair competitive advantage.

In addition, the Complaint alleges that Raju has breached his fiduciary duties and duty of loyalty to Bhatia and MedValue by diverting new business and potential customers away from MedValue to Assivo. Finally, the Complaint alleges that Raju used a personal credit card, which was always paid by MedValue, to market businesses owned by Raju and Karan, including Assivo.

The Complaint contains ten counts (two of which have been dismissed, see [152] at 5 n.2, 11) and seeks damages and injunctive relief. The particulars of the remaining counts are discussed (to the extent necessary) in the Analysis section below.

## II.    Analysis

### A.    Whether the Complaint Complies with Federal Rule of Civil Procedure 23.1 and 28 U.S.C. § 1746

Both Defendants move to dismiss the Complaint's derivative claims (Counts I through IV, VI, and VIII) on the basis that Plaintiff has failed to satisfy Federal Rule of Civil Procedure 23.1 or 28 U.S.C. § 1746. See [229], [265]. Rule 23.1 applies when "one or more shareholders or members of a corporation … bring a derivative action to enforce a right that the corporation … may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." *Id*. In addition, the complaint must be verified and must:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b).

The verification required for derivative actions must be in "substantially the following form" when executed in the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(1).

### 1.    Sufficiency of Bhatia's Verification

Defendants moved to dismiss the prior version of the second amended complaint [44] on the basis (among others) that its verification did not contain the phrase "under penalty of perjury" as required by 28 U.S.C. § 1746. In response, Bhatia filed an "Amended Verification regarding response to motion." See [61]. To "ensure compliance with Rule 23.1," the Court directed Bhatia to refile the second amended complaint with a verification page that complies with 28 U.S.C. § 1746. [83] at 18. The refiled second amended complaint (*i.e.*, the currently operative complaint) contains a verification that states: "I, Sunil Bhatia, hereby verify that I am familiar with the allegations in the Second Amended Complaint, that I have authorized the filing of the Second Amended Complaint, and that the foregoing allegations are true to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct." [85] at 22.

Defendants argue that the latest version of the Complaint still fails to comply with 28 U.S.C. § 1746 because Bhatia "presented a verification that appears designed to uncouple" the "'two statements that are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of

perjury.'" [229] at 8 (quoting *U.S. v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008)).

Bhatia's verification is sufficient. 28 U.S.C. § 1746 does not require the verification to be in the exact form quoted in the statute; rather, it need only be in "substantially" that form. The last sentence of Bhatia's verification parrots the exact language set out in 28 U.S.C. § 1746. Read as a whole, it is apparent that Bhatia attests to his belief that the facts alleged in the Complaint are true and that he is declaring so under penalty of perjury. Although the verification is qualified by the language "to the best of my knowledge, information and belief," it nonetheless "was properly submitted under penalty of perjury and satisfies the requirements of 28 U.S.C. § 1746." *City of Chicago v. Smollett*, 2020 WL 3643121, at *4 n.2 (N.D. Ill. July 6, 2020) (rejecting argument that attorney's "declaration is not proper because it is qualified by the language 'to the best of my knowledge'" was insufficient to satisfy 28 U.S.C. § 1746); see also *Stevens v. Broadcasting Board of Governors*, 2021 WL 1192675, at *6 (N.D. Ill. Mar. 30, 2021) (declaration stating, "I declare that the foregoing is true and correct to the best of my knowledge and belief and is given under penalty of injury," or "some close variation thereof" held sufficient to satisfy 28 U.S.C. § 1746); *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 353 (D. Md. 2011) (affidavit signed "under the penalties of perjury" and stating that its contents are "true and accurate to the best of" the affiant's knowledge sufficient under 28 U.S.C. § 1746; collecting cases); *Joseph v. Sniezek*, 2016 WL 5078378, at *5 (M.D. Pa. Sept. 20, 2016) (declaration qualified by the language "to the best of my knowledge and belief" complied with the requirements of 28 U.S.C. § 1746 where it was both verified and submitted under penalty of perjury). Indeed, Raju's own verification, which he filed in support of his counterclaims, contains the same qualifying language that he faults Plaintiff for using. See [74] at 2 (declaring, "under penalty of

perjury, that the allegations contained in the First Amended Counterclaim and Third-Party Complaint … are true and correct to the best of my knowledge, information and belief").

Relatedly, Defendants argue that the Complaint does not comply with Rule 23.1 or 28 U.S.C. § 1746 because it is "based largely upon 'information and belief,'" but "does not identify the source of his information and belief (*e.g.*, his attorney or third party) and what inquiry was conducted to gain such information." [229] at 7. It is true that some of Plaintiff's allegations are made on information and belief, but most of them are not. Defendants do not identify the particular allegations they find lacking or explain why they are important. Nor do their motions cite any case law prohibiting some allegations in support of a derivative action from being made "on information and belief." The case law cited by Plaintiff, and the Court's own research, indicate that the opposite is true. For instance, in *Hirshfield v. Briskin*, 447 F.2d 694 (7th Cir. 1971), the Seventh Circuit, recognizing that pleading "on information" can satisfy Rule 23.1, held that a verification need not distinguish between "the statements as to which [declarant] has knowledge [and] those as to which he has information and belief" because "[n]o federal rule or decision … requires such identification." *Id*. at 698; see also, e.g., *U.S. v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (explaining that while Rule 56 affidavits 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,' … § 1746 unsworn verifications may be pled 'on information and belief'" (quoting *Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004))); *General Elec. Co. v. Bucyrus-Erie Co.*, 563 F. Supp. 970, 974 (S.D.N.Y. 1983) (holding that pleading on information and belief "is satisfactory" under Rule 23.1 "if (1) the allegations in the complaint are plausible (2) it does not appear that the action is being brought to harm the corporation, and (3) there is an adequate justification for pleading on information and belief").

## 2.      Demand Futility

As noted above, Rule 23.1(a)(3)(B) requires a plaintiff bringing a derivative action to "state with particularity" the reason for not obtaining or making the effort "to obtain the desired action from the directors or comparable authority."  Defendants argue that Bhatia fails to satisfy this standard because he "continues to claim—falsely—that demand would have been futile with respect to his derivative counts." [229] at 2.  According to Karan, Plaintiff fails "to disclose to this Court that Raju and his corporation MedValue have already taken action to remedy Bhatia's grievances" by ceasing and desisting use of "MV Outsourcing." *Id*.

In fact, Bhatia did disclose in the Complaint that "[a]fter this action was filed, on or about April 23, 2018, Defendants Karan Vaswani and/or Raju Vaswani changed the name of MV Outsourcing, Inc. to Assivo, Inc." [85] at 2, ¶ 8.  The Court already took this into account when it rejected the demand futility argument that Defendants raised in their earlier motion to dismiss.  See [83] at 5 (recognizing that "MV Outsourcing's name was later changed to Assivo, Inc."); 18-22 (concluding that Plaintiff's "second amended complaint pleads particularized facts raising a reasonable doubt as to Raju's independence and disinterestedness" and denying Defendants motions to dismiss for failure to plead demand futility).  Defendants have not provided the Court with any reason for reconsidering its prior ruling on this issue, which it reaffirms here.  Further, assuming that Defendants have entirely ceased using "MV Outsourcing," that is just one part of the case.  Defendants provide no indication that they have or would agree to cease using MedValue's alleged trade secrets or MedValue's Google AdWords account or to cease diverting potential customers away from MedValue to Assivo.  See [83] at 22.  These were also grounds on which the Court determined that Bhatia sufficiently allegedly that "Raju is neither disinterested nor independent." *Id.* at 21.  Further, Defendants never suggest that they have agreed to pay

damages for their past alleged use of MV Outsourcing, which also remains part of the case.

Therefore, the Court concludes that Bhatia has satisfied Rule 23.1(a)(3)(B).

### 3. Bhatia's Adequacy as a Representative for Shareholders

Defendants argue that Bhatia "cannot maintain this derivative action because he cannot fairly and adequately represent the interests of all shareholders of MedValue." [229] at 6 n.2. They contend that Bhatia has a "conflict of interest" with MedValue and Raju because, "[b]esides filing derivative counts against Raju, he is also individually suing Raju, the only other shareholder of MedValue in this lawsuit." *Id*.

However, Rule 23.1 does not require the plaintiff in a derivative suit to represent the interests of all shareholders. Instead, it requires only that the plaintiff be able to "fairly and adequately represent the interests of shareholders or members who are *similarly situated* in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a) (emphasis added); see also *Cement-Lock v. Gas Technology Institute*, 618 F. Supp. 2d 856, 887–88 (N.D. Ill. 2009) ("the plaintiff in a derivative action must be capable of advancing the interests of 'similarly situated' shareholders—not all or even a majority of shareholders"). MedValue has only two shareholders: Raju and Bhatia. Bhatia is not similarly situated to Raju, because their interests are adverse for the reasons detailed in the Complaint. See *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179-80 (N.D. Ill. 1987) (shareholder, who owned 20 of 100 shares of stock in closely held corporation, could bring derivative action against corporate officers owning remaining 80 shares, notwithstanding alleged inadequacy of shareholder's representation, because his interests were adverse to those of corporate officers); see also *Larson v. Dumke*, 900 F.2d 1363, 1369 (9th Cir. 1990) (shareholder in closely held corporation who was "the only shareholder similarly situated" was an adequate representative under Rule 23.1); *Jordon v. Bowman Apple Products Co., Inc.*, 728 F. Supp. 409, 412 (W.D. Va. 1990) (explaining that "[i]n appropriate circumstances a single

11

shareholder may be situated in a unique position and thus constitute a legitimate 'class of one'"

for purposes of Rule 23.1 requirement that plaintiff represent those similarly situated).

**B.      Whether Bhatia's Unfair Competition and Trade Secrets Claims Are Plausible**

Defendants move for judgment on the pleadings on Bhatia's federal and state unfair

competition and trade secrets claims (Counts I through IV) and to dismiss Bhatia's other state law

claims for lack of jurisdiction.   See [219] and [221].   Federal Rule of Civil Procedure 12(c)

provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings."   Pleadings "include the complaint, the answer, and any

written instruments attached as exhibits."   *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,

163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).   "The only difference between a

motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."

*Federated Mutual Insurance Co. v. Coyle Mechanical Supply Inc.*, 983 F.3d 307, 313 (7th Cir.

2020).   "When a plaintiff moves for judgment on the pleadings, the motion should not be granted

unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its

position, and that the plaintiff is entitled to relief."   *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*,

972 F.3d 915, 919 (7th Cir. 2020).   "Thus to succeed, the moving party must demonstrate that

there are no material issues of fact to be resolved."   *N. Ind. Gun & Outdoor Shows*, 163 F.3d at

452.   "As with a motion to dismiss, the court views all facts and inferences in the light most

favorable to the non-moving party."   *Federated Mutual Insurance*, 983 F.3d at 313

(quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).

For the reasons that follow, the Court concludes that Bhatia's unfair competition and trade

secrets claims satisfy federal pleading requirements.  As these claims will remain in the case, there

is no basis for dismissing the remaining state law claims for lack of jurisdiction.

### 1. Unfair Competition

The Court considers Bhatia's federal and state law unfair competition claims together because, "[i]n Illinois, courts resolve unfair competition … claims 'according to the principles set forth in the Lanham Act.'" *Bob Creeden & Associates, Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 880 (N.D. Ill. 2004) (quoting *Spex, Inc. v. The Joy of Spex, Inc.,* 847 F. Supp. 567, 579 (1994)); see also *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 2017 WL 6569633, at *7 (N.D. Ill. Dec. 21, 2017). As an initial matter, the parties disagree as to whether Rule 9(b)'s heightened pleading standard applies to Bhatia's unfair competition claims. It does not. Bhatia's Lanham Act claim is of the "likelihood of confusion" type, not the "false advertising" type. "Because there is no requirement to prove fraud for likelihood-of-confusion claims, there is no requirement to allege fraud. Thus, the heightened pleading requirement set forth in Rule 9(b) does not apply to this theory." *Dynamic Fluid Control (PTY) Ltd. v. International Valve Mfg., LLC*, 790 F. Supp. 2d 732, 738 (N.D. Ill. 2011); see also *ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*, 192 F. Supp. 3d 943, 953 (N.D. Ill. 2016).

To state a claim for unfair competition under the Lanham Act, Plaintiff must sufficiently allege that (1) MedValue's trademarks are protectable; and (2) Defendants' use of the trademarks is likely to cause confusion among consumers. See *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 638 & n.8 (7th Cir. 2001); *Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 853 (N.D. Ill. 2014).

The Court first considers whether the MV Marks are protectable. "Trademark law awards trademark protection to various categories of words, terms, and phrases if consumers rely on those marks to identify and distinguish one company's goods or services from those of others." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 598 (7th Cir. 2019). "Marks are classified into five

categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Platinum Home Mort. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Generic marks are not registrable as trademarks. In contrast, suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Descriptive marks are protectible only if they have established "secondary meaning." *Id*. at 769; see also *SportFuel*, 932 F.3d at 598.

Defendants contend, with little explanation, that the MV Marks are descriptive marks, which are marks that describe the product category to which the brand belongs. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019). As just noted, descriptive marks are protectable only "if they have developed secondary meaning." *SportFuel*, 932 F.3d at 598; see also *Holbrook Mfg LLC v. Rhyno Manufacturing Inc.*, 497 F. Supp. 3d 319, 330 (N.D. Ill. 2020). "Secondary meaning" is "'a *mental association* in buyers' minds between the alleged mark and a single source of the product.'" *Packman*, 267 F.3d at 641 (quoting 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 15:5, at 15–9 (4th ed. 2001)).

Bhatia disputes that the MV Marks are "merely descriptive," explaining that while the word "outsourcing" may be descriptive of MedValue's services, the letters "MV" are not, and therefore the mark is arbitrary and not subject to the requirement that the plaintiff establish secondary meaning. Bhatia also points out—and the Court agrees—that the categorization of the MV Marks cannot be resolved at this early stage of the case. "[T]he classification of [a party's] marks is a question of fact, and not appropriate for a summary judgment ruling"—let alone a ruling on a motion to dismiss—"unless [the movant] can demonstrate that the evidence as to [the party's] marks is so obvious that there is no doubt as to how the question of classification of the mark

14

should be answered." *Timelines, Inc. v. Facebook, Inc.*, 938 F. Supp. 2d 781, 791 (N.D. Ill. 2013); see also *McKillip Industries, Inc. v. Integrated Label Corp.*, 477 F.Supp.2d 928, 930 (N.D. Ill. 2006). Defendants have not even attempted to make such a showing.

Even if the Court were to conclude based on the pleadings that the MV Marks must be descriptive, Defendants would not be entitled to judgment because the Complaint contains facts from which it may plausibly be inferred that the MV Marks have developed secondary meaning. Bhatia alleges that MedValue has used its marks to advertise its services since 2006 and that consumers recognize "MV Outsourcing" to be "synonymous" with MedValue. [85] at 6. In other words, the Complaint alleges that consumers have a "mental association" between the MV Marks and MedValue, which is sufficient to plead secondary meaning. *Packman*, 267 F.3d at 641.

Finally, Defendants maintain that Bhatia cannot satisfy "the 'use in commerce' requirement of the Lanham Act," because he "does not allege that MedValue sold services under the mark 'MV Outsourcing' to even one single customer." [219] at 8. "Without bona fide use," Defendants contend, "MedValue cannot own a mark." *Id*. The Court agrees with Bhatia that this argument "completely disregards the allegations of the Complaint." [235] at 11. The Complaint alleges that MedValue has sold services to customers through a website displaying its "MV Outsourcing" and "MV Outsourcing Solutions" marks. More particularly, the Complaint alleges that MedValue has offered services under the "MV Outsourcing" and "MV Outsourcing Solutions" marks on its website since in or about 2006. [85] at 6. The website offering services under these marks has been MedValue's primary driver of new customers since its 2006 launch. *Id*. Further, MedValue uses the marks in interstate commerce in connection with the sale of, offers for sale of, and marketing of its services. *Id*. at 7.

The Court now turns to the sufficiency of Bhatia's allegations that Defendants' use of "MV Outsourcing" is (or was during its use) likely to cause confusion to consumers. Defendants attack the sufficiency of pleadings on this element in several ways. First, Defendants frame the issue as one of standing, though it is actually one of proximate cause. Relying on *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), Defendants argue that Bhatia has not alleged "any facts to demonstrate that MedValue has suffered any injury that would confer standing under the Lanham Act" because he "never actually alleges that MedValue lost an actual or potential customer, or was otherwise injured due to Assivo's brief use of 'MV Outsourcing.'" [219] at 6.

Whether Defendants' use of MV Outsourcing was "brief" or of any consequence is a matter of inference, and at this stage in the case inferences must be drawn in Bhatia's favor. According to the Complaint, Defendants' use lasted approximately ten months and stopped only after Bhatia went to the effort and expense of filing this lawsuit. See [85] at 2 (alleging that Raju and Karan incorporated "MV Outsourcing, Inc." in July 2017 and changed name in April 2018). Regardless, the Court finds Defendants' argument unpersuasive because it "confus[es] a Lanham Act violation with a Lanham Act remedy." *Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). "[T]he elements necessary to establish a *violation*" of 15 U.S.C. § 1125(a) "do not include any involving actual injury or actual confusion." *Id.*; see also *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 890 (N.D. Ill. 2019) (explaining that "Defendants' assertion that Plaintiffs have not identified a single consumer or conference attendee who expressed any confusion, where it occurred, or the how they communicated that confusion is immaterial" because "[p]laintiffs do not need to plead facts that show actual confusion").

Ultimately, "[a] plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and, as a result, that the plaintiff suffered actual injury, *i.e.,* a loss of sales, profits, or present value (goodwill)." *Web Printing Controls*, 906 F.2d at 1204-05; see also *Zelinski v. Columbia 300, Inc*., 335 F.3d 633, 639 (7th Cir. 2003). A "jury is entitled to use its common sense" in determining whether consumers were deceived. *Id.* Even where the plaintiff is unable to prove actual damages, however, "[o]ther avenues of relief … are not foreclosed." *Web Printing Controls*, 906 F.2d at 1205; see also *First Health Group Corp. v. United Payors & United Providers, Inc*., 95 F. Supp. 2d 845, 848 (N.D. Ill. 2000) (explaining that "a plaintiff need not prove actual injury to sustain a Lanham Act violation, at least for the purpose of 15 U.S.C. § 1125(a)(1)(A)" and noting that, "[i]ndeed, the inability to prove actual injury is the reason to turn to alternate remedies"). "In the past, courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as a recovery of defendant's profits, an award of costs of the action, and, in some exceptional cases, an award of attorney's fees." *Web Printing Controls*, 906 F.2d at 1205. "These remedies flow not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence, for example, or, in the case of costs, merely from its proof of the defendant's Lanham Act violation." *Id.* Thus, "[t]o collapse the two inquiries of violation and remedy into one which asks only of the plaintiff's injury … is to read out of the Lanham Act the remedies that do not rely on proof of 'injury caused by actual confusion.'" *Id*.

Defendants next argue that Bhatia has not "plausibly alleged that Defendants' promotional materials create a likelihood of confusion." [219] at 8. The Court finds the Complaint sufficient. It alleges that Raju threatened to form a competing business with Karan, "with the express purpose

of drawing customers away from MedValue and its MV Outsourcing service." [85] at 7. Raju and Karan then allegedly formed the MV Outsourcing, Inc. entity (*id.* at 8); created websites specifically to draw business away from MedValue (*id.*); and otherwise used MedValue's marks to market their own competing services (*id.* at 9). These allegations, taken together, support a conclusion that MedValue's customers are (or were) likely to be confused by Defendants using the name "MV Outsourcing" for a competing business offering the same services. Whether this confusion led them to buy services from Defendants instead of MedValue is an issue that will need to be explored in discovery.

### 2. Trade Secrets

Defendants also move for judgment on the pleadings on Bhatia's trade secrets claims for violations of the DTSA (Count III) and the Illinois Trade Secrets Act, 765 ULCS 1065 *et seq*. (Count IV). The Court considers these two claims together because "'the pertinent definitions of the two acts overlap.'" *Aon Risk Servs. Cos. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019) (quoting *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1129 (N.D. Ill. 2019)). To show that Defendants misappropriated MedValue's trade secrets, Bhatia "must demonstrate that the information in question was '(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it rather than developed independently or obtained from a third source), and (iii) used in … defendant['s] business.'" *Vendavo*, 397 F. Supp. 3d at 1129 (quoting *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992)).

For the most part, Defendants make the same arguments that the Court already rejected when it denied, in part, Defendants' motions to dismiss the earlier version of the second amended complaint. See [83] at 24-25 (denying Defendants' motion to dismiss Counts III and IV and

concluding: 1) Bhatia has sufficiently pled that certain MedValue information constitutes a trade secret; and 2) Bhatia has described the alleged trade secrets with sufficient specificity); *id.* at 25 (rejecting argument that Bhatia has not alleged sufficient facts about measures taken by MedValue to protect its alleged trade secrets; explaining that, "[a]t the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms" and concluding that "[t]he second amended complaint meets these requirements" because it "identifies the types of information claimed to be trade secrets and where they were stored (i.e., in MedValue's Google AdWords account), and asserts they were password protected); *id.* at 23 (rejecting argument that Bhatia has failed to allege that his trade secret information cannot be obtained by "proper means" by any other party in the industry; noting that "Defendants cite no cases holding the SEO optimization techniques or Google AdWords marketing information are not protectable as trade secrets" and point to no "evidence in the record that would allow [the Court] to conclude that the alleged trade secrets are in fact publicly available or readily subject to disclosure through commercially available processes and therefore not protectable as trade secrets"). Defendants' motions do not offer any indication why the Court's prior decision was wrong. The Court sees no need to rehash these arguments and instead refers the parties to its prior opinion.

The only new argument raised by Defendants is that Bhatia "has not plausibly alleged that any economic value can be derived" from the trade secrets at issue here. According to Defendants, "[t]he information contained in Google Adwords, changes dynamically, and loses value and relevance the next instant. So, as an example, bids for keywords, even if kept secret through reasonable measures (which is not the case here) are of no value in the next hour, what to speak of the next week or next month." [219] at 14. However, Defendants do not support this factual

assertion with a citation to the complaint, another pleading, or anything else. This is pure speculation, which is not a proper basis for judgment on the pleadings. By contrast, the Complaint explains how MedValue derives economic value from its trade secrets: MedValue uses its trade secrets to develop techniques and campaigns that allow MedValue to appear at the top of search engine results when potential customers search for services and to direct potential customers to relevant landing pages on MedValue's website, [85] at 11; that MedValue's use of its trade secrets has generated new clients and significant revenues for MedValue, *id.*; and that Assivo has used the trade secrets it misappropriated from MedValue to run campaigns that direct potential customers to its website and has thereby diverted potential customers from MedValue to Assivo, *id.* at 11-12.

## III.     Conclusion

For these reasons, the Court denies Assivo's and Karan's motion for judgment on the pleadings/motion to dismiss [219]; Raju's motion for judgment on the pleadings/motion to dismiss [221]; Assivo's motion to dismiss Bhatia's derivative counts [229]; and Raju's motion to dismiss Bhatia's derivative counts [265].


Dated: June 3, 2021                                     _____
                                                         Robert M. Dow, Jr.
                                                         United States District Judge